# 05 - 11140 RCL

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS   MAGISTRATE JUDGE Bowler

| | |
|---|---|
| LORRAINE HUNT on behalf of herself and all others similarly situated, ) | No. |
| ) | CLASS ACTION COMPLAINT |
| Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| vs. ) | |

BAYVIEW CREMATORY, LLC, DEREK A.
WALLACE, LINDA STOKES, AMERICAN
CREMATION SOCIETY, INC., AMERICAN
SOCIETY FOR CREMATION, AMERICAN
SOCIETY FOR FUNERAL SERVICES, INC.,
COMMONWEALTH CREMATION &
SHIPPING SERVICE, INC.,
COMMONWEALTH FUNERAL SERVICE,
INC., CREMATION SOCIETY, INC.,
DRACUT FUNERAL HOME
INCORPORATED, FARRAH FUNERAL
HOME, HAMEL WICKENS & TROUPE
FUNERAL HOME, INC., HART-WALLACE
FUNERAL HOME, KEEFE FUNERAL
HOME, INC., SCATAMACCHIA FUNERAL
HOME, SIMPLICITY BURIAL
& CREMATION, INC. f/k/a OCEANSIDE
FAMILY FUNERAL HOME, WILLIAM F.
SPENCER FUNERAL SERVICES and DOES
1-50, INCLUSIVE,

Defendants.



RECEIPT #
AMOUNT $ 250
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 6/2/05

Lorraine Hunt ("Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

## NATURE OF THE ACTION

1.     This is a class action complaint arising from the mishandling, abuse and desecration of the remains of loved ones of Plaintiff and the class members she seeks to represent.

2.     Plaintiff and the Class contracted with, and utilized the services of, the Funeral Home Defendants (defined below), to properly and respectfully perform services, including the cremation of their loved ones. Motivated by greed, the Funeral Home Defendants utilized the services of Bayview Crematory, which was "well known throughout the industry" as a "shoddy operator." Keeping with their reputation, Bayview Crematory engaged in practices offensive to public decency. For example, Bayview Crematory commingled bodies while they were cremated, failed to keep accurate records of the bodies, and engaged in other wrongful conduct, so that the bodies of the deceased were returned to their family members in urns mixed with the ashes of other bodies or not returned at all. The Funeral Home Defendants turned a willful blind eye to the actions of Defendant Bayview Crematory. Unknown to Plaintiffs and the Class, Bayview Crematory operated without a license since at least 1999 until such time as it was closed down by the authorities in February, 2005.

3.     This suit seeks equitable relief and damages on behalf of the families of all decedents whose remains were cremated by Bayview Crematory and alleges breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent concealment, negligent misrepresentation, negligence, intentional mishandling of a corpse, negligent mishandling of a corpse, intentional infliction of emotional distress, negligent infliction of emotional distress and civil conspiracy.

- 1 -

## PARTIES

4.     Plaintiff Lorraine Hunt is a resident of Quincy, Massachusetts. She is the daughter and the next of kin of Robert Lowe Cashman.

5.     Defendant Bayview Crematory, LLC, is a New Hampshire corporation with its principal place of business at 204 New Zealand Road, Seabrook, New Hampshire. Bayview Crematory handled thousands of cremations each year. Bayview Crematory picked up bodies to be cremated in several states, including New Hampshire, Maine, Massachusetts, and Rhode Island.

6.     Defendant Derek A. Wallace ("Wallace") operated and/or owned Bayview Crematory at all times relevant herein. Upon information and belief, defendant Wallace is a citizen of the state of New Hampshire. Defendant Wallace also owned the Hart-Wallace Funeral Home.

7.     Defendant Linda Stokes ("Stokes"), defendant Wallace's mother, at all times relevant herein, was the owner of the property where Defendant Bayview Crematory is located. Upon information and belief, defendant Stokes is a citizen of the state of New Hampshire.

8.     Defendants named in ¶¶5 to 7 are referred to collectively herein as the "Bayview Crematory Defendants."

9.     Defendant American Cremation Society, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a place of business in Haverhill, Massachusetts.

10.    Defendant American Society For Cremation is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Haverhill, Massachusetts.

11.    Defendant American Society For Funeral Services, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 342 Washington Street, Haverhill, Massachusetts.

12.    Defendant Commonwealth Cremation & Shipping Service, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 1654 Washington Street, Boston, Massachusetts.

13.    Defendant Commonwealth Funeral Service, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Brighton, Massachusetts.

14.    Defendant Cremation Society, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principle place of business at 28 Adams Street, Quincy, Massachusetts. Roger Hamel is the owner of the Cremation Society of Massachusetts.

15.    Defendant Dracut Funeral Home Incorporated is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 2159 Lakeview Avenue, Dracut, Massachusetts.

16.    Defendant Farrah Funeral Home is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Lawrence, Massachusetts.

17.    Defendant Hamel Wickens & Troupe Funeral Home, Inc. ("Hamel Wickens") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 26 Adams Street, Quincy, Massachusetts. Bayview Crematory handled at least 60% of Hamel Wickens' cremation business.

18.    Defendant Hart-Wallace Funeral Home is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Lawrence, Massachusetts.

- 3 -

19.     Defendant Keefe Funeral Home, Inc. ("Keefe") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 2175 Massachusetts Avenue, Cambridge, Massachusetts.

20.     Defendant Scatamacchia Funeral Home is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Haverhill, Massachusetts.

21.     Defendant Simplicity Burial & Cremation, Inc. ("Simplicity") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 287 High Street, Newburyport, Massachusetts.  Simplicity was formerly known as Oceanside Family Funeral Home with a principal place of business at 34 Lafayette Road, Salisbury, Massachusetts.  Defendant Wallace part-owned Oceanside Funeral Home.

22.     Defendant William F. Spencer Funeral Services is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Boston, Massachusetts.

23.     Plaintiff hereby specifies, reserves and designates additional funeral homes that utilized the services of Bayview Crematory as Does 1 through 50, inclusive, as Defendants herein. The true names, identities and capacities of the Defendants sued as Does herein are presently unknown to Plaintiff, which reserves the right to amend to incorporate their true names, identities and capacities.

24.     Each of the defendants named in ¶¶9 to 23 are herein collectively referred to as the "Funeral Home Defendants."  Each of the Funeral Home Defendants utilized the services of defendant Bayview Crematory during the class period.

- 4 -

## JURISDICTION AND VENUE

25.     The Court has original jurisdiction over this matter, pursuant to 28 U.S.C.S. §1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential class members in which plaintiff is a citizen of Massachusetts while at least one defendant is a citizen of a different state.

26.     The Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and defendants; because the amount in controversy exceeds $75,000, exclusive of interest and costs as to Plaintiff, and each and every member of the Class who has been injured and damaged as a result of defendants' conduct. Additionally, the Class has a common and undivided interest in obtaining punitive damages and equitable relief that far exceed the jurisdictional minimum in value.

27.     Venue properly lies in this district pursuant to 28 U.S.C. §1391(a), because Plaintiff as well as many of the Funeral Home Defendants reside in this district of Massachusetts, as they conduct business in this district within the meaning of 28 U.S.C. §1391(a) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in this district of Massachusetts.

28.     Many of the defendants reside, are found, have an agent, or have transacted substantial business within the District of Massachusetts. Many of the material acts alleged herein occurred within the District of Massachusetts.

## CLASS ACTION ALLEGATIONS

29.     This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings this action both in her individual capacity, and as a class action against defendants, on behalf of herself and: (i) all persons who controlled the disposition of the remains of any decedents delivered for cremation to defendant Bayview Crematory; (ii) all persons

who were parties to any contract with any of the defendants regarding funeral arrangements for a decedent who was delivered for cremation to defendant Bayview Crematory; and (iii) the estates of the decedents and the representatives thereof (the "Class") during the period commencing at a date certain, presently unknown to Plaintiff, and continuing through February 23, 2005 (the "Class Period"). Excluded from the Class are defendants, including, the members of the Individual Defendants' families, any entity in which any defendant has a controlling interest, or which is a parent or subsidiary of, or which is controlled by, any defendants, and the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, or assigns of any of the defendants.

30.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class.

31.     Common questions of law and fact exist as to all Class members and predominate over any questions which affect only individual Class members. These common questions of law and fact include:

(a)     whether contrary to their contractual, fiduciary and non-delegable duties, defendants systematically and commonly failed to accomplish the cremation and disposition process with dignity and respect expected of them by public sensibilities;

(b)     whether defendant Bayview Crematory systematically and commonly mishandled, desecrated, abused and commingled the remains of decedents in a manner offensive to human sensibilities and/or expressly prohibited by law; and

(c)     whether the Funeral Home Defendants turned a blind eye or otherwise failed to inspect, supervise, monitor or oversee Bayview Crematory's practices.

32.    Plaintiff's claims are typical of the claims of the Class members she seeks to represent in that Plaintiff and each Class member sustained, and continues to sustain, damages arising from Defendants' wrongdoing. Plaintiff's damages, as well as the damages of each Class member, were caused by Defendants' wrongful conduct as alleged herein.

33.    Plaintiff will fairly and adequately protect the interests of those Class members she seeks to represent and has no interests that are antagonistic to the interests of any other Class member. Plaintiff has retained counsel who have substantial experience and success in complex litigation, including the litigation of class actions and consumer protection claims, including consumer protection claims in the class action context.

34.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable. Furthermore, because the damages suffered, and continued to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

35.    In addition, the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## COMMON FACTUAL ALLEGATIONS

### Bayview Crematory Mishandled and Commingled Corpses

36.    Throughout the Class Period, Bayview Crematory (which operated without a license since at least 1999) picked up bodies, cremated them, and returned the ashes to the Funeral Home

- 7 -

Defendants for the low price of $190. If the Funeral Home Defendants followed industry practice and transported the bodies of the decedents themselves, it would cost as much as $265. Bayview Crematory's pickup-and-delivery policy allowed the Funeral Home Defendants to either lower their prices or sharply increase their profits.

37. The Funeral Home Defendants, in order to either save the small sum of approximately $75 per deceased body, entrusted the remains of the loved ones of Plaintiff and the other Class members to Bayview Crematory even though that meant that the Funeral Home Defendants would have to turn over control of bodies under their charge. Reputable funeral home operators would not use Bayview Crematory because they did not feel comfortable turning over control of the bodies of the deceased to Bayview Crematory.

38. For example, as reported in an article in *The Boston Globe* on June 29, 2003 titled, "N.H. Firm Offers Lift to Funeral Homes' Bottom Line But Questions, Complaints Are Raised Against Operator":

> Robert Biggins, the owner of the Magoun-Biggins Funeral Home in Rockland, said he had no personal knowledge of Bayview Crematory **but was troubled by the idea of relinquishing control of a body under his charge.** He said families turn over a loved one to his funeral home, not to a crematory they know nothing about. He said the Tri-State Crematory in Noble, Ga., also operated a pickup and delivery system, which shielded it from funeral home scrutiny. Investigators last year found more than 300 decomposed and mummified bodies in the woods surrounding Tri-State Crematory.
>
> **John Anderson**, owner of Anderson-Bryant Funeral Home in Stoneham, **said Bayview's approach concerned him**. He said his funeral home prefers to take bodies to a crematory and watch the whole process. "That eliminates the problem they had in Georgia," he said.

[Emphasis added.]

39. Regardless of the price charged for their services, Defendants, as well as the entire cremation and funeral home industry, have an ethical code which demands decorum and respect in

- 8 -

handling human remains. However, the Funeral Home Defendants knew, or recklessly and/or negligently disregarded, that Bayview Crematory failed to abide by this ethical code.

**Defendant Wallace Was Suspended for Five Years for Unprofessional Conduct**

40.     On August 25, 2004, the Board of Regulation of Funeral Directors and Embalmers handed defendant Wallace a five-year suspension as a result of unprofessional conduct and deceptive practices, including one case where he refused to complete funeral arrangements for a client because she had purchased a lower-priced casket elsewhere. Defendant Wallace lost his licenses as an embalmer and funeral director for violating a number of rules which regulate the way funeral directors interact with customers.

41.     According to the 53-page decision from the Board of Regulation of Funeral Directors and Embalmers (the "Decision"), Wallace attempted **to cover up his transgressions** and was unwilling to take the charges against him seriously. In fact, **Wallace had to be reprimanded and asked not to laugh during witness testimony**.

42.     The Decision noted that: "Respondent claims that he made many 'mistakes' which do not rise to the level of gross misconduct . . . . If there were only one mistake, that argument might hold water. However, what he terms mistakes were a **litany of violations** of the board's rules and regulations."

43.     Accordingly the board found Wallace violated a large number of board regulations and rules.

44.     The charges against Wallace arose primarily from three complaints. One of the complaints claimed that Wallace had embalmed a body in October 2001 but refused to handle the rest of the funeral arrangements after learning the deceased's daughter had purchased a lower-priced casket from another company. Wallace's actions violated Federal Trade Commission rules that state that funeral homes cannot decline to do business with a customer who purchased a casket from

- 9 -

another vendor. According to the Decision, Wallace then held the body hostage and refused to release it until he received a certified check for $1,710, even though that charge was not justified.

45.    Another complaint accused Wallace of reneging on a prepaid funeral contract. Although the deceased's mother had paid $4,375 in 1990 for a contract that she assumed would cover the cost of her funeral whenever she died, Wallace improperly charged the deceased's next of kin an additional $1,200 to $1,400 and also tried to substitute a casket of lesser quality than the one that the deceased had originally selected and paid for.

46.    Wallace was also disciplined for his ownership of the Bayview Crematory. The board concluded Wallace violated Massachusetts regulations barring funeral directors from owning cemeteries or crematories. According to the Decision, Wallace tried to cover up his violation of the regulations in September 2002 by selling his interest in the crematory to his mother for $1 while continuing to run the facility. "The number of misrepresentations by Derek Wallace in connection with this dual ownership is staggering," the board said in its Decision.

47.    Additionally, defendant Hart-Wallace Funeral Home was shut down as a result of defendant Wallace's conduct.

## The Police Shut Down Bayview Crematory Due to a Series of Gruesome Finds

48.    On February 23, 2005, the New Hampshire police, executing a warrant for financial records at Bayview Crematory, made a series of gruesome finds prompting them to shut it down. Police officers found, among other things: unlabeled urns filled with ashes; two bodies stuffed into a single oven; a body rotting in a broken freezer; and a trash bin heaped with charred pacemakers, hip replacements, and prosthetics.

49.    An article in *The Boston Herald* titled "Cops find rotting corpse at crematory" on February 24, 2005 stated in part:

"We discovered we had a decaying body in a broken cooler," Rockingham County Attorney James Reams said.

The body had decomposed there for seven to 10 days at 78 degrees.

Reams said they also found a worker burning two "intermingled" bodies at the same time in the same oven, as well as blood and other medical waste in a Dumpster outside the crematorium that records show has operated unlicensed since at least 1999.

50.     Investigators probing the Bayview Crematory noted that Bayview's practices were so shoddy that hundreds of New England families could not be sure that the high-volume, low-priced crematorium gave them back the right ashes. Bayview Crematory handled the remains of hundreds of Massachusetts residents, as well as cadavers from Harvard Medical School, despite operating without a required license for six years. The Rockingham County Attorney, Jim Reams, who is in charge of the case, admitted that: "There is nothing we can do to assure [families] that they have the right remains."

51.     According to the Funeral Consumers Alliance of Eastern Massachusetts, a watchdog group that advises consumers, "The funeral homes that used Bayview betrayed the confidence of the families they served."

52.     Indeed, rather than having a funeral director accompany a body from funeral home to crematorium, Bayview simply picked up bodies on its own, cutting costs in half and generating much business from funeral homes in New Hampshire, Massachusetts and other states.

53.     The Funeral Home Defendants are responsible for the atrocities that occurred at Bayview Crematory because they knew, or recklessly and/or negligently disregarded, the disrespectful way that Bayview Crematory treated the remains of the loved ones of Plaintiff and the Class. A February 26, 2005 article in *The Boston Globe* titled "Families' Doubt on Ashes Led to Lawsuits Crematory Was Sued Last Year in Boston" stated in part:

- 11 -

The focus for now is still on Bayview, a low-price crematory that is not held in high regard, according to a funeral director at one Boston-area funeral home, who said Bayview was avoided because of the way it did business.

**"It was pretty well-known throughout the industry that they were a shoddy operation," said the director, who spoke on condition of anonymity.**

"They would send a box truck around, and they would swing through the area twice a week," he said. "They would tag a box, put the body in it, and continue on their way."

[Emphasis added.]

54.     On March 20, 2005, it was reported in an article over *The Associated Press State &
Local Wire* titled "Unlicensed crematorium operator faces more complaints" that defendant Wallace was being investigated on two new complaints brought by the Massachusetts Division of Professional Licensure. One complaint alleges he double-billed a family of \$600 that had been prepaid by their dead relative. The other alleges a falsified signature of a Massachusetts medical examiner was on a death certificate.

55.     On April 18, 2005, it was reported that ashes in four urns seized at Bayview Crematory in February 2005 will probably never be identified because the paperwork seized at Bayview did not reveal whose remains were in the urns. After remains are cremated there's no DNA.

56.     On May 13, 2005, authorities found the remains of 25 bodies in urns when they raided the Hart-Wallace Funeral Home and Simplicity Burial and Crematory. Defendant Wallace owns Hart-Wallace Funeral Home and co-owns Simplicity Burial and Crematory.

57.     Three of the leading cremation and funeral associations, the Cremation Association of North America ("CANA"), the International Cemetery & Funeral Association ("ICFA"), and the National Funeral Directors Association ("NFDA") engaged in a cooperative effort and set forth basic due diligence steps for funeral homes when dealing with crematories. These due diligence steps

were presented in a "Due Diligence for Funeral Homes Utilizing Third Party Crematories" package (the "Due Diligence Package") and were made available to each of the members of CANA, ICFA and NFDA. The Due Diligence Package recommended that each funeral home follows the due diligence steps in order to "protect the cremation families it serves."

58.     The Introduction of the Due Diligence Package stated that each funeral home "has a responsibility to the family to ensure that the crematory will carry out the cremation in a legal, professional and ethical manner." Importantly, the Due Diligence Package clearly stated that the "funeral home should deliver the remains to the crematory using its own personnel." Instead of adhering to this important principle, each of the Funeral Home Defendants utilized Bayview Crematory to pick up remains from the Funeral Home Defendants and then drop them off when the cremation process was completed.

59.     Additionally, the Due Diligence Package stated that each funeral home should have a "due diligence" file on each outside crematory the funeral home uses and that an "important aspect of due diligence is a review of the licenses and operational records of the crematory." It was recommended that the records request should be updated at least once a year. Had any of the Funeral Home Defendants reviewed the licenses of Bayview Crematory, they would have readily determined that Bayview Crematory had operated without a license since at least 1999. Finally, the Due Diligence Package recommended that each funeral home should conduct an unannounced inspection of the crematory at least once a year and document their findings.

60.     Throughout the Class Period, the Funeral Home Defendants executed individual contracts with Plaintiff and each member of the Class to perform funeral related services in connection with the passing of a loved one, including cremation services. These services were to be

- 13 -

performed in a respectful manner. Each decedent's remains were to be cremated with dignity and respect in keeping with public sensibilities and in accordance with the law.

61. Motivated by greed, the Funeral Home Defendants each used Defendant Bayview Crematory to carry out the cremation process for the benefit of Plaintiff and the Class. However, the Funeral Home Defendants chose to have the cremations take place in a facility that was never properly approved or established under any appropriate state regulations or laws and did not have the authority to do the cremations that were conducted.

62. Contrary to their contractual, fiduciary and non-delegable duties, defendants commonly and systematically failed, throughout the Class Period, to accomplish the cremation and disposition process with the dignity and respect expected of them by public sensibilities and required of them by law. Defendants, without describing their actual practices or obtaining express written permission from Plaintiff or any Class members, knowingly, recklessly and/or negligently permitted and facilitated the disrespectful, improper and illegal mishandling, desecration, abuse and commingling of the remains of the decedents.

63. Throughout the Class Period, Defendant Bayview Crematory systematically and commonly mishandled, desecrated, abused and commingled the remains of the decedents in a manner offensive to human sensibilities and/or expressly prohibited by law.

64. The Funeral Home Defendants failed to inspect, supervise, monitor or oversee Bayview Crematory's practices although they were under a duty to do so and thereby breached their duties to Plaintiff and the Class. The Funeral Home Defendants also failed to return the cremated remains of family members.

65. The failure of each and every Funeral Home Defendant to discharge its duty of special care to ensure that the remains entrusted to their care were handled respectfully and in

- 14 -

accordance with the wishes of the families of the deceased contributed to and caused harm to Plaintiff and the Class. Had any one of the Defendant Funeral Home Defendants inspected, supervised or monitored Bayview Crematory's cremation practices, as this special duty requires, Bayview Crematory's practices would have been discovered and stopped before widespread injury took place. Because each and every Defendant Funeral Home failed to meet its duty, Bayview Crematory was able to continue its practice of mishandling, commingling and desecrating the remains of the loved ones of family after family. Through defendants' willful, reckless, and/or negligent failure to discover and/or disclose the true nature of the facilities, equipment, practices, and procedures utilized at Bayview Crematory about the true nature of the practices at Bayview Crematory, each defendant contributed to and caused harm to every member of the Class by enabling and facilitating the mishandling, commingling and desecration of the decedents' remains.

66.     Additionally, each of the Funeral Home Defendants owned and or controlled by defendant Wallace and/or Stokes had direct knowledge of the wrongful conduct at Bayview Crematory and intentionally steered business to Bayview Crematory for financial gain irrespective of the wrongful acts described herein.

67.     The remains of the decedent, Robert Lowe Cashman, who died on April 6, 2004, were entrusted at or about that time to Defendant Hamel, Wickens & Troupe Funeral Home, by plaintiff Lorraine Hunt, his daughter, and thereafter picked up by, or delivered to, Bayview Crematory for cremation. Bayview Crematory issued a cremation certificate #4176 and indicated a cremation date of April 8, 2004.

68.     Plaintiff is now informed and believes, and thereon alleges, that her father was subjected to the unlawful and improper practices of Bayview Crematory. Her father's remains were not cremated with dignity and respect or in accordance with their wishes or the law. Instead, his

- 15 -

remains were subjected by the defendants to commingling, mishandling, abuse and other improper practices and processes and, as a proximate result, were desecrated, mishandled and/or commingled together with the remains of other Class members' loved ones.

69.     Because the defendants exercised complete control over the remains of the decedents and due to defendants' improper and unlawful desecration of the remains, many families whose loved ones were given to Defendant Bayview Crematory will never know to what treatment the remains of their loved ones were subjected.

70.     Plaintiff's claims arose out of a series of transactions or occurrences that have a question of law or fact common to all Defendants. The series of transactions or occurrences that have a common question of law or fact is the series of contracts between Plaintiff and the other Class members and the Funeral Home Defendants. The series of occurrences that have a common question of law or fact are the events at Defendant Bayview Crematory's property (a common locale) involving the mishandling of Plaintiffs' and the Class members' decedents' remains.

71.     As a proximate result of: (a) defendants' representations that the decedents' remains would be and had been cremated in the authorized and requested manner with dignity and respect; (b) the defendants' possession and control of the remains of the decedents' remains and complete control over the manner of treatment of these remains; and (c) the concealment by the defendants of the mistreatment, mishandling, desecration and abuse of the remains, Plaintiff and the Class members did not discover that their loved one's remains were subjected to the defendants' misconduct until within one year preceding the filing of this Complaint.

## COUNT I

## EQUITABLE (INJUNCTIVE AND/OR DECLARATORY) RELIEF (AGAINST ALL DEFENDANTS)

72.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.    Plaintiff and the Class members and/or their decedents entered into written or oral contracts with the defendants to obtain and ensure the cremation of their loved ones in an individual, dignified, respectful and lawful manner. Plaintiff and the Class members and/or their decedents were induced to enter into such contracts by the defendants' representations, which emphasized and assured the dignified and respectful manner in which the decedents' remains would be handled and cremated and omitted any information regarding the actual practices of Bayview Crematory or the defendants' failure to inspect, supervise or monitor Bayview Crematory. Plaintiff and the Class members were the natural and intended beneficiaries of those written and oral contracts.

74.    Plaintiff and the Class members and/or their decedents performed all promises, covenants and conditions required on their part to be performed pursuant to the cremation contracts and have fully paid the agreed-upon price for the defendants' services.

75.    During the Class Period, the defendants breached these contracts by failing to accomplish the cremation of the remains of the decedents in an individual, dignified, respectful and/or lawful manner.

76.    Instead, the defendants employed, authorized and/or allowed the employment of processes and practices resulting in the mishandling, abuse and commingling of the decedents' remains.

77.    The remains of the decedents were improperly and unlawfully handled while in the defendants' exclusive possession and control, without the authorization, knowledge, permission,

- 17 -

consent or ratification of Plaintiff or the Class members. The remains were abused, desecrated and commingled with each other and disposed of as no more than garbage, such that the integrity of the remains was violated and the remains were not returned to Plaintiff and the Class for disposition. The decedents' remains were not afforded individual, respectful and dignified disposition and were, instead, mishandled, abused and desecrated.

78.     The named Plaintiff and the Class members are charged by law, by their own perceived moral obligations and ethical duties and by natural sentiments to accomplish the disposition of their decedents' remains as requested by the decedents, as set forth in the cremation contracts with the defendants, and in keeping with public sensibilities and the law.

79.     No adequate remedy at law exists to address the abuse of the decedents' remains and, due to the defendants' actions, there may be no way to undo the injustices that have been done. Worse, many family members who entrusted their departed loved ones to the defendants may never be able to learn the true fate of their remains.

80.     Accordingly, Plaintiff, on behalf of herself and the Class, requests the following equitable relief:

(a)     A judicial determination and declaration of the rights of Plaintiff and the Class and the responsibilities of the defendants with respect to the remains that are the subject of this action;

(b)     That the defendants be enjoined to return to Plaintiff and the Class members any and all remains of decedents still in the Defendant Bayview Crematory's possession, custody or control so that respectful and dignified disposition of the remains may be accomplished;

(c)     That the defendants disclose to Plaintiff and the Class, insofar as is possible, the whereabouts of the desecrated and commingled remains and residue containing commingled

- 18 -

remains of decedents delivered to Bayview Crematory during the Class Period so that Plaintiff and the Class may carry out the dignified and respectful disposition of same;

(d)     That the property upon which the remains were discovered and in which they were interred, desecrated and commingled be held in trust for the benefit of the Class pending the ultimate disposition by the Court;

(e)     That the defendants be enjoined to cease and desist all mishandling, abuse and desecration of human remains; and

(f)     That the defendants be determined and declared to be financially responsible for the costs and expenses of accomplishing any and all dignified and respectful disposition of the decedents' remains as may be possible.

## COUNT II

## BREACH OF CONTRACT
## (AGAINST THE FUNERAL HOME DEFENDANTS)

81.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82.     Plaintiff and the Class members and/or their decedents entered into written or oral contracts with the Funeral Home Defendants to obtain and ensure the cremation of the decedents in an individual, dignified, respectful and lawful manner. The expectations of the named Plaintiff and the Class members, as reasonable persons, were that these contracts, expressly or by reasonable implication, assured the legal, dignified and respectful disposition of their decedents' remains. These contracts uniformly omitted material information regarding Bayview Crematory's actual practices, Bayview Crematory's unlicensed status, and the Funeral Home Defendants' failure to inspect, monitor or supervise Bayview Crematory. Plaintiff and the Class members were the natural and intended beneficiaries of those written and oral contracts.

- 19 -

83.    Plaintiff and the Class members and/or their decedents performed all promises, covenants and conditions required on their part to be performed pursuant to the cremation contracts and have fully paid the agreed-upon price for the defendants' services.

84.    The defendants breached their express written and oral contracts, implied contracts with and promises to Plaintiff, the Class and their decedents by improperly handling or causing the improper handling of the decedents' remains as described herein, and by failing to disclose the true nature of Bayview Crematory's practices and procedures.

85.    The class members were the natural and intended beneficiaries of the contracts with the defendants regarding funeral services to be provided for the decedents.

86.    As a proximate result of the defendants' breaches of contract, Plaintiff and the Class and/or their decedents have incurred damages in the amounts they previously paid the defendants for cremation services improperly performed, and, as a further result of the defendants' breaches of contract, Plaintiff and the Class have incurred and will incur additional monetary losses in attempting to recover, identify and respectfully dispose of the decedents' remains.

## COUNT III

### BREACH OF FIDUCIARY DUTY/SPECIAL DUTY
### (AGAINST ALL DEFENDANTS)

87.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

88.    By offering funeral-related services that Plaintiff and the Class reasonably expected would be performed or accomplished in a dignified and respectful manner, the defendants knowingly and intentionally entered into a special relationship of trust and confidence with Plaintiff, the Class and their decedents.  In entering into agreements to effectuate and complete the disposition of remains, the defendants undertook to respectfully, responsibly and lawfully discharge these duties

- 20 -

including specifically the duty to perform disposition services in a dignified and respectful manner, within the bounds of industry practice, and in accordance with all applicable law and regulations.

89.     The defendants were, therefore, charged with a fiduciary or special duty to Plaintiff, the Class and their decedents to fully and faithfully perform the disposition duties.

90.     By mishandling, abusing and desecrating the decedents' remains as described herein, by negligently or recklessly entrusting Bayview Crematory with the bodies of Plaintiff's and the Class's loved ones, and by failing to properly perform or accomplish those services that the defendants had expressly or impliedly agreed to perform, the defendants, and each of them, breached the fiduciary duties owed by them to Plaintiff, the Class and the decedents.

91.     As a direct and proximate result of the defendants' breaches of their fiduciary duties, Plaintiff and the Class have been damaged and injured as set forth above.

92.     Further, the failure of each and every Funeral Home Defendant to faithfully perform the disposition duties, including the failure to ensure that its agent, Bayview Crematory, properly and respectfully handled the decedents' remains, contributed to and caused injury to Plaintiff and the Class as a whole because but for the failure of each Funeral Home Defendant properly to discharge its duty, Bayview Crematory's horrific practices would have been discovered and stopped before widespread injury took place.

93.     Finally, the Funeral Home Defendants were recklessly or negligently complicit in, and vicariously liable for, the fraudulent concealment by the Bayview Crematory Defendants of the adulterated nature of the cremated remains returned by the Bayview Crematory Defendants to the families by failing to supervise, monitor, and inspect the premises and practices of Bayview Crematory, and thereby allowing Bayview Crematory's fraudulent practices to continue.

94.     The defendants' conduct in breach of their fiduciary obligations, was intentional, knowing, done with oppression, fraud and malice and/or done in reckless and conscious disregard of the rights of Plaintiff and the Class.  Plaintiff and the Class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing, enabling, aiding and abetting, or recklessly allowing similar indecencies upon human remains.

### COUNT IV

### FRAUDULENT CONDUCT
### (AS TO BAYVIEW CREMATORY DEFENDANTS)

95.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

96.     The conduct of the Bayview Crematory operations by the Bayview Crematory Defendants, as described in this Complaint, operated as a fraud upon Plaintiff and the Class in that the actual conduct of these defendants was uniformly and actively concealed from Plaintiff and the Class throughout the class period.

97.     Plaintiff's reliance on all defendants' proper conduct of every stage of the disposition process was justified and reasonable in that the Funeral Home Defendants, with whom Plaintiff and the Class dealt, and to whom they entrusted their loved ones' remains for disposition, held themselves out to be reputable, experienced and trustworthy entities in the business of funeral cremation and related services.

98.     Plaintiff and the Class first became aware and could first reasonably have become aware of the concealed misconduct of the Bayview Crematory Defendants on or about February 23, 2005.

99.    As a proximate result of the Bayview Crematory Defendants' fraudulent conduct, fraud and deceit, Plaintiff and the Class have suffered damages and injuries described herein.

100.    Bayview Crematory Defendants' fraud and deceit, consisting of: 1) their concealment of their unlicensed status; 2) their fraudulent conduct in commingling, desecrating, and adulterating the human remains entrusted to them and the resulting cremated remains; and 3) their uniform concealment and nondisclosure of this misconduct, and their implicit representation, through the return of separately packaged cremated remains, that cremations had been properly accomplished, concealing from Plaintiff and the Class in such a way that it was difficult or impossible for Plaintiff to discover the intrinsically commingled and adulterated nature of the cremated remains, was intentional, knowing, done with oppression, fraud and malice and done in reckless and conscious disregard of the rights of Plaintiff and the Class. Plaintiff and the Class are, therefore, entitled to punitive and exemplary damages from said defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## COUNT V

### NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

101.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

102.    At all material times, the defendants owed a duty to Plaintiff and the Class to act with the ordinary care of a reasonable person with respect to all aspects of the services promised including, but not limited to, all phases of the cremation process, including but not limited to the hiring, retention, training and supervision of all agents, employees and representatives of the defendants, in connection with such services and transactions, the management and administration of

- 23 -

the services and transaction, the association with other persons and entities to accomplish the performance of such services, the individual, proper and respectful performance of all steps of the cremation process, and the ascertainment that all such services were being fully and properly undertaken and performed.

103.     The defendants negligently and carelessly failed to discharge these duties.

104.     As a proximate cause of the defendants' negligence, Plaintiff and the Class members have been damages and injured as described herein.

## COUNT VI

### WILLFUL INTERFERENCE WITH REMAINS AND INTENTIONAL MISHANDLING OF A CORPSE (AGAINST ALL DEFENDANTS)

105.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

106.     Plaintiff and the Class, as the decedents' next of kin, had or have a personal quasi-property right to ensure the proper handling and burial of the decedents' remains.

107.     Plaintiff and the Class expressed their wishes to the defendants regarding the manner in which the remains were to be handled.

108.     The defendants had the opportunity to comply with Plaintiff's and the Class member's expressed wishes.

109.     The defendants, however, willfully and deliberately mishandled the decedents' remains, and/or caused, contributed to, or aided and abetted the Bayview Crematory Defendants' mishandling by knowingly failing to assure that Bayview Crematory's operations were conducted properly, respectfully, and in accordance with all applicable law and regulations, and thereby interfered with the rights and responsibilities of Plaintiff and the Class to effect the proper

- 24 -

disposition of the remains with utmost dignity, in accordance with the law and their wishes, requests and beliefs.

110.    The defendants' mishandling of the remains and their interference with the rights of Plaintiff and the Class precluded Plaintiff and the Class from exercising their rights and performing their responsibilities of appropriately disposing of the remains of their decedents.

111.    As a direct, known, foreseeable and proximate result of the intentional mishandling of the remains by the defendants, Plaintiff and the Class have suffered and continue to suffer injury and damages.

112.    In mishandling or causing or contributing to the mishandling of the remains of the decedents, the defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of Plaintiff and the Class. Plaintiff and the Class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## COUNT VII

### NEGLIGENT INTERFERENCE WITH REMAINS AND MISHANDLING OF A CORPSE (AGAINST ALL DEFENDANTS)

113.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

114.    Plaintiff and the Class, as the decedents' next of kin, had or have a personal quasi-property right to ensure the proper handling and burial of the decedent's remains.

115.    Plaintiff and the Class expressed their wishes to the defendants regarding the manner in which the remains were to be handled.

- 25 -

116.    The defendants had the opportunity to comply with Plaintiff's and the Class member's expressed wishes.

117.    The defendants negligently, recklessly and carelessly mishandled the decedents' remains and interfered with the rights and responsibilities of Plaintiff and the Class to dispose of the remains in ways unauthorized by Plaintiff and the Class and their decedents, ways that were contrary to the law and contrary to their wishes, requests and beliefs.

118.    The defendants' conduct was accomplished through a common course and practice of improper handling of remains, resulting from the defendants' own negligence and negligent entrustment of the decedents' remains to persons who lacked the qualifications, training, sensitivity, experience and integrity required to handle the remains properly and by the defendants' negligent failure to control, supervise and investigate the actions of such persons and entities.

119.    As a direct and proximate result of the defendants' negligent interference with the decedents' remains, Plaintiff and the Class have suffered and continue to suffer damages and injuries.

## COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL DEFENDANTS)

120.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

121.    The defendants' conduct directed toward Plaintiff and the Class members, as described herein, was intentional, knowing, and/or reckless. It is so outrageous that it is not tolerated by civilized society.

- 26 -

122.    As a direct and proximate result of the defendants' conduct, Plaintiff and the Class

suffered serious mental injuries and emotional distress that no reasonable person could be expected

to endure or adequately cope with.

123.    In their conduct, the defendants acted intentionally, knowingly, with oppression,

fraud and malice and in reckless and conscious disregard of the rights of Plaintiff and the Class.

Plaintiff and the Class are, therefore, entitled to punitive and exemplary damages from the

defendants in such amount as shall be necessary and appropriate to punish the defendants and to

deter them and anyone else from ever committing similar indecencies upon human remains.

## COUNT IX

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

124.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

forth herein.

125.    At all material times, the defendants owed a duty to Plaintiff and the Class to act with

the ordinary care of a reasonable person with respect to all aspects of the services promised

including, but not limited to, all phases of the cremation process, including but not limited to the

hiring, retention, training and supervision of all agents, employees and representatives of the

defendants, in connection with such services and transactions, the management and administration of

the services and transaction, the association with other persons and entities to accomplish the

performance of such services, the individual, proper and respectful performance of all steps of the

cremation process, and the ascertainment that all such services were being fully and properly

undertaken and performed.

126.    The defendants negligently and carelessly failed to discharge these duties.

- 27 -

127.    As a proximate cause of the defendants' negligence, Plaintiff and the Class members
have suffered serious and severe mental injuries and emotional distress that no reasonable person
could be expected to endure or adequately cope with.

## COUNT X

## CIVIL CONSPIRACY
## (AGAINST ALL DEFENDANTS)

128.    Plaintiff repeats and realleges each and every allegation contained above as if fully set
forth herein.

129.    Each and every of the defendants conspired to accomplish an unlawful purpose.

130.    Each and every of the defendants knew at all times relevant herein that the conduct of
the other defendants, including the Bayview Crematory Defendants, constituted a breach of duty and
gave substantial assistance or encouragement to the other defendants so to conduct themselves. Each
defendant offered substantial assistance and/or encouragement to the other defendants with the
knowledge that such assistance and/or encouragement was contributing to a common tortuous plan.

131.    As a result of defendants' conspiracy to accomplish an unlawful purpose, Plaintiff
and the Class members have suffered harm.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests the following relief, on behalf of herself and the Class:

(a)     Certification of this action as a class action, appointment of Plaintiff as Class
representative and undersigned counsel as class counsel;

(b)     An award of equitable, injunctive and declaratory relief described herein,
including judicial supervision of the defendants and a judicial determination of the rights and
responsibilities of the parties regarding the remains that are the subject to this action;

- 28 -

(c)     An award of compensatory damages in an amount deemed appropriate by the

trier of fact, jointly and severally against the defendants;

(d)     An award of punitive damages, jointly and severally against the defendants;

(e)     The establishment of a constructive trust upon the defendants' property,

revenues and/or profits for the benefit of the Class and disgorgement and restitution of the past

revenues and/or profits to the class;

(f)     An award of prejudgment and post-judgment interest;

(g)     An award of costs, including but not limited to discretionary costs, attorneys'

fees and expenses incurred in pursuing this case;

       (h)     Any other and further equitable relief this Court deems just and proper; and

       (i)     Any other and further relief to which they may be entitled at law or in equity.

DATED: June 1, 2005             By her attorneys,

                               */s/ Thomas G. Shapiro*

Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
53 State Street
Boston, MA 02109
Telephone: 617/439-3939
Facsimile: 617/439-0134

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
EVAN J. KAUFMAN
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiff Lorraine Hunt

- 30 -