UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. 1:05-CV-11140-RCL

LORRAINE HUNT, ON BEHALF OF HERSELF AND
OTHERS SIMILARLY SITUATED,
Plaintiff

v.

BAYVIEW CREMATORY, LLC, et al
Defendants

## THE DEFENDANT WILLIAM F. SPENCER FUNERAL SERVICES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT

### I.    STATEMENT OF THE CASE

William F. Spencer Funeral Services ("Spencer") is named as one of several defendants in the above-captioned suit. The Plaintiff claims her decedent's remains were handled by the co-defendant Hamel, Wickens & Troupe Funeral Home. Neither the Plaintiff nor her decedent had any relationship whatsoever with Spencer and the Plaintiff does not allege any relationship with Spencer in her Complaint. Although the Plaintiff's Complaint references an alleged "class," the Plaintiff has failed to identify any individual within that "class" that had any relationship with Spencer. Indeed, the Plaintiff has failed to identify any other member of the alleged "class" in any way.

### II.    STATEMENT OF THE ISSUES

A.    Should the Plaintiff's Complaint be dismissed where it fails to meet the requirements for a certification of a class pursuant to Fed. R. Civ. P. 23

and where the Plaintiff has not alleged any relationship between her, her decedent or any identified individual and Spencer?

B.      Should the Plaintiff's Complaint be dismissed where the court must decline jurisdiction pursuant to the Class Action Fairness Act of 2005?

C.      Should the Plaintiff's Complaint be dismissed for lack of jurisdiction if the class is not certified where there is not complete diversity of citizenship between the Plaintiff and the Defendants where both the Plaintiff and Spencer are citizens of Massachusetts?

D.      Should the Plaintiff's Complaint be dismissed where a state action arising out of the same transaction and seeking class certification was pending prior to the filing of the instant suit?

E.      Should the Plaintiff's Complaint be dismissed for failure to state a claim upon which relief can be granted with regard to all counts asserted against the Defendant Spencer where the Plaintiff has no relationship with Spencer and where the Plaintiff alleges no specific facts against Spencer to prove the essential elements of her claims?

## III.    ARGUMENT

### A.    MOTION TO DISMISS STANDARD

When considering a Motion to Dismiss, the court may take into account matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, in addition to the allegations in the complaint. See Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) *citing* 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357, at 299 (1990). It is appropriate … to allow a

2

motion to dismiss if the allegations of the complaint "clearly demonstrate that the plaintiff does not have a claim." Fabrizio v. City of Quincy, 9 Mass. App. Ct. 733, 734 (1980) *quoting* Wright & Miller, Federal Practice and Procedure § 1357 at 604 and cases cited in n. 84 (1969).

A defendant may move to dismiss an action against it based on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b) (6). Although the Court must accept well-pleaded facts as true, it cannot "accept a complainant's unsupported conclusions or interpretations of law." Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F. 2d 962, 971 (1st Cir). 1993 *citing* United States v AVX Corp., 962 F. 2d 108, 115 (1st cir, 1992). "It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes." Dartmouth Review v. Dartmouth College, 889 F. 2d 13, 16 (1st Cir. 1989). Further, the Court cannot credit the bald assertions or mere specious allegations made in the complaint. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Moreover, the rule does not entitle a plaintiff to rest on "subjective characterizations" or conclusory descriptions of "a general scenario which could be dominated by unpleaded facts." Dewey v. Univ. of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982). Rule 12 (b) (6) is not entirely a toothless tiger. Dartmouth, *supra*. Thus, plaintiffs are obliged to set forth in their complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Id. *citing* Gooley v. Mobil Oil

3

Corp., 851 F.2d 513, 514 (1st Cir. 1988). In this vein, the Plaintiff herein clearly fails to satisfy the standard. The Plaintiff critically fails to assert any factual allegations as pertaining to Spencer with regard to any material element of her claims. Indeed, other than naming Spencer as a defendant, *the Plaintiff has failed to allege any relationship between Spencer and herself or any identified class member* and the Plaintiff has failed to allege a single fact (as opposed to a baseless allegation) pertaining specifically to Spencer. Dismissal of the entire Complaint against Spencer is appropriate and equitable pursuant to Fed. R. Civ. P. 12(b)(6).

      **B.**     **THE COMPLAINT FAILS TO SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23 AND MUST THEREFORE BE DISMISSED AGAINST SPENCER WHERE THE PLAINTIFF ALLEGES NO RELATIONSHIP WITH SPENCER.**

Fed. R. Civ. P. 23(a) allows for members of a class to sue on behalf of all other members only if:

(1) the class is so numerous that joinder of all members is impracticable,
(2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4) the representative parties will fairly and adequately protect the interests of the class.

The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

4

Here, the Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 23. Notably, the Plaintiff has not identified a single other class member by name. The Plaintiff merely alleges that this suit involves "a class action of more than 100 ***potential*** class members." (emphasis added). However, the courts have clearly ruled that "(mere) speculation as to the number of members does not satisfy the Rule," Carr v. New York Stock Exchange, Inc., 414 F.Supp. 1292, 1304 (N.D.Cal. 1976).

Additionally, there are not common issues of law or fact where each of the alleged class members had different relationships with each of the defendants, where some alleged class members may have personally engaged in written contracts and where some may merely claim there was some sort of oral agreement between the defendants and the decedents. Damages will be unique to each alleged unidentified class member. Moreover, the claims and defenses of the representative class are not typical of those of the parties. The rights of the named Plaintiff are not similar to those of the unidentified class members whose unique relationships to the decedents and to the defendants has not been alleged. Indeed, while the Plaintiff alleges her decedent's remains were handled by Hamel, Wickens & Troupe Funeral Home, the Plaintiff fails to allege that a single identified "class member" had any relationship with Spencer.

Additionally, the representative parties will not fairly protect the interests of the class where the representative party herein cannot even identify any member of the class that had any relationship with Spencer and where she cannot even allege a single set of facts pertaining specifically to Spencer that would entitle anyone to a claim for relief. Moreover, in the unlikely event that class certification is deemed appropriate,

5

any class action claims can already be addressed in the currently pending state action that was commenced prior to this action. The state matter (discussed below), Paul Anzalone, et al v. Bayview Crematory, LLC, et al, C.A. No. 05-789C (Essex Superior Court) (attached hereto as Exhibit A), sought to certify a class of the identical members prior to the filing of the instant action. **_Each defendant named in the state matter has also been named in the instant suit and no defendant has sought removal of the state matter to federal court._** The pendency of two class actions arising out of the same alleged transactions based on state law in both the federal and state courts is an obstacle to the equitable administration of justice. Clearly, the certification of a class in this matter is inappropriate and the claim against Spencer must be dismissed where the named Plaintiff has not alleged any relationship with Spencer.

## C. THE COURT MUST DECLINE JURISDICTION OF THIS MATTER PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005.

In her complaint, the Plaintiff alleges jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332, apparently relying upon the recently enacted Class Action Fairness Act of 2005 ("CAFA"). CAFA expanded the subject matter jurisdiction of federal courts over class actions in which at least one plaintiff class member was diverse in citizenship from the defendant and where the amount in controversy exceeded $ 5 million. 28 U.S.C. § 1332(d). However, pursuant to CAFA, this court must decline jurisdiction of the instant matter.

28 U.S.C. § 1332(d)(4) provides:

A district court shall decline to exercise jurisdiction under paragraph (2)--

(A)(i) over a class action in which-

6

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
(II) at least 1 defendant is a defendant-

    (aa) from whom significant relief is sought by members of the plaintiff class;

    (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

    (cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

Here, the Plaintiff has failed to identify the potential class members. To the extent the face of the pleadings name the Plaintiff, an admitted citizen of Massachusetts, as the sole identified class member and "others similarly situated," the court must accept the pleadings as identifying more than two-thirds of the class members as Massachusetts citizens. Additionally, the majority of defendants (more than two-thirds) are Massachusetts citizens. The Plaintiff is seeking significant relief from the Hamel, Wickens & Troupe Funeral Home, a Massachusetts corporation, whose alleged conduct is the basis for the Plaintiff's claim. Furthermore, the principal injuries allegedly committed by the Defendants were committed in Massachusetts. No other class action asserting the same or factual allegation has been filed in the District Court of Massachusetts in the past three years. The declination of jurisdiction is therefore appropriate.

In the alternative, the court may decide to decline jurisdiction based on 28

U.S.C. § 1332(d)(3), which provides:

(3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--
   (A) whether the claims asserted involve matters of national or interstate interest;
   (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
   (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
   (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
   (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
   (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

The legislative history of CAFA clearly reveals Congress' desire to limit a

plaintiff's forum shopping in a class action matter. In consideration of the interest of

justice, the totality of the circumstances and the factors enumerated in CAFA, the

court may appropriately dismiss the Plaintiff's Complaint here for lack of jurisdiction

where the claims involve matter of Massachusetts interest, where the claims will be

governed by the laws of Massachusetts, where the class action was pleaded in a

manner to avoid another forum where an identical class action was already pending,

where Massachusetts has a distinct nexus to the class members, the harm and the

defendants, where the substantial number of all parties are citizens of Massachusetts

and where a similar class action was already filed in Massachusetts Superior Court.

Dismissal of the instant case is fair and appropriate in this matter.

**D.    IF THE CLASS IS NOT CERTIFIED THEN THE PLAINTIFF'S CLAIM MUST BE DISMISSED FOR LACK OF JURISDICTION WHERE THERE IS NOT COMPLETE DIVERSITY OF CITIZENSHIP.**

In the event the class is not certified and the action is not entitled to the benefit of CAFA, then the instant matter must be dismissed for lack of complete diversity jurisdiction.  The Plaintiff erroneously alleges that her suit is entitled to jurisdiction because there is complete diversity of citizenship, however, her own pleadings indicate such statement is incorrect.  The Plaintiff's claim of diversity fails as a matter of law where she alleges ***both Plaintiff and Spencer are citizens of Massachusetts***.  Where there is no class action, the federal rules require complete diversity to exercise such jurisdiction. See Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 810 (1st Cir. 1991) ("Under 28 U.S.C. § 1332 (a)(1), there is diversity of citizenship if the plaintiff is a 'citizen' of a different state than all of the defendants.") ; see also Borrows v. Robson, 993 F. Supp. 17, 18 (D. Mass. 1997).  The Court has consistently interpreted § 1332 as requiring ***complete diversity***: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 375 (1978).  Clearly, the action must be dismissed against Spencer in the event the Court agrees that the class should not be certified.

**E.    THE PLAINTIFF'S CLAIM SHOULD BE DISMISSED BASED ON THE PENDENCY OF A STATE ACTION ARISING OUT OF THE SAME TRANSACTION.**

The Plaintiff's claims should be dismissed in this matter because another case already pending in state court arises out of the same issues contained herein.  In

9

Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), the Supreme Court listed various circumstances under which a federal district court might decline to exercise jurisdiction based on the pendency of a state action arising out of the same transaction. The Court set forth four factors: 1. whether property is involved in the litigation; 2. the inconvenience of the federal forum; 3. the desirability of stopping piecemeal litigation; and 4. the order in which jurisdiction was obtained by the courts. Id. at 813. In Moses H. Cone v. Mercury Construction Corp., 460 U.S. 1 (1982), the Court added two more elements: 5. whether federal law or state law controls and 6. whether the state forum will adequately protect the interests of the parties.

Here, the matter of Paul Anzalone, et al v. Bayview Crematory, LLC, et al, C.A. No. 05-789C was filed in Essex Superior Court several weeks prior to the filing of the instant Federal Complaint. All of the defendants named in the Anzalone suit were also named in the instant Federal action. Additionally, the Anzalone suit seeks to certify a class of which the Plaintiff in the instant suit could be a member and the Anzalone suit seeks redress for the same issues claimed in the instant suit. No defendant has sought relief from the Class Action Fairness Act in the form of removal to federal court. As such, the instant matter should be dismissed under the Colorado River, *supra*, and Cone, *supra*, standards. The Federal forum is inconvenient and inappropriate for the Defendant Spencer where both Spencer and the Plaintiff and Massachusetts residents and where Spencer has already been named in a nearly identical suit in state court. Additionally, the Court has a strong desire to avoid piecemeal litigation and the dismissal of the Federal Complaint would clearly

10

accomplish such a goal.  The state court jurisdiction is also more appropriate in this matter where the state court had original jurisdiction over this matter weeks prior to the filing of the instant suit and where all the claims contained herein can be adjudicated under state law.  Finally, the state court forum will clearly protect the interests of all the parties where both the Plaintiff and Spencer are Massachusetts residents.   In applying the <u>Colorado River</u>, *supra* doctrine, courts have found it significant in dismissing cases that "the ordinary justification for having jurisdiction over diverse citizens is not present. . . ."  <u>Microsoftware Computer Systems v. Ontel Corp.</u>, 686 F.2d 531 (7th Cir. 1982).  Here, there simply is no need to protect any out-of-state party, there is not complete diversity and the Federal court should decline to exercise jurisdiction over this matter and dismiss the Plaintiff's Complaint.

**F.    THE PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

"A [m]otion to dismiss [the] complaint on grounds it fails to state a claim upon which relief can be granted should ... be granted [where] it appears certain that the complaining party is not entitled to relief under any set of facts which could be proved in support of his claim."  <u>Spinner v. Nutt</u>, 417 Mass. 549 (1994).  Here, it is evident beyond doubt that the Plaintiff can prove no set of facts in support of her claims and that the Plaintiff is not entitled to relief under any theory of law.  ***The Plaintiff admits in her Complaint that neither she nor her decedent had any relationship whatsoever with Spencer***.  Furthermore, the ***Plaintiff fails to identify any individual in the purported class that had any relationship with Spencer***.  The Plaintiff's entire Complaint against Spencer is based on bald and baseless assertions made generally

11

against all the funeral home/director defendants with no specific facts alleged as to Spencer's alleged wrongdoing. Moreover, the Plaintiff's conclusory yet unsupported allegations against Spencer are pure arbitrary puffery and as such, the Plaintiff has absolutely no expectation of proving the essential elements of her claim. Dismissal is therefore appropriate in this matter pursuant to Fed. R. Civ. P. 12(b).

### 1.    THE PLAINTIFF FAILS TO STATE A CLAIM FOR EQUITABLE RELIEF AGAINST SPENCER.

In her complaint, the Plaintiff has failed to allege sufficient facts against Spencer that, if accepted as true, state a claim for which any equitable (injunctive and/or declaratory) relief may be granted. The Plaintiff fails to assert any specific facts regarding any alleged contract or interaction between herself or anyone other identified individual and Spencer. The Plaintiff also fails to specifically allege any wrongdoing by Spencer. The Plaintiff further fails to identify any specific decedent allegedly entrusted into Spencer's care. As such, the relief requested by the Plaintiff is impossible with regard to Spencer. Dismissal of the Plaintiff's baseless Complaint against Spencer is indeed the only equitable relief that should be granted in this matter.

### 2.    THE PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST SPENCER.

In her complaint, the Plaintiff has failed to allege sufficient facts against Spencer that, if accepted as true, state a claim for which relief may be granted for breach of contract. The facts recited by the Plaintiff demonstrate that she and Spencer have **no** contractual relationship. The Plaintiff alleges that her decedent's remains were

entrusted to the Hamel, Wickens & Troupe Funeral Home. *The Plaintiff never alleges that she or her decedent had any relationship whatsoever with Spencer. The Plaintiff has failed to identify a single person of the alleged class that had any contractual relationship with Spencer*. The Plaintiff fails to identify or attach as an exhibit any alleged contract executed by Spencer. Where there was no relationship between the Plaintiff and Spencer, the Plaintiff has no expectation of proving the essential elements of a breach of contract claim and the Plaintiff's claim must be dismissed.

### 3. THE PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY/SPECIAL DUTY AGAINST SPENCER.

In her complaint, the Plaintiff has failed to allege sufficient facts against Spencer that, if accepted as true, state a claim for which relief may be granted for breach of fiduciary/special duty. The Defendant Spencer has found *no caselaw in this circuit that identifies any special or fiduciary duty owed to a customer by a funeral home or its director*. The complaint contains no facts, as opposed to baseless allegations, no matter how favorably construed in favor of the Plaintiff, from which the Court could even infer that Spencer entered into any agreement with the Plaintiff or any other identified decedent, that Spencer owed any special or fiduciary duty to any identified Plaintiff, that Spencer "mishandled", "abused" or "desecrated" any identified remains, or that Spencer was "complicit in ... fraudulent concealment by the Bayview Crematory Defendants." As such, dismissal of the Plaintiff's Complaint is appropriate.

### 4. THE PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE AGAINST SPENCER.

In her complaint, the Plaintiff has failed to allege sufficient facts against Spencer that, if accepted as true, state a claim for which relief may be granted on her allegations of negligence. Again, *the Plaintiff fails to assert any facts identifying any relationship between her, her decedent or any identified alleged class member and Spencer*. Therefore, the Plaintiff has no expectation of proving any set of facts that Spencer owed or breached any duty to the Plaintiff. Furthermore, the Plaintiff cannot prove that any alleged conduct by Spencer caused her any harm where she had no relationship whatsoever with Spencer. The Plaintiff's claim for negligence must thus be dismissed.

> 5.    **THE PLAINTIFF FAILS TO STATE A CLAIM FOR WILLFUL INTERFERENCE WITH REMAINS AND INTENTIONAL MISHANDLING OF A CORPSE AGAINST SPENCER.**

In her complaint, the Plaintiff has failed to allege sufficient facts against Spencer that, if accepted as true, state a claim for which relief may be granted for negligent interference with remains and mishandling of a corpse. Spencer has been unable to find any caselaw in this Circuit that has recognized a claim for the intentional mishandling of a corpse or for willful interference with remains. Nonetheless, *the Plaintiff has not alleged any relationship between her or any identified decedent and Spencer*. As such, the Plaintiff cannot prove any set of facts that establish that anyone expressed their wishes to Spencer regarding any alleged remains entrusted to Spencer's care. The Plaintiff's bald assertions that Spencer "willfully and deliberately" mishandled the decedents' remains are baseless where the Plaintiff cannot even identify a single decedent for which

14

Spencer provided funeral services.  The Court simply cannot give credence to the Plaintiff's conclusory yet unfounded allegations and the Complaint must be dismissed.

### 6.    THE PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INTERFERENCE WITH REMAINS AND MISHANDLING OF A CORPSE AGAINST SPENCER.

In her complaint, the Plaintiff has failed to allege sufficient facts against Spencer that, if accepted as true, state a claim for which relief may be granted for negligent interference with remains and mishandling of a corpse.  Again, *the Plaintiff has not alleged any relationship between her or any identified decedent and Spencer*.  The Plaintiff has not established that any identified relative of any decedent had any communications with Spencer.  Where the identity of the remains in issue has not even be revealed by the Plaintiff in the Complaint, the claim must fail as a matter of law and the count must be dismissed against Spencer.

### 7.    THE PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST SPENCER.

In her complaint, the Plaintiff has failed to allege sufficient facts against Spencer that, if accepted as true, state a claim for which relief may be granted on her allegations of intentional infliction of emotional distress.  *The Plaintiff has not alleged that she had any interaction whatsoever with Spencer.  The Plaintiff has not identified a single alleged class member that had any interaction whatsoever with Spencer*.  The Plaintiff cannot prove any set of facts that establish that Spencer intentionally partook in any outrageous conduct or that any individual was harmed by Spencer.  As such,

Spencer cannot possibly be found to have intentionally inflicted emotional distress upon an unidentified person and the claim must be dismissed.

### 8.    THE PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST SPENCER.

In her complaint, the Plaintiff has failed to allege sufficient facts against Spencer that, if accepted as true, state a claim for which relief may be granted on her allegations of intentional infliction of emotional distress. *The Plaintiff has not alleged that she had any interaction whatsoever with Spencer. The Plaintiff has not identified a single alleged class member that had any interaction whatsoever with Spencer.* Where Spencer owed no duty to the Plaintiff or any other unidentified individual allegedly in the class, Spencer cannot be found to have negligently breached that duty or inflicted harm. Moreover, where neither the Plaintiff nor any other alleged class member had any relationship with Spencer, Spencer could not have caused them harm and the claim must be dismissed.

### 9.    THE PLAINTIFF FAILS TO STATE A CLAIM FOR CIVIL CONSPIRACY AGAINST SPENCER.

In her complaint, the Plaintiff has failed to allege sufficient facts against Spencer that, if accepted as true, state a claim for which relief may be granted on her allegations of civil conspiracy. In addition to the baseless claims discussed above, the Plaintiff seeks to hold Spencer liable as part of an industry-wide conspiracy to accomplish some *unidentified* "unlawful purpose" and "tortuous plan." The Plaintiff fails to allege even a scintilla of evidence that Spencer was a party to any conspiracy and the Plaintiff has failed to allege any acts by Spencer

16

in connection with such a conspiracy. The Plaintiff fails to assert how Spencer participated in any alleged scheme with the other defendants. Without any supportable assertions regarding Spencer's role, the Plaintiff's baseless allegations that Spencer co-conspired with the other defendants amounts to nothing more than "bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like" that this Court cannot credit. Aulson v. Blanchard, 83 F.2d 1, 3 (1st Cir. 1996); see also United States v. AVX Corp., 962 F. 2d 108, 115 (1st Cir. 1989) ("[E]mpirically unverifiable conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference."), *quoting* Dartmouth Review, *supra*. Accordingly, all claims against Spencer must be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, the Defendant respectfully requests that its Motion to Dismiss be granted in full or in part.

Dated: August 19, 2005

WILLIAM F. SPENCER
FUNERAL SERVICES,
By Its Attorneys,
CURLEY & CURLEY, P.C.

Robert A. Curley, Jr., Esq.
BBO #109180
Kim M. Roussos, Esq.
BBO #637408
27 School Street
Boston, MA 02108
(617) 523-2990

17

CERTIFICATE OF SERVICE

I, Kim M. Roussos, Esq., hereby certify that I served a true and correct copy of the foregoing pleading by mailing a copy postage prepaid to the following counsel of record:

Thomas G. Shapiro, Esq.
Theodore M. Hess-Mahan, Esq.
Shapiro, Haber & Urmy, LLP
53 State Street
Boston    MA    02109

George F. Clancy, Esq.
Fuller, Rosenberg, Palmer & Beliveau
340 Main Street, Suite 817
Worcester  MA   01608

Samuel H. Rudman, Esq.
Robert M. Rothman, Esq.
Evan J. Kaufman, Esq.
Lerach, Coughlin, Stoia, Geller,
   Rudman & Robbin, LLP
200 Broadhollow Road, Suite 406
Melville    NY    11747

Dona Feeney, Esq.
Getman, Stacey, Tamposi, Schulthess, &
   Steere
163 South River Road
Bedford   NH    03110

Bradley A. MacDonald, Esq.
Cummings, King & MacDonald
One Gateway Center
Newton    MA    02458

Richard B. McNamara, Esq.
Wiggin & Nourie, PA
670 North Commercial Street
P.O. Box 808
Manchester NH    03105

Joseph M. Desmond, Esq.
Morrison Mahoney LLP
250 Summer Street
Boston    MA    02210

Roberta Fitzpatrick, Esq.
Brian K. Walsh, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky
   & Popeo, PC
One Financial Center
Boston    MA    02111

William F. Ahern, Esq.
Clark, Hunt & Embry
55 Cambridge Parkway
Cambridge    MA    02142

John J. DiChello, Esq.
S. Grant Palmer, Esq.

and upon the pro se Defendants:

American Cremation Society, Inc.
342 Washington Street
Haverhill   MA  01832

American Society for Funeral Services, Inc.
342 Washington Street
Haverhill   MA  01832

Dracut Funeral Home, Inc.
2159 Lakeview Anveue
Dracut   MA  01826

Hamel, Wickens & Troupe
   Funeral Home,  Inc.
26 Adams Street
Quincy   MA  02169

Hart-Wallace Funeral Home
107 South Broadway
Lawrence  MA  01843

Scatamacchia Funeral Home
25 Railroad Square
Haverhill   MA   01832

Simplicity Burial & Cremation, Inc.
f/k/a Oceanside Family Funeral Home
34 Lafayette Road
Salisbury  MA  01952

Dated: _8/19/05_

_____
Kim M. Roussos, Esq.
CURLEY  & CURLEY P.C.
27 School Street
Boston  MA   02108
(617) 523-2990
BBO #

## COMMONWEALTH OF MASSACHUSETTS

ESSEX,       SS.                          TRIAL COURT
                                          SUPERIOR COURT DEPT.
                                          CIVIL NO.

                                                      C50703

PAUL ANZALONE; JANET M. FONTAINE;
FLORENCE H. HOULE; BRENDA HERDEGEN;
SHAUN HERDEGEN; PATRICIA SULLIVAN;
MARIA PEREZ; BAMBI WHITE; DEBORA FOX;
BRENDA RUSSO; SUZANNE M. CONNOLLY;
MAIDA ANN INVERNIZZI; SHAWN PATRICK
INVERNIZZI; STEVE F. SIMONSON; ARTHUR
LAKE; CONSTANCE RAITT; BARBARA J.
HAMEL; DOREEN WILSON; PAULINE JUDD;
EDWARD P. ANDERSON; DEBORAH SPINNEY;
CLIFTON SPINNEY; KENNETH SPINNEY;
RAYMOND H. MONAHAN; PATRICIA M. SCOTT;
DORIS R. CLARK; RUTH DERGARDBEDIAN;
RITA M. MUIR; RITA KENT; JANICE MERRILL;
KATHLEEN BOUDREAU; ANDREW MCWAIN, III;
DEBORAH ELLSEY; IRENE ROBERTSON; and
BERTON NELSON,

        Plaintiffs,

vs.

BAYVIEW CREMATORY, LLC, A New
Hampshire Limited Liability Company; LINDA
STOKES, TRUSTEE OF THE DEKES REALTY
TRUST OF 107 SOUTH BROADWAY,
LAWRENCE MASSACHUSETTS; WILLIAM
F. SPENCER FUNERAL SERVICES;
FARRAH FUNERAL HOME; HART-
WALLACE FUNERAL HOME; AMERICAN
CREMATION SOCIETY, INC., a Massachusetts
Corporation; CREMATION SOCIETY, INC., a
Massachusetts Corporation; COMMONWEALTH

1

CREMATION & SHIPPING SERVICE, INC., a
Massachusetts Corporation; COMMONWEALTH
FUNERAL SERVICE, INC., a Massachusetts
Corporation; DRACUT FUNERAL HOME
INCORPORATED, a Massachusetts Corporation;
HAMEL, WICKENS & TROUPE FUNERAL HOME,
INC., a Massachusetts Corporation; SIMPLICITY
BURIAL & CREMATION, INC., a Massachusetts
Corporation f/k/a OCEANSIDE FAMILY FUNERAL
HOME; and SCATAMACCHIA FUNERAL HOME,

      Defendants.

## CLASS REPRESENTATION COMPLAINT

Plaintiffs, Paul Anzalone ("Anzalone"), Janet M. Fontaine ("Fontaine"), Florence H.

Houle ("Houle"), Brenda Herdegen ("B. Herdegen"), Shaun Herdegen ("S. Herdegen"), Patricia

Sullivan ("Sullivan"), Maria Perez ("Perez"), Bambi White ("White"), Debora Fox ("Fox"),

Brenda Russo ("Russo"), Suzanne M. Connolly ("Connolly"), Maida Ann Invernizzi ("M.

Invernizzi"), Shawn Patrick Invernizzi ("S. Invernizzi"), Steve F. Simonson ("Simonson"),

Arthur Lake ("Lake"), Constance Raitt ("Raitt"), Barbara J. Hamel ("Hamel"), Doreen Wilson

("Wilson"), Pauline Judd ("Judd"), Edward P. Anderson ("Anderson"), Deborah Spinney ("D.

Spinney"), Clifton Spinney ("C. Spinney"), Kenneth Spinney ("K. Spinney"), Raymond H.

Monahan ("Monahan"), Patricia M. Scott ("Scott"), Doris R. Clark ("Clark"), Ruth

DerGardbedian ("DerGardbedian"), Rita M. Muir ("Muir"), Janice Merrill ("Merrill"), Kathleen

Boudreau ("Boudreau"), Andrew McWain, III ("McWain"), Deborah Ellsey ("Ellsey"), Irene

Robertson ("Robertson"), and Berton Nelson ("Nelson"), **(sometimes collectively the**

**"Plaintiffs" or "Putative Class Representatives"),** sue Bayview Crematory, LLC, a New

Hampshire Limited Liability Company **("Bayview"),** Linda Stokes, Trustee of the Dekes Realty

2

Trust of 107 South Broadway, Lawrence, Massachusetts ("**Stokes**"); William F. Spencer Funeral

Services ("Spencer"), Farrah Funeral Home ("Farrah"), Hart-Wallace Funeral Home ("Hart-

Wallace"), American Cremation Society, Inc., a Massachusetts Corporation ("American

Cremation"), Cremation Society, Inc., a Massachusetts Corporation ("Cremation Society"),

Commonwealth Cremation & Shipping Service, Inc., a Massachusetts Corporation

("Commonwealth Cremation"), Commonwealth Funeral Service, Inc., a Massachusetts

Corporation ("Commonwealth Funeral"), Dracut Funeral Home, Incorporated, a Massachusetts

Corporation ("Dracut"), Hamel, Wickens & Troupe Funeral Home, Inc., a Massachusetts

Corporation ("Hamel Wickens"), Simplicity Burial & Cremation, Inc., a Massachusetts

Corporation f/k/a Oceanside Family Funeral Home ("Simplicity"), and Scatamacchia Funeral

Home ("Scatamacchia") (**sometimes collectively referred to as the "Funeral Home**

**Defendants"**) William F. Spencer, Louis J. Farrah, II, Derek A. Wallace, Stephen Scatamacchia,

Scott R. Hamel, Roger G. Hamel, Paul Caillouette, Stephanie D. LaPusata, Arthur C. Hasiotis,

Mark P. Gacek, Robert Scatamacchia, (**sometimes collectively referred to as the "Funeral**

**Director Defendants"**) (**Bayview, Stokes, the Funeral Home Defendants and the Funeral**

**Director Defendants are sometimes collectively referred to as the "Defendants"**) and allege:

## The Parties

1.      Anzalone is *sui juris* and a resident of Mansfield, Massachusetts.

2.      Fontaine is *sui* juris and a resident of Lawrence, Massachusetts.

3.      Houle is *sui juris* and a resident of North Andover, Massachusetts.

4,      B. Herdegen is *sui juris* and a resident of Methuen, Massachusetts.

5.      S. Herdegen is *sui juris* and a resident of Methuen, Massachusetts.

6.        Sullivan is *sui juris* and a resident of Winthrope, Massachusetts.

7.        Perez is *sui juris* and a resident of Brookline, Massachusetts.

8.        White is *sui juris* and a resident of South Yarmouth, Massachusetts.

9.        Fox is *sui juris* and a resident of Framingham, Massachusetts.

10.       Russo is *sui juris* and a resident of Framingham, Massachusetts.

11.       Connolly is *sui juris* and a resident of Dracut, Massachusetts.

12.       M. Invernizzi is *sui juris* and a resident of Milford, Massachusetts.

13.       S. Invernizzi is *sui juris* and a resident of Milford, Massachusetts.

14.       Simonson is *sui juris* and a resident of Dedham, Massachusetts.

15.       Lake is *sui juris* and a resident of Framingham, Massachusetts.

16.       Raitt is *sui juris* and a resident of Lawrence, Massachusetts.

17.       Hamel is *sui juris* and a resident of Lawrence, Massachusetts.

18.       Wilson is *sui juris* and a resident of Dracut, Massachusetts.

19.       Judd is *sui juris* and a resident of East Derry, New Hampshire.

20.       Anderson is *sui juris* and a resident of Peabody, Massachusetts.

21.       D. Spinney is *sui juris* and a resident of Lawrence, Massachusetts.

22.       C. Spinney is *sui juris* and a resident of Lawrence, Massachusetts.

23.       K. Spinney is *sui juris* and a resident of Lawrence, Massachusetts.

24.       Monahan is *sui juris* and a resident of Lawrence, Massachusetts.

25.       Scott is *sui juris* and a resident of Merrimac, Massachusetts.

26.       Clark is *sui juris* and a resident of Haverhill, Massachusetts.

27.       DerGardbedian is *sui juris* and a resident of Groveland, Massachusetts.

28.       Muir is *sui juris* and a resident of Haverhill, Massachusetts.

4

29.     Kent is *sui juris* and a resident of Saugus, Massachusetts.

30.     Merrill is *sui juris* and a resident of Newburyport, Massachusetts.

31.     Boudreau is *sui juris* and a resident of Needham, Massachusetts.

32.     McWain is *sui juris* and a resident of New Bedford, Massachusetts.

33.     Ellsey is *sui juris* and a resident of North Andover, Massachusetts.

34.     Robertson is *sui juris* and a resident of Somerville, Massachusetts.

35.     Nelson is *sui juris* and a resident of Marlborough, Massachusetts.

36.     Bayview is a duly organized and existing limited liability company in the State of New Hampshire, maintaining its principal place of business in Seabrook, New Hampshire.

37.     Stokes is the Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts, the fee title holder to the real property and improvements constituting the Bayview Crematory.

38.     Spencer is a business entity of undetermined nature conducted by William F. Spencer in the Commonwealth of Massachusetts, maintaining its principal place of business in Boston, Massachusetts.

39.     Farrah is a business entity of undetermined nature conducted by Louis J. Farrah, II in the Commonwealth of Massachusetts, maintaining its principal place of business in Lawrence, Massachusetts.

40.     Hart-Wallace is a business entity of undetermined nature conducted by Derek A. Wallace in the Commonwealth of Massachusetts, maintaining its principal place of business in Lawrence, Massachusetts.

41.     American Cremation is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Haverhill, Massachusetts.

42.     Cremation Society is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Quincy, Massachusetts.

43.     Commonwealth Cremation is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Boston, Massachusetts.

44.     Commonwealth Funeral is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Brighton, Massachusetts.

45.     Dracut is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Dracut, Massachusetts.

46.     Hamel Wickens is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Quincy, Massachusetts.

47.     Simplicity is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Newburyport, Massachusetts.

48.     Scatamacchia is a business entity of undetermined nature conducted by Robert Scatamacchia in the Commonwealth of Massachusetts, maintaining its principal place of business in Haverhill, Massachusetts.

49.     At all times material hereto, William F. Spencer was an agent, servant, employee and the licensed and designated funeral director of Spencer.

50.     At all times material hereto, Louis J. Farrah, II was an agent, servant, employee and
the authorized and designated funeral director of Farrah.

51.     At all times material hereto, Derek Wallace was an agent, servant, employee of
Bayview and the licensed and designated funeral director of Hart-Wallace.

52.     At all times material hereto, Stephen Scatamacchia was an agent, servant, employee
and the licensed and designated funeral director of American Cremation.

53.     At all times material hereto, Scott R. Hamel, Paul Caillouette, and Stephanie D.
LaPusata were agents, servants, employees and licensed and designated funeral directors of
Hamel Wickens.

54.     At all times material hereto, Roger G. Hamel was an agent, servant, employee and the
licensed and designated funeral director of Cremation Society.

55.     At all times material hereto, Arthur C. Hasiotis was an agent, servant, employee and
the licensed and designated funeral director of Commonwealth Cremation.

56.     At all times material hereto, Mark P. Gacek was an agent, servant, employee and the
licensed and designated funeral director of Dracut.

57.     At all times material hereto, Derek Wallace was an agent, servant, employee and the
licensed and designated funeral director of Simplicity.

58.     At all times material hereto, Robert Scatamacchia was an agent, servant, employee
and the licensed and designated funeral director of Scatamacchia.

59.     At all times material hereto, Arthur C. Hasiotis was an agent, servant, employee and
the licensed and designated funeral director of Commonwealth Funeral.

7

## Jurisdiction and Venue

60.     Bayview is subject to the jurisdiction of this Court pursuant to Massachusetts General Laws, Chapter 223A, § 3 in that it transacts business in this commonwealth in its dealings with the Funeral Home Defendants, as well as other funeral homes; contracts to supply services in this commonwealth in the form of cremation of decedents and return of their cremains to funeral homes and individuals in this commonwealth; caused tortious injury to citizens of this commonwealth both in and outside of this commonwealth while engaging in regular business and engaging in a persistent course of conduct and deriving substantial revenue for services rendered.

61.     Stokes is subject to the jurisdiction of this Court pursuant to Massachusetts General Laws, Chapter 223A, § 3 by virtue of having caused tortious injury by an act or omission in this commonwealth and causing tortious injury in this commonwealth by an act or omission outside of this commonwealth by virtue of a persistent course of conduct.

62.     Spencer is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Boston, Massachusetts.

63.     Farrah is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Lawrence, Massachusetts.

64.     Hart-Wallace is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Lawrence, Massachusetts.

65.     American Cremation is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Haverhill, Massachusetts.

66.     Cremation Society is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Quincy, Massachusetts.

8

67.     Commonwealth Cremation is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Boston, Massachusetts.

68.     Commonwealth Funeral is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Brighton, Massachusetts.

69.     Dracut is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Dracut, Massachusetts.

70:     Hamel Wickens is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Quincy, Massachusetts.

71.     Simplicity is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Newburyport, Massachusetts.

72.     Scatamacchia is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Haverhill, Massachusetts.

73.     The Funeral Director Defendants are all subject to the jurisdiction of this Court in that they are agents, servants, and employees of at least one of the Funeral Home Defendants. More particularly, each of the Funeral Director Defendants was the qualified or designated person who signed the death certificate of a family member and/or loved one of each Plaintiff in the course of providing funeral directing services, including cremation at Bayview Crematory.

74.     Pursuant to 28 U.S.C. § 1332 (d)(4)(A), more than two-thirds, if not all, of the members of all proposed Classes, as set forth herein below, are citizens of the Commonwealth of Massachusetts. The majority of the Defendants from whom significant relief is sought by the members of the Classes and whose conduct forms a significant basis for those claims are citizens of the Commonwealth of Massachusetts. Further, the principal injuries occurring to the Putative Class Representatives and the members of the Classes occurred in the Commonwealth of

Massachusetts. In the three (3) years preceding the filing of this action, no other class action has been filed asserting the same or similar factual allegations against any of the Defendants on behalf of the same persons.

75.     Additionally, pursuant to 28 U.S.C. § 1332 (d)(4)(B) two-thirds (2/3) or more of the members of the proposed Classes in the aggregate, and the primary defendants, are citizens of the Commonwealth of Massachusetts.

## Preliminary Allegations

76.     On or about October 08, 1999, Stokes became the owner, as trustee, of certain real property and improvements located in Rockingham County, New Hampshire. The real property and improvements are known as the Bayview Crematory.

77.     At all times material hereto, and particularly at the time of the acquisition of the real property and improvements known as the Bayview Crematory, the Defendant, Derek A. Wallace was the sole beneficiary of the "Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts".

78.     At all times material hereto, Derek A. Wallace was the individual in control of the day to day operations of the Bayview Crematory acting by and through his trustee, Stokes.

79.     At all times material hereto, Stokes not only knew of the existence and operation of the Bayview Crematory on the real property she held as trustee for Derek A. Wallace, but also aided and assisted Derek A. Wallace in her capacity of titleholder to the subject property in the operation of the Bayview Crematory. Stokes is the mother of Derek A. Wallace.

80.     At all times material hereto, Stokes was fully cognizant and aware of the fact that Bayview was not a state authorized and approved crematory in the State of New Hampshire and

10

had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America. Further, Stokes was fully cognizant and aware that Bayview Crematory had no authority or approval to conduct business in this commonwealth, but had and maintained business relations with the Funeral Home Defendants and the Funeral Director Defendants that were for the ostensible benefit of the Putative Class Representatives. Stokes permitted Bayview to operate its unauthorized and unapproved business with full knowledge of the effect on the Putative Class Representatives.

81.   On December 27, 2003, Jane M. Kuzmich, the spouse of Paul Anzalone, died in Attleboro, Massachusetts. On or about December 27, 2003, Anzalone entered into a written agreement with Spencer for funeral directing services relating to his wife's death, including her cremation and the return of her cremains to Anzalone. A true and correct copy of the written agreement is attached hereto, marked Exhibit "A" and made a part hereof.

82.   On July 26, 2001, Gary Scionti, the son of Janet M. Fontaine, died in Lawrence, Massachusetts. Fontaine entered into a written agreement with Farrah for funeral directing services relating to her son's death, including his cremation and the return of his cremains to Fontaine. Fontaine is not in possession of a copy of the written agreement, however a copy is in the possession of Farrah.

83.   On April 19, 2000, Linda St. Louis, the daughter of Florence H. Houle, died in Lawrence, Massachusetts. On or about April 22, 2000, Houle's spouse, Richard J. Houle, entered into a written agreement with Hart-Wallace for funeral directing services relating to their daughter's death, including her cremation and the return of her cremains to Houle. A true and

correct copy of the written agreement is attached hereto, marked Exhibit "B" and made a part hereof.

84.       On December 26, 2000, Charles Edward Herdegen, the spouse of Brenda Herdegen, died in Methuen, Massachusetts. B. Herdegen entered into a written agreement with American Cremation for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to B. Herdegen. B. Herdegen is not in possession of a copy of the written agreement, however a copy is in the possession of American Cremation.

85.       On December 26, 2000, Charles Edward Herdegen, the father of Shaun Herdegen, died in Methuen, Massachusetts. B. Herdegen entered into a written agreement with American Cremation for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Herdegen. B. Herdegen is not in possession of a copy of the written agreement, however a copy is in the possession of American Cremation.

86.       On September 12, 2004, Francis X. Sullivan, the spouse of Patricia Sullivan, died in Winthrope, Massachusetts. On or about September 14, 2004, Sullivan entered into a written agreement with Cremation Society for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Sullivan. A true and correct copy of the written agreement is attached hereto, marked Exhibit "C" and made a part hereof.

87.       On October 6, 2004, Maria S. Ramon, the mother of Perez, died in Brookline, Massachusetts. On or about October 7, 2004, Perez entered into a written agreement with Commonwealth Funeral for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Perez. A true and correct copy of the written agreement is attached hereto, marked Exhibit "D" and made a part hereof.

12

88.     On September 2, 2001, Robley Fulcher, Jr., the father of Bambi White, died in Brewster, Massachusetts. On or about August 21, 2001, White entered into a written agreement with Hamel Wickens for funeral directing services relating to her father's death, including his cremation and the return of his cremains to White  A true and correct copy of the written agreement is attached hereto, marked Exhibit "E" and made a part hereof.

89.     On January 1, 2004, Carmel Fulcher, the grandmother of Bambi White, died in Brewster, Massachusetts. On or about January 7, 2004, White entered into a written agreement with Hamel Wickens for funeral directing services relating to her grandmother's death, including her cremation and the return of her cremains to White. A true and correct copy of the written agreement is attached hereto, marked Exhibit "F" and made a part hereof.

90.     On November 19, 2004, Janet Russo, the sister of Debora Fox, died in Boston, Massachusetts. On or about November 19, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her sister's death, including her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "G" and made a part hereof.

91.     On December 27, 2004, Edith Russo, the mother of Debora Fox, died in Medford, Massachusetts. On or about December 27, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "H" and made a part hereof.

92.     On November 19, 2004, Janet Russo, the sister of Brenda Russo, died in Boston, Massachusetts. On or about November 19, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her sister's death, including

her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "G" and made a part hereof.

93.     On December 27, 2004, Edith Russo, the mother of Brenda Russo, died in Medford, Massachusetts. On or about December 27, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "H" and made a part hereof.

94.     May 4, 2001, James D. Connolly, the spouse of Suzanne Connolly, died in Boston, Massachusetts. On or about May 31, 2001, Connolly entered into a written agreement with Dracut for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Connolly A true and correct copy of the written agreement is attached hereto, marked Exhibit "I" and made a part hereof.

95.     On June 14, 2003, Paul Walter Invernizzi, the father of M. Invernizzi, died in Milford, Massachusetts. On or about June 14, 2003, M. Invernizzi entered into a written agreement with Cremation Society for funeral directing services relating to her father's death, including his cremation and the return of his cremains to M. Invernizzi A true and correct copy of the written agreement is attached hereto, marked Exhibit "J" and made a part hereof.

96.     On June 14, 2003, Paul Walter Invernizzi, the father of S. Invernizzi, died in Milford, Massachusetts. On or about June 14, 2003, M. Invernizzi entered into a written agreement with Cremation Society for funeral directing services relating to her father's death, including his cremation and the return of his cremains to M. Invernizzi A true and correct copy of the written agreement is attached hereto, marked Exhibit "J" and made a part hereof.

14

97.    On April 10, 2003, Doris M. Nichols, the mother of Stephen Simonson, died in Medford, Massachusetts. On or about April 9, 2003, Simonson entered into a written agreement with Hamel Wickens for funeral directing services relating to his mother's death, including her cremation and the return of her cremains to Simonson A true and correct copy of the written agreement is attached hereto, marked Exhibit "K" and made a part hereof.

98.    On September 16, 2003, Suzanne Lake, the mother of Arthur Lake, died in North Andover, Massachusetts. On or about March 11, 2002, Suzanne Lake entered into a written agreement with Hart-Wallace for funeral directing services relating to her death, including her cremation and the return of her cremains to Lake. A true and correct copy of the written agreement is attached hereto, marked Exhibit "L" and made a part hereof.

99.    On October 3, 2004, John Raitt, Sr., the spouse of Constance Raitt, died in Methuen, Massachusetts. On or about May 27, 2003, Raitt entered into a written agreement with Hart-Wallace for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Raitt. A true and correct copy of the written agreement is attached hereto, marked Exhibit "M" and made a part hereof.

100.    On August 3, 2003, Carol Ann Ashford, mother of Barbara Hamel, died in Lawrence, Massachusetts. Hamel entered into a written agreement with Hart-Wallace for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Hamel. Hamel is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

101.    On May 10, 2004, David Alden Judd, father of Doreen Wilson, died in Brentwood, New Hampshire. Wilson entered into a written agreement with Hart-Wallace for funeral directing services relating to her father's death, including his cremation and the return of his

cremains to Wilson. Wilson is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

102.      On May 10, 2004, David Alden Judd, spouse of Pauline Judd, died in Brentwood, New Hampshire. Wilson entered into a written agreement with Hart-Wallace for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Wilson. Wilson is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

103.      On May 5, 2001, Edward P. Anderson, Sr., father of Edward P. Anderson, died in Lawrence, Massachusetts. Anderson entered into a written agreement with Hart-Wallace for funeral directing services relating to his father's death, including his cremation and the return of his cremains to Anderson. Anderson is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

104.      On August 28, 2002, Joseph Spinney, the son of Deborah Spinney, died in St. Petersburg, Florida. D. Spinney entered into a written agreement with Hart-Wallace for funeral directing services relating to her son's death, including his cremation and the return of his cremains to D. Spinney. D. Spinney is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

105.      On August 28, 2002, Joseph Spinney, the brother of Clifton Spinney, died in St. Petersburg, Florida. D. Spinney entered into a written agreement with Hart-Wallace for funeral directing services relating to her son's death, including his cremation and the return of his cremains to D. Spinney. D. Spinney is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

106.     On August 28, 2002, Joseph Spinney, the brother of Kenneth Spinney, died in St.
Petersburg, Florida. D. Spinney entered into a written agreement with Hart-Wallace for funeral
directing services relating to her son's death, including his cremation and the return of his
cremains to D. Spinney. D. Spinney is not in possession of a copy of the written agreement,
however a copy is in the possession of Hart-Wallace.

107.     On January 19, 2000, Thomas J. Monahan, the brother of Raymond H. Monahan,
died in Lawrence, Massachusetts. Monahan entered into a written agreement with Hart-Wallace
for funeral directing services relating to his brother's death, including his cremation and the
return of his cremains to Monahan. Monahan is not in possession of a copy of the written
agreement, however a copy is in the possession of Hart-Wallace.

108.     On February 4, 2004, Harriet Louise Donovan, mother of Patricia Scott, died in
Haverhill, Massachusetts. On or about March 31, 2004, Scott entered into a written agreement
with Scatamacchia for funeral directing services relating to her death, including her cremation
and the return of her cremains to Scott. A true and correct copy of the written agreement is
attached hereto, marked Exhibit "N" and made a part hereof.

109.     On September 18, 2004, Josephine A. Bodwell, the mother of Doris R. Clark, died in
Haverhill, Massachusetts. On or about September 3, 2004, Clark entered into a written
agreement with Scatamacchia for funeral directing services relating to her death, including her
cremation and the return of her cremains to Clark. A true and correct copy of the written
agreement is attached hereto, marked Exhibit "O" and made a part hereof.

110.     On March 16, 2000, Howard L. Jerome, father of Ruth DerGardbedian, died in
Haverhill, Massachusetts. DerGarbedian entered into a written agreement with Scatamacchia for
funeral directing services relating to her father's death, including his cremation and the return of

17

his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

111.    On March 16, 2000, Howard L. Jerome, father of Rita M. Muir, died in Haverhill, Massachusetts. DerGarbedian entered into a written agreement with Scatamacchia for funeral directing services relating to her father's death, including his cremation and the return of his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

112.    On April 27, 2004, Rita Barber, mother of Rita Kent, died in Haverhill, Massachusetts. On or about April 27, 2004, Kent entered into a written agreement with Simplicity for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "P" and made a part hereof.

113.    On July 31, 2004, Ralph Merrill, spouse of Janice M. Merrill, died in Newburyport, Massachusetts. On or about July 31, 2004, Merrill entered into a written agreement with Simplicity for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Merrill. A true and correct copy of the written agreement is attached hereto, marked Exhibit "Q" and made a part hereof.

114.    On December 15, 2004, William F. Boudreau, spouse of Kathleen Boudreau, died in Boston, Massachusetts. On or about December 16, 2004, Boudreau entered into a written agreement with Hamel Wickens for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "R" and made a part hereof.

his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

111.    On March 16, 2000, Howard L. Jerome, father of Rita M. Muir, died in Haverhill, Massachusetts. DerGarbedian entered into a written agreement with Scatamacchia for funeral directing services relating to her father's death, including his cremation and the return of his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

112.    On April 27, 2004, Rita Barber, mother of Rita Kent, died in Haverhill, Massachusetts. On or about April 27, 2004, Kent entered into a written agreement with Simplicity for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "P" and made a part hereof.

113.    On July 31, 2004, Ralph Merrill, spouse of Janice M. Merrill, died in Newburyport, Massachusetts. On or about July 31, 2004, Merrill entered into a written agreement with Simplicity for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Merrill. A true and correct copy of the written agreement is attached hereto, marked Exhibit "Q" and made a part hereof.

114.    On December 15, 2004, William F. Boudreau, spouse of Kathleen Boudreau, died in Boston, Massachusetts. On or about December 16, 2004, Boudreau entered into a written agreement with Hamel Wickens for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "R" and made a part hereof.

18

115.     On February 3, 2005, Andrew Jackson McWain, Jr., the father of Andrew McWain, III, died in Brockton, Massachusetts. On or about February 7, 2005, McWain entered into a written agreement with Cremation Society for funeral directing services relating to his father's death, including his cremation and the return of his cremains to McWain. A true and correct copy of the written agreement is attached hereto, marked Exhibit "S" and made a part hereof.

116.     On May 23, 2003, John F. McIntyre, father of Deborah Ellsey, died in Methuen, Massachusetts. Ellsey entered into a written agreement with American Cremation for funeral directing services relating to her father's death, including his cremation and the return of his cremains to Ellsey. Ellsey is not in possession of a copy of the written agreement, however a copy is in the possession of American Cremation.

117.     On November 05, 2003, Arthur Thomas Robertson, spouse of Irene Robertson, died in Concord, Massachusetts. Robertson entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Robertson. Robertson is not in possession of a copy of the written agreement, however a copy is in the possession of Commonwealth Cremation.

118.     On December 11, 2001, Vera Nelson, mother of Berton Nelson, died in Marlborough, Massachusetts. Nelson entered into a written agreement with Cremation Society for funeral directing services relating to his mother's death, including her cremation and the return of her cremains to Nelson. Nelson is not in possession of a copy of the written agreement, however a copy is in the possession of Cremation Society.

119.     In each and every instance, the cremation of the Putative Class Representative's decedent was performed and carried out by Bayview at its crematory in Seabrook, New

19

Hampshire, for compensation, at the request and direction of the respective Defendant identified above.

120.    Upon information and belief, Bayview was the exclusive crematory for all cremations performed as part of the funeral directing services provided by the Funeral Home Defendants and Funeral Director Defendants.

121.    Further, Derek A. Wallace, as a principal of Hart-Wallace, retained a beneficial ownership interest or equity in Bayview.

122.    Bayview was and is not a state authorized and approved crematory in the State of New Hampshire and had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America.

123.    Bayview's operation of its crematory was not only unauthorized and illegal, it was not in compliance with and did not observe the standards deemed ordinary and proper for the handling and cremation of decedents. Particularly, Bayview performed multiple cremations simultaneously; failed to properly handle the bodies of decedents; and failed to prepare, keep and maintain accurate and proper records of its business. This caused Bayview to return to the families of the named decedents, tainted and contaminated cremains, or cremains that were not consistent with the identity of the decedent.

## Class Action Allegations

### Numerosity

124.    The Class(es) sought to be certified are defined as:

## The "Spencer" Class

All Massachusetts residents who contracted with Spencer for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

## The "Farrah" Class

All Massachusetts residents who contracted with Farrah for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

## The "Hart-Wallace" Class

All Massachusetts residents who contracted with Hart-Wallace for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

## The "American Cremation" Class

All Massachusetts residents who contracted with American Cremation for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

## The "Cremation Society" Class

All Massachusetts residents who contracted with Cremation Society for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

## The "Commonwealth Cremation" Class

All Massachusetts residents who contracted with Commonwealth Cremation for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Commonwealth Funeral" Class

All Massachusetts residents who contracted with Commonwealth
Funeral for funeral directing services, involving cremation, whose
decedent was cremated at Bayview Crematory, within the
applicable limitations period.

### The "Dracut" Class

All Massachusetts residents who contracted with Dracut for funeral
directing services, involving cremation, whose decedent was
cremated at Bayview Crematory, within the applicable limitations
period.

### The "Hamel Wickens" Class

All Massachusetts residents who contracted with Hamel Wickens
for funeral directing services, involving cremation, whose decedent
was cremated at Bayview Crematory, within the applicable
limitations period.

### The "Simplicity" Class

All Massachusetts residents who contracted with Simplicity for
funeral directing services, involving cremation, whose decedent
was cremated at Bayview Crematory, within the applicable
limitations period.

### The "Scatamacchia" Class

All Massachusetts residents who contracted with Scatamacchia for
funeral directing services, involving cremation, whose decedent
was cremated at Bayview Crematory, within the applicable
limitations period.

(collectively, the "Classes").

125.     The members of each of the Classes are so numerous that separate joinder of each

member is impracticable. Upon information and belief, and pending discovery, the Classes have

22

members in the hundreds, if not thousands, who had family members and other loved ones

cremated by Bayview Crematory as part of funeral directing services provided by the Funeral

Home and Funeral Director Defendants and other Massachusetts funeral homes.

126.    The Funeral Home and Funeral Director Defendants, as well as their officers,

directors or any person or other entity related to, affiliated with, or employed by any of them are

excluded from membership in any of the Classes.

## Commonality

127.    There are numerous questions of law and fact that are common to the claims of the

Putative Class Representative and the class members. Among these common questions of law

and fact are the following:

> a.    Whether the Putative Class Representatives and members
> of the Classes suffered the death of a family member or other loved
> one;
>
> b.    Whether the Putative Class Representatives and members
> of the Classes hired or contracted with the Funeral Home
> Defendants for funeral directing services relating to their
> respective deceased family member or loved one, including
> cremation;
>
> c.    Whether the Funeral Director Defendants signed the
> decedents' respective death certificates as "funeral service licensee
> or other designee";

23

d. Whether the respective decedents' remains were cremated at Bayview at the direction and/or instruction of the Funeral Home and Funeral Director Defendants;

e. Whether the Funeral Home and Funeral Director Defendants regularly or exclusively used Bayview for cremating the remains of decedents as part of the funeral directing services provided to the Putative Class Representatives and the members of the Classes;

f. Whether the Funeral Home and Funeral Director Defendants knew or should have known of Bayview's status as a crematory, and whether it was properly authorized and operating in the State of New Hampshire;

g. Whether Stokes, in her capacity as trustee and by virtue of being the mother of Derek A. Wallace, knew of the unauthorized and unapproved use of the property to which she held title and its effect upon the Putative Class Representatives and the members of the Classes;

h. Whether Bayview, in the course of performing services for the Funeral Home and Funeral Director Defendants in the cremation of the respective decedents of the Putative Class Representatives and the members of the Classes observed the regular and customary practices, procedures, and protocols in the industry;

24

i.     Whether Bayview, in the course of performing services for the Funeral Home and Funeral Director Defendants in the cremation of the respective decedents of the Putative Class Representatives and the members of the Classes was negligent in the handling and disposition of the bodies;

j.     Whether the Funeral Home Defendants and the Funeral Director Defendants were negligent in the handling and disposition of the bodies of the respective decedents of the Putative Class Representatives and the members of the Classes;

k.     Whether the Funeral Home Defendants and the Funeral Director Defendants actions, with regard to the handling and disposition of the bodies of the respective decedents of the Putative Class Representatives and the members of the Classes, were intentional;

l.     Whether the Putative Class Representatives and the members of the Classes suffered damage and severe emotional distress as a result of the acts of omission and commission by the Defendants;

m.     Whether the Putative Class Representatives and the members of the Classes suffered damage under Chapter 93A of The General Laws of Massachusetts ("Regulation of Business Practices For Consumers Protection")(hereinafter "RBPCP").

25

## Typicality

128.    The claims of The Putative Class Representatives are typical of the claims of the members of the Classes in that each class member has had funeral directing services, including cremation performed by Bayview Crematory, provided by one of the Funeral Home or Funeral Director Defendants.

129.    The unauthorized and illegal operation of the Bayview Crematory, as well as its improper, offensive, and mortifying method of operation, together with its deficient and/or non-existent record-keeping practices all resulted in damage to the Putative Class Representatives and the members of the Classes. These are the core issues in this case which present issues of fact and law that predominate over all other issues in this matter.

130.    The Putative Class Representatives. as well as the members of the Classes, have all had funeral directing services, including cremation performed by Bayview Crematory, provided by one of the Funeral Home or Funeral Director Defendants. Upon information and belief, there has never been a prior lawsuit certified for class treatment in Massachusetts on behalf of the Putative Class Representatives or members of the Classes.

## Adequacy of Representation

131.    The Putative Class Representatives are adequate representatives of the members of their respective Classes and will fairly and adequately protect the interests of their respective class members. They are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature to represent them. There is no hostility of interest between or among the Putative Class Representatives and the unnamed members of the Classes.

26

132.    The Putative Class Representatives anticipate no difficulty in the management of this litigation as a Class action. To prosecute this case, The Putative Class Representatives have chosen Charlip Law Group, LC and Lisa Debrosse Johnson. The Charlip Law Group has significant experience, not only in complex litigation and class action litigation, but also mass claims relating to issues and claims similar to those presented in this action. These firms have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### Requirements of Rule 23(b)

133.    The family members and other loved ones of the Putative Class Representatives and the members of the Classes all contracted for funeral directing services, including cremation, with one of the Funeral Home and Funeral Director Defendants.

134.    The basic questions of law and fact common to the claims of the Putative Class Representatives and the members of the Classes predominate over any question of law and fact affecting any individual member of the Classes and class representation is superior to other available methods to the fair and efficient adjudication of the controversy. There are no particular and overriding interests of any member of any of the Classes in individually controlling the prosecution of separate claims. Upon information and belief, there is no pending litigation to which any member of any of the Classes is a party and in which any question of law or fact controverted in this action is or will be adjudicated. Moreover, there are no difficulties likely to be encountered in the management of the claims on behalf of the members of the Classes.

27

135.     This action is properly maintained as a class action inasmuch as the basic core of operative fact, including but not limited to issues relating to liability, arise from a similar, if not identical underlying factual scenario. A class action is superior to other available methods for the fair and efficient adjudication of the controversy by avoiding a multiplicity of identical suits creating a drain of a time and judicial resources of the Clerk and the Courts.

136.     The defenses asserted by the Defendants will be very similar, if not identical, as to the Putative Class Representatives and the members of the Classes. It would be impractical to assert and adjudicate these claims and defenses in separate litigation.

## Count I
### Negligence – Stokes

137.     The Putative Class Representatives adopt and reallege paragraphs 1 through 136 as though fully set forth herein.

138.     This is an action for damages arising from the negligence of Stokes.

139.     At all times material hereto, Derek A. Wallace was the individual in control of the day to day operations of the Bayview Crematory, acting by and through his mother, fiduciary and trustee, Stokes.

140.     At all times material hereto, Stokes not only knew of the existence of the Bayview Crematory on the real property she held title to as trustee for Derek A. Wallace, but also aided and assisted Derek A. Wallace in her capacity of titleholder to the subject property in the operation of the Bayview Crematory. Stokes is the mother of Derek A. Wallace.

141.     At all times material hereto, Stokes was fully cognizant and aware of the fact that Bayview was not a state authorized and approved crematory in the State of New Hampshire and

had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America.

142.    Further, Stokes was fully cognizant and aware that Bayview Crematory had no authority or approval to conduct business in this commonwealth, but had and maintained business relations with the Funeral Home Defendants and the Funeral Director Defendants that were for the ostensible benefit of the Putative Class Representatives and the members of the Classes. Stokes permitted Bayview to operate its unauthorized and unapproved business with full knowledge of the effect on the Putative Class Representatives and the members of the Classes.

143.    Stokes had an affirmative duty as the owner of the subject real property to assure that the premises would not be used in an unauthorized and unapproved manner. As the owner of the real property. Stokes had an affirmative duty to conduct at least the most minimal investigation and determination into the nature of the business being conducted on the premises and to insure that such use did not create a condition or situation where injury or harm may befall others.

144.    Stokes knew or should have known that the use of the premises as a crematory was neither authorized nor approved by New Hampshire state agencies. Further, Stokes knew that the property was, in fact, being used as a crematory and that the bodies being cremated by the entities owned and/or controlled by her son, Derek A. Wallace, also the sole beneficiary of the Dekes Realty Trust, were the family members and loved ones of the Putative Class Representatives.

145.    Stokes did not and was not inclined to conduct any investigation into the authorization and approval for the use of the property she owned as a crematory. Stokes, by virtue of her fiduciary, personal and business associations with her son and sole beneficiary, Derek A. Wallace,

29

never instituted an inquiry, nor requested information from Derek A. Wallace regarding the use of the property as a crematory.

146.    Stokes' failure to determine the authorization and propriety of the use of the premises as a crematory was a breach of her duty to the Putative Class Representatives and the members of the Classes. But for Stokes' breach of her duty to the Putative Class Representatives and the members of the Classes, the property would not have been operated as an unauthorized and improper crematory. Accordingly, Stokes' acts of omission and commission were negligent.

147.    As a direct and proximate cause of Stokes' negligence, the Putative Class Representatives and the members of the classes have suffered significant damages that would not have occurred to them, but for the acts of omission and commission of Stokes.

WHEREFORE, by reason of the foregoing, the Putative Class Representatives and the members of each Class demand damages against Stokes, together with the costs of this action and such other relief as this Court may deem proper.

## Count II
## Negligent Infliction of Emotional Distress

148.    The Putative Class Representatives adopt and reallege paragraphs 1 through 136 as though fully set forth herein.

149.    This is an action for negligent infliction of emotional distress resulting from tortious interference with a dead body.

150.    Each of the Putative Class Representatives and members of the Classes is a family member, loved one, and/or person authorized by law to handle the disposition of their respective decedent's remains.

30

151.    The Funeral Home and Funeral Director Defendants, pursuant to their agreements with the Putative Class Representatives and the members of the Classes, hired, retained or otherwise contracted with Bayview for the cremation of the remains of each decedent of the Putative Class Representatives and the members of the Classes.

152.    At all times material to these claims, Bayview was an unauthorized crematory, illegally and improperly receiving, handling, maintaining and cremating dead bodies, including those decedents of the Putative Class Representatives and the members of the Classes. Bayview's handling of dead bodies, its business practices, procedures and protocols, were wantonly disrespectful and wholly disregarded of the feelings of the Putative Class Representatives and the members of the Classes by virtue of its horrendous cremation techniques, now leaving the Putative Class Representatives and the members of the Classes with the knowledge, suspicion or belief that the remains of a deceased loved one and/or family member have not been preserved as desired.

153.    Bayview's cremation techniques were so devoid of propriety, that the cremains of the deceased loved ones of the Putative Class Representatives and the members of the Classes, are tainted and contaminated.

154.    The Funeral Home and Funeral Director Defendants had an affirmative duty, as part of the funeral directing services they were providing to the respective Putative Class Representative or member of the respective Class, to ascertain, investigate and assure that the crematory being used was properly authorized, operated properly within the law and in accordance with acceptable practices, procedures and protocols in the industry. This duty was heightened by virtue of the nature of the service that was being rendered and the knowledge that their respective Putative Class Representative and members of their respective Class were relying upon them for the proper treatment and preservation of the remains of their deceased loved ones and/or family members.

31

155.     The Funeral Home and Funeral Director Defendants' failure to investigate and ascertain, on even the most minimal level, the true nature of the Bayview Crematory was a seminal failure so consequential to the emotional well-being of the Putative Class Representatives and the members of the Classes, that the resulting horrendous acceptance, handling, treatment and disposition of the loved one and/or family member of each Putative Class Representative and member of the Classes, rose to the level of mutilation and desecration of the body, occasioning indescribable mental pain and suffering to the Putative Class Representatives and the members of the Classes, also manifesting itself through significant physical consequences.

156.     The various acts of omission and commission by the Funeral Home and Funeral Director Defendants described above constitute at a minimum a reckless and negligent interference with a body.

157.     As a direct and proximate result of the reckless and negligent conduct of the Funeral Home and Funeral Director Defendants, the Putative Class Representatives have suffered extreme emotional distress for which they all claim damages against the Funeral Home and Funeral Director Defendants.

WHEREFORE, by reason of the foregoing, the Putative Class Representatives and the members of each Class demand damages against Bayview and the Defendant named in their respective class definition as set forth herein above, together with the costs of this action and such other relief as this Court may deem proper.

## Count III
### Reckless and/or Intentional Infliction of Emotional Distress

158.     The Putative Class Representatives adopt and reallege paragraphs 1 through 136 as though fully set forth herein.

159.     This is an action for reckless and/or intentional infliction of emotional distress resulting from tortious interference with a dead body.

160.     Each of the Putative Class Representatives and members of the Classes is a family member, loved one, and/or person authorized by law to handle the disposition of their respective decedent's remains.

161.     The Funeral Home and Funeral Director Defendants, pursuant to their agreements with the Putative Class Representatives and the members of the Classes, hired, retained or otherwise contracted with Bayview for the cremation of the remains of each decedent of the Putative Class Representatives and the members of the Classes.

162.     At all times material to these claims, Bayview was an unauthorized crematory, illegally and improperly receiving, handling, maintaining and cremating dead bodies, including those decedents of the Putative Class Representatives and the members of the Classes.   Bayview's handling of dead bodies, its business practices, procedures and protocols, were wantonly disrespectful and wholly disregarded the feelings of the Putative Class Representatives and the members of the Classes by virtue of its horrendous cremation techniques, now leaving the Putative Class Representatives and the members of the Classes with the knowledge that the remains of a deceased loved one and/or family member have not been preserved as desired.

163.     Bayview's cremation techniques were so devoid of propriety, that the cremains of the deceased loved ones of the Putative Class Representatives and the members of the Classes, are either tainted and/or contaminated or there is no way to have any reasonable certainty concerning the identity and/or integrity of the cremains.   Upon information and belief, the purported and represented cremains of certain decedents have been determined to include body parts, jewelry, and medical appliances having no association or relationship to the decedent.

164.    These cremations constitute reckless and intentional conduct, so outrageous and extreme as to go beyond all possible or permissible bounds of decency and are utterly intolerable in a civilized society.

165.    The Funeral Home and Funeral Director Defendants had an affirmative duty, as part of the funeral directing services they were providing to the respective Putative Class Representative or member of the respective Class, to ascertain, investigate and assure that the crematory being used was properly authorized and established, operated properly within the law and in accordance with acceptable practices, procedures and protocols in the industry.  Further, the Funeral Home and Funeral Director Defendants had a duty to ensure that the bodies of the decedents being cremated for the Putative Class Representatives and the members of the Classes were handled and disposed of in a manner evidencing respect and reverence, consistent with the direction and expectations of the Putative Class Representatives and the members of the Classes.  This duty was heightened by virtue of the nature of the service that was being rendered and the knowledge that their respective Putative Class Representative and members of their respective Class were relying upon them for the proper treatment and preservation of the remains of their deceased loved ones and/or family members.

166.    The Funeral Home and Funeral Director Defendants' failure to investigate and ascertain, on even the most minimal level, was a seminal failure so consequential to the well-being of the Putative Class Representatives and the members of the Classes, that the resulting horrendous acceptance, handling, treatment and disposition of the loved one and/or family member of each Putative Class Representative and member of the Classes, rose to the level of mutilation and desecration of the body, occasioning indescribable mental pain and suffering to the Putative Class Representatives and the members of the Classes, also manifesting itself in significant physical consequences.

167.   The intentional acts of omission and commission by the Funeral Home and Funeral Director Defendants described above are reckless and intentional conduct, so outrageous and extreme as to go beyond all possible or permissible bounds of decency and are utterly intolerable in a civilized society.

168.   As a direct and proximate result of the intentional conduct of the Funeral Home and Funeral Director Defendants, the Putative Class Representatives have suffered extreme emotional distress for which they all claim damages against the Funeral Home and Funeral Director Defendants.

WHEREFORE, by reason of the foregoing, the Putative Class Representatives and the members of each Class demand damages against Bayview and the Defendant named in their respective class definition as set forth herein above, together with the costs of this action and such other relief as this Court may deem proper.

## Count IV
## Class Relief Sought

WHEREFORE, the Putative Class Representatives and the members of the respective Classes request that, after completion of class discovery and hearing on a motion for class certification, this Court enter an order:

A.   Certifying this action as a class action under Rule 23, Massachusetts Rules of Civil Procedure;

B.   Designating the Class Representatives for each of the Classes;

C.   Appointing Charlip Law Group, LC as lead class counsel and Lisa DeBrosse Johnson as class co-counsel;

35

D.   An award of damages on each count of the Class Representation Complaint;

E.   An award to the Class members for their costs, interest and reasonable attorneys

fees;

F.   An award of attorney's fees to class counsel and class co-counsel in accordance with

prevailing factors and considerations for determination of class counsel fees in the Commonwealth

of Massachusetts; and

G.   Any and all further relief this Court deems just and proper.


## Demand For Jury Trial

The Plaintiffs, Putative Class Representatives and the members of all certified Classes

demand trial by jury on all issues so triable as a matter of right.

Dated this __11th__ day of May, 2005.

> Respectfully Submitted,
> Plaintiffs/Putative Class Representatives,
> By their attorneys,
>
> _____
> Lisa DeBrosse Johnson, BBO# 632428
> The Pilot House
> Lewis Wharf
> Boston, MA 02110
> (617) 854-3740
>
>                          And
>
> _____
> David H. Charlip
> Florida Bar No.: 329932
> 1930 Harrison Street
> Suite 208
> Hollywood, Florida 33020
> 954.921.2131
> 954.921.2191 Facsimile
> Pending Admission, Pro Hac Vice

36