UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LORRAINE HUNT, on behalf of herself and all     :
others similarly situated,     :
    :
       Plaintiff,     :
    :
     v.     :
    :
BAYVIEW CREMATORY, LLC, DEREK A.     :
WALLACE, LINDA STOKES, AMERICAN     :
CREMATION SOCIETY, INC., AMERICAN     :
SOCIETY FOR CREMATION, AMERICAN     :
SOCIETY FOR FUNERAL SERVICES, INC.,     :
COMMONWEALTH CREMATION &     :    C.A. NO. 05-11140 (RCL)
SHIPPING SERVICE, INC.,     :
COMMONWEALTH FUNERAL SERVICE,     :
INC., CREMATION SOCIETY, INC.,     :
DRACUT FUNERAL HOME     :
INCORPORATED, FARRAH FUNERAL     :
HOME,  HAMEL WICKENS & TROUPE     :
FUNERAL HOME, INC., HART-WALLACE     :
FUNERAL HOME, KEEFE FUNERAL     :
HOME, INC., SCATAMACCHIA FUNERAL     :
HOME, SIMPLICITY BURIAL &     :
CREMATION, INC. f/k/a OCEANSIDE     :
FAMILY FUNERAL HOME, WILLIAM F.     :
SPENCER FUNERAL SERVICES, and     :
DOES 1-50, INCLUSIVE,     :
    :
       Defendants.     :

## DEFENDANT SCATAMACCHIA FUNERAL HOME'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Scatamacchia Funeral Home ("Scatamacchia"), by its undersigned

counsel, hereby moves this Court to dismiss the above-referenced action as against

Scatamacchia for the following reasons: (1) the Class Action Fairness Act of 2005 requires

that this Court decline jurisdiction; (2) alternatively, the Class Action Fairness Act provides

this Court with discretion to decline jurisdiction; (3) Plaintiffs' allegations fail to satisfy the requirements for class certification under Fed. R. Civ. P. 23(a); and (4) a parallel action is pending in Massachusetts state court, captioned *Anzalone, et al. v. Bayview Crematory, et al.*, No. 2005-00789 (Essex Super. Ct.), involving identical issues and circumstances, and the continuation of both lawsuits would result in piecemeal and duplicative litigation, an inefficient use of the litigants' and the Court's resources, and potentially conflicting results.

In support of its Motion, Scatamacchia relies upon the accompanying Memorandum of Law.

Respectfully Submitted,

**DEFENDANT,**
**SCATAMACCHIA FUNERAL HOME**

By its attorneys,

Dated: December __, 2005

MICHAEL E. OKOLITA
Donald E. Feener & Associates
120 Front Street, Suite 310
Worcester, MA 01608-1424

and

GRANT S. PALMER
JOHN J. DiCHELLO
Blank Rome LLP
One Logan Square
Philadelphia, PA 19103
(215) 569-5500

*Attorneys for Defendant, Scatamacchia Funeral Home*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LORRAINE HUNT, on behalf of herself and all others similarly situated,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **BAYVIEW CREMATORY, LLC, DEREK A. WALLACE, LINDA STOKES, AMERICAN CREMATION SOCIETY, INC., AMERICAN SOCIETY FOR CREMATION, AMERICAN SOCIETY FOR FUNERAL DIRECTING SERVICES, INC., COMMONWEALTH CREMATION & SHIPPING SERVICE, INC.,** | : : : : : : |
| **COMMONWEALTH FUNERAL SERVICE, INC., CREMATION SOCIETY, INC., DRACUT FUNERAL HOME INCORPORATED, FARRAH FUNERAL HOME, HAMEL WICKENS & TROUPE FUNERAL HOME, INC., HART-WALLACE FUNERAL HOME, KEEFE FUNERAL HOME, INC., SCATAMACCHIA FUNERAL HOME, SIMPLICITY BURIAL & CREMATION, INC. f/k/a OCEANSIDE FAMILY FUNERAL HOME, WILLIAM F. SPENCER FUNERAL DIRECTING SERVICES, and DOES 1-50, INCLUSIVE,** | : C.A. NO. 05-11140 (RCL) : : : : : : : : : : : |
| | : |
| **Defendants.** | : |

## DEFENDANT SCATAMACCHIA FUNERAL HOME'S
## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Scatamacchia Funeral Home ("Scatamacchia"), by its undersigned

counsel, submits this Memorandum of Law in support of its Motion to Dismiss.

## I.    SUMMARY OF ARGUMENT

This proposed class action asserts claims against various funeral homes and a crematory arising out of the alleged mishandling of corpses and bodily remains. Plaintiff's Complaint alleges that various remains were mishandled by Bayview Crematory, LLC ("Bayview Crematory"), and asserts claims against fourteen funeral homes and related establishments, including Scatamacchia, who allegedly utilized Bayview Crematory's services for cremations. A copy of the Complaint is attached as Exhibit "A." Accepting the allegations contained in Plaintiff's Complaint as true for the purposes of this Motion, Plaintiff's Complaint should be dismissed as against Scatamacchia for numerous reasons.

First, Plaintiff's Complaint should be dismissed under the Class Action Fairness Act of 2005. Under 28 U.S.C. § 1332(d)(4), it is clear from the face of the Complaint that Plaintiffs' action must be dismissed for lack of jurisdiction. Alternatively, this Court should exercise discretion to decline jurisdiction in this case under 28 U.S.C. § 1332(d)(3) based on numerous statutory factors.

Second, Plaintiff's Complaint fails to satisfy the requirements for certification of a class under Fed. R. Civ. P. 23(a). Since there is no basis for a class action, there is no diversity of citizenship as required by 28 U.S.C. § 1332(a)(1) because Plaintiff and the majority of the Defendants are Massachusetts citizens.

Third, Plaintiff's Complaint should be dismissed because a parallel action, *Anzalone, et al. v. Bayview Crematory, et al.*, No. 2005-00789 (Essex Super. Ct.), involving the very same issues and circumstances as this case, is pending in Massachusetts state court and was filed before this action. A copy of the Complaint filed in the *Anzalone* matter is attached as

Exhibit "B." Continuation of this lawsuit and the *Anzalone* lawsuit would result in piecemeal

litigation, duplicative judicial efforts, and potentially conflicting results.

## II.    ARGUMENT

### A.    PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED AGAINST SCATAMACCHIA BECAUSE PLAINTIFF'S DESIGNATION OF THIS ACTION AS A CLASS ACTION IS IMPROPER AND THIS COURT LACKS JURISDICTION.

#### 1.    The Court Must Decline Jurisdiction Pursuant to Section 1332(d)(4)(A) of the Class Action Fairness Act of 2005.

Plaintiff alleges that this Court has original jurisdiction over this matter pursuant to

28 U.S.C. § 1332(d). *See* Exhibit "A" at ¶ 25. The recently-enacted Class Action Fairness

Act of 2005 (the "Act"), which is incorporated, in part, into 28 U.S.C. § 1332, expanded the

subject matter jurisdiction of federal district courts over class actions where the amount in

controversy exceeds $5 million and any member of a class of plaintiffs is a citizen of a state

different from any defendant. *See* 28 U.S.C. § 1332(d)(2). The Act, however, requires federal

courts to decline jurisdiction in certain cases such as this one.

Section 1332(d)(4) provides:

(4) A district court shall decline to exercise jurisdiction under paragraph (2)-
(A)(i) over a class action in which-
   (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
   (II) at least 1 defendant is a defendant-
      (aa) from whom significant relief is sought by members of plaintiff class;
      (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class;
   and
      (cc) who is a citizen of the State in which the action was originally filed; and

3

(III) principal injuries resulting from the alleged conduct or any
related conduct of each defendant were incurred in the State in which
the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action,
no other class action has been filed asserting the same or similar factual
allegations against any of the defendants on behalf of the same or other
persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes
in the aggregate, and the primary defendants, are citizens of the State in
which the action was originally filed.

28 U.S.C. § 1332(d)(4).

The case at bar falls squarely within the foregoing section of the Act and requires this

Court to decline to exercise jurisdiction. First, under subsection I, greater than two-thirds of

the members of all proposed plaintiff classes in the aggregate are citizens of Massachusetts.

Plaintiff's Complaint identifies one named plaintiff, Lorraine Hunt, who is a citizen of

Massachusetts. In addition to the named plaintiff, any members of the proposed class will

also be citizens of Massachusetts because, according to Plaintiff's Complaint, members of

the proposed class took their loved ones for cremation services to fourteen separate funeral

homes all located in Massachusetts.[1] *See* Plaintiff's Complaint at ¶¶ 9-22. Obviously, it

follows that the vast majority of persons using funeral homes in Massachusetts will be

citizens of Massachusetts. Accordingly, Plaintiff's Complaint establishes that more than

two-thirds of the members of all proposed plaintiff classes are citizens of Massachusetts.

Second, under subsection II, at least one defendant is a defendant from which

significant relief is sought by members of the class, whose alleged conduct forms a

significant basis for the claims asserted by the proposed plaintiff class, and is a citizen of

---

[1]  Plaintiff's Complaint also specifically alleges that 'a substantial part of the events giving rise to the claims alleged
herein occurred in this district of Massachusetts" and that "[m]any of the material acts alleged herein occurred within the
District of Massachusetts." *Id.* at ¶¶ 27-28.

4

Massachusetts. Plaintiff's Complaint names fourteen separate funeral home defendants that satisfy this prong. Of course, only <u>one</u> defendant is required to satisfy this requirement and it cannot be disputed that Plaintiff is seeking significant relief from Defendant Hamel, Wickens & Troupe Funeral Home, Inc. ("Hamel, Wickens"), a corporation organized and existing under the laws of Massachusetts, whose conduct forms the basis for the claims asserted in Plaintiff's Complaint. *Id.* at ¶¶ 17, 67-68.

Third, under subsection III, principal injuries allegedly sustained by Plaintiff occurred in Massachusetts. *See, e.g., id.* at ¶ 28. In fact, since the only named Plaintiff was in Massachusetts and potential class members used funeral homes solely in Massachusetts, it is undeniable that alleged injuries "were incurred" in Massachusetts. Moreover, no other class action containing the same or similar factual allegations was filed in this Court during the three-year period preceding the filing of this action.

Accordingly, for these reasons, this Court must decline jurisdiction under 28 U.S.C. § 1332(d)(4).

## 2. The Court Also Must Decline To Exercise Jurisdiction Pursuant To Section 1332(d)(4)(B) Of The Act.

Alternatively, this Court must decline to exercise jurisdiction under § 1332(d)(4)(B), which requires the Courts to decline jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." First, as discussed above, more than two-thirds of all members of the proposed classes of plaintiffs are citizens of Massachusetts. Second, all fourteen of the primary defendants in this case are citizens of Massachusetts. *Id.*

123458.00601/11491050v.3

at ¶¶ 5-22. Accordingly, § 1332(d)(4)(B) also requires this Court to decline to exercise jurisdiction.

### 3. The Court May Exercise Its Discretion To Decline Jurisdiction Pursuant To Section 1332(d)(3) Of The Act.

It appears beyond dispute that the vast majority of the members of the proposed class are citizens of Massachusetts and that this case therefore falls under § 1332(d)(4)(A) and (B), which both require this Court to decline jurisdiction. However, even if Plaintiff contends that less than two-thirds of the Plaintiffs are citizens of Massachusetts, § 1332(d)(3) provides the Court with discretion to decline jurisdiction in cases where greater than one-third but less than two-thirds of the proposed Plaintiff classes are citizens of Massachusetts based on the totality of the circumstances.

(3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of-

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).

Thus, even if Plaintiff asserts that less than two-thirds of the proposed class are Massachusetts citizens there can be no dispute that at least one-third are Massachusetts citizens.    Accordingly, in the interests of justice, and in view of the totality of the circumstances and the factors set forth above, this Court should exercise its discretion and dismiss Plaintiff's Complaint.    Plaintiff's claims involve matters of interest to the Commonwealth of Massachusetts and are governed by Massachusetts state law.  Moreover, Plaintiff pleaded this class action in a manner so as to avoid another forum in which an identical class action (the *Anzalone* matter) was pending.  In addition, Massachusetts has a distinct nexus to the proposed class members and Defendants, the majority of whom are citizens of Massachusetts, as well as the alleged harm, since such harm, if any, occurred in Massachusetts.    Furthermore, a substantial number of the parties are citizens of Massachusetts.  Lastly, a class action asserting the same or similar claims on behalf of similarly situated plaintiffs and proposed class members was filed in state court before this matter.  Accordingly, this Court should exercise its discretionary authority under § 1332(d)(3) and dismiss this action.

## 4.    Plaintiff Fails to Satisfy the Requirements for Class Certification under Fed. R. Civ. P. 23(a).

Plaintiff's Complaint also should be dismissed against Scatamacchia because Plaintiff has not and cannot specifically plead adequate facts to satisfy the requirements for class certification under Fed. R. Civ. P. 23(a). *See e.g. Herisko v. Merrill, Lynch, Pierce, Fenner &*

123458.00601/11491050v.3

*Smith, Inc.*, No. 89-1825, 1991 U.S. App. LEXIS 2130, \*23-25 (1st Cir. Jan. 30, 1991) (upholding dismissal of complaint where plaintiff "did not specifically plead adequate facts under Rule 23(a).")

Pursuant to Rule 23(a), a plaintiff may file a complaint on behalf of members of a proposed class and serve as the representative of the class only if certain requirements are satisfied, namely: (1) the class is so numerous that separate joinder of each member is impracticable; (2) the class shares sufficiently common questions of law or fact; (3) the class representative's claims or defenses are typical of the claims or defenses of the class; and (4) the class representative will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). Here, the allegations of the Complaint fail to satisfy these requirements.

First, the proposed class of plaintiffs is not so numerous that separate joinder of each member is impracticable. To determine whether a proposed class is so numerous that joinder of all the members would be impracticable, a plaintiff "must show some evidence of, or reasonable estimate of, the number of class members." *Carr v. NYSE, Inc.*, 414 F. Supp. 1292, 1304 (N.D. Cal. 1976). Mere speculation regarding the number of class members, however, is insufficient to satisfy the requirements of Rule 23. *Id.* Plaintiff's allegations establish that Plaintiff has not reasonably estimated the number of class members. Rather, Plaintiff simply asserts that "the exact number of [c]lass members is unknown to Plaintiff," and "Plaintiff believes that there are thousands of members of the proposed [c]lass." *See* Ex. "A" at ¶ 30. Equally significant, upon information and belief, the members of the proposed

8

class of plaintiffs reside in the same geographic region, Massachusetts, and can be readily identified.

Second, Plaintiff's allegations also establish that the proposed class of plaintiffs do not share sufficiently common questions or issues of fact or law. Numerous individual questions particular to each member of the proposed class exist. Each member of the proposed class of plaintiffs utilized different funeral homes during different time periods, received their own particular funeral directing services, and allegedly suffered unique injuries.

Third, for the foregoing reasons, Plaintiff's claims also are not typical of the claims of the members of the proposed class of plaintiffs because Plaintiff's claims do not arise out of the same events or circumstances as the claims of the members of the proposed class. As such, the legal theories and defenses to be relied upon by Plaintiff differ from the legal theories and defenses of the members of the proposed class.

Finally, Plaintiff's allegations on their face establish that Plaintiff will not fairly and adequately protect the interests of the proposed class of plaintiffs. Plaintiff has not identified a single member of the proposed class who had any relationship whatsoever, contractual or otherwise, with Scatamacchia. Nor has Plaintiff alleged any specific facts with respect to Scatamacchia that would entitle any individual to relief from Scatamacchia. In view of the foregoing, Plaintiff is not capable of adequately representing the proposed class of plaintiffs regarding claims against Scatamacchia. Plaintiff has completely failed to carry her burden with respect to the requirements for class certification under Rule 23(a).

9

### a. Plaintiff's Complaint Should Be Dismissed for Lack of Complete Diversity of Citizenship.

To the extent that this Court does not certify the proposed class of plaintiffs, Plaintiff's Complaint should be dismissed as against Scatamacchia for lack of jurisdiction because Plaintiff cannot establish complete diversity of citizenship. In non-class action cases, 28 U.S.C. § 1332(a)(1) requires complete diversity of citizenship in order for a court to exercise jurisdiction. Stated differently, each plaintiff must be a citizen of a state different than each of the defendants. *See Lundguist v. Precision Valley Aviation. Inc.*, 946 F.2d 8, 10 (1st Cir. 1991) ("there is diversity of citizenship if the plaintiff is a 'citizen' of a different state than *all* of the defendants") (emphasis added) (citing *Sweeney v. Westvaco Co.*, 926 F.2d 29, 32-33, 41 (1st Cir. 1991)). In the instant matter, Plaintiff cannot establish the existence of complete diversity of citizenship because both Plaintiff and Scatamacchia (and thirteen other named defendants) are citizens of Massachusetts. Therefore, if this Court does not certify the proposed class of plaintiffs, this action should be dismissed for lack of complete diversity of citizenship.

### B. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE A PENDING PARALLEL ACTION EXISTS IN MASSACHUSETTS STATE COURT INVOLVING IDENTICAL ISSUES AND CIRCUMSTANCES.

Plaintiff's Complaint should also be dismissed pursuant to the abstention principles set forth by the Supreme Court of the United States in *Colorado River Conservation Dist. v. United States*, 424 U.S. 800 (1976) and its progeny, including *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), because a parallel action involving the very same issues and circumstances is pending in state court and was filed before this action. *See*

10

Exhibit "B." In *Colorado River*, the Supreme Court held that a federal district court may defer to the state court for reasons of comity and judicial economy "in situations involving the contemporaneous exercise of concurrent jurisdiction[ ] . . . by state and federal courts." *Colorado River*, 424 U.S. at 817; *see also Currie v. Group Ins. Comm'n*, 290 F.3d 1, 22 (1st Cir. 2002) (citing *Colorado River*); *Pearson v. Town of Rutland*, No. 01-40164-NMG, 2002 U.S. Dist. LEXIS 27664, *11 (D. Mass. Sept. 10, 2002). In determining whether to decline to exercise jurisdiction, district courts examine several factors, namely: (1) whether either court has assumed jurisdiction over a res or property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties. *See Pearson*, 2002 U.S. Dist. LEXIS 27664, at *12-13 (citations omitted); *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991) (citations omitted). *See also Colorado River*, 424 U.S. at 813; *Moses H. Cone*, 460 U.S. at 23-27.

This action should be dismissed because the balancing of the *Colorado River* factors weighs heavily in favor of dismissal. This Court has a strong desire to avoid piecemeal litigation in order to prevent two courts from adjudicating identical issues, duplicating judicial efforts, and potentially rendering conflicting results. Both matters are predicated on the same allegations and material facts. Each defendant named in the *Anzalone* matter also has been named in this case, and the proposed classes of plaintiffs in both cases are substantially similar, if not identical. In addition, the interests of the named Plaintiffs in both cases, as well as the proposed classes that they seek to represent, are congruent, since the parties in both matters seek relief for injuries allegedly caused by the same misconduct.

123458.00601/11491050v.3

Indeed, the named Plaintiffs in both cases have asserted nearly identical claims for intentional and negligent infliction of emotional distress.

This case presents a risk of piecemeal litigation rising above the routine inefficiency that accompanies parallel proceedings. Both matters are purported class actions in which the proposed classes of plaintiffs may include large numbers of members and allegations against more than a dozen Defendants. The factual nature of this case requires the parties to examine, among other things, each Plaintiff's alleged mental injuries and emotional distress, each funeral directing services' contract and services, and the unique circumstances of each Defendants' conduct and relationship with Bayview Crematory. The amount of discovery in both cases will likely be substantial. Because Scatamacchia will be forced to conduct extensive discovery and otherwise litigate actions involving the same facts and events in two separate courts, dual proceedings would impose an undue burden on Scatamacchia, causing severe prejudice to its defense.

In addition, the state court in the *Anzalone* matter acquired original jurisdiction before this case was filed, and that case has progressed at a greater pace than this action. Numerous Plaintiffs in the state matter have already responded to interrogatories and requests for production propounded by Defendants, including Scatamacchia, and have served discovery requests of their own upon certain Defendants. In stark contrast, discovery in this case has yet to commence.

Furthermore, there is no peculiar "federal" interest in this case. Plaintiff's claims in this matter are governed by state law, not federal substantive law. In fact, certain claims asserted by Plaintiffs may involve novel issues of state law. For example, the law in

12

Massachusetts is unsettled regarding negligent or intentional interference with a corpse or remains, and Scatamacchia could not locate a single case in this Circuit or in Massachusetts state courts recognizing a fiduciary or special duty owed by a funeral home to its customers or a decedent's family members. A state court is better suited than this Court to resolve unsettled or complex issues of state law.

Lastly, the state court in the *Anzalone* matter will adequately protect the interests of all parties. Nothing suggests that the state court is incapable of resolving the issues of state law presented by the alleged events and circumstances, safeguarding the rights of any Plaintiffs, Defendants, or members of any proposed class, or otherwise providing an adequate forum. Accordingly, this Court should decline to exercise jurisdiction over this matter and dismiss Plaintiff's Complaint.

13

## III.    CONCLUSION

For each of the foregoing reasons, Defendant Scatamacchia Funeral Home respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Complaint and that Plaintiff's Complaint be dismissed in its entirety.

Respectfully Submitted,

**DEFENDANT,
SCATAMACCHIA FUNERAL HOME**

By its attorneys,

Dated:  December 20, 2005

MICHAEL E. OKOLITA
Donald E. Feener & Associates
120 Front Street, Suite 310
Worcester, MA 01608-1424

and

GRANT S. PALMER
JOHN J. DiCHELLO
Blank Rome LLP
One Logan Square
Philadelphia, PA  19103
(215) 569-5500

*Attorneys for Defendant, Scatamacchia Funeral Home*

14

## **CERTIFICATE OF SERVICE**

I, Michael E. Okolita, certify that a true and correct copy of the above and foregoing

Scatamacchia Funeral Home's Motion to Dismiss Plaintiff's Complaint and accompanying

Memorandum of Law were served upon the parties or their counsel of record as appearing

on the attached Service List on this ____ day of December, 2005.

MICHAEL E. OKOLITA

## SERVICE LIST
### *Hunt v. Bayview Crematory, LLC, et al.*
### C.A. NO. 05-11140 (RCL)

Theodore M. Hess-Mahan, Esquire
Shapiro, Haber & Urmy LLP
53 State Street
Boston, MA 02108
*Counsel for Plaintiff Lorraine Hunt*

Robert M. Rothman, Esquire
Evan J. Kaufman, Esquire
Lerach Coughlin Stoia Geller Rudman & Robbins
200 Broadhollow Road, Suite 406
Melville, NY 11747
*Counsel for Plaintiff Lorraine Hunt*

Dona Feeney, Esquire
Getman, Stacey, Tamposi, Schulthess & Steere
163 South River Road
Bedford, NH 03110
*Counsel for Bayview Crematory, LLC*

Richard E. Cavanaugh, Esquire
Gallagher & Cavanaugh, LLP
Boott Cotton Mills
100 Foot of John Street
Lowell, MA 01852
*Counsel for Derek A. Wallace, Hart-Wallace Funeral Home,
and Simplicity Burial & Cremation, Inc.*

William F. Ahern, Jr., Esquire
Mandi Jo Hanneke, Esquire
Clark, Hunt, & Embry
55 Cambridge Parkway
Cambridge, MA 02142
*Counsel for Linda Stokes*

Joseph M. Desmond, Esquire
Morrison, Mahoney, & Miller LLP
250 Summer Street
Boston, MA 02210
*Counsel for Cremation Society, Inc.*

123458.00601/11491050v.3

Bradley A. MacDonald, Esquire
Cummings, King & MacDonald
One Gateway Center
Suite 351
Newton, MA 02458
*Counsel for Farrah Funeral Home*

Brian K. Walsh, Esq.
Law Offices of Roberta Fitzpatrick
101 Arch Street, Suite 1761
Boston, MA 02110
Tel: (617) 769-3500
*Counsel for Hamel Wickens & Troupe Funeral Home, Inc.*

George E. Clancy, Esquire
Fuller, Rosenberg, Palmer & Beliveau
340 Main Street
Suite 817
Worcester, MA 01608
*Counsel for Keefe Funeral Home, Inc.*

Robert A. Curley, Jr., Esquire
Curley & Curley P.C.
27 School Street
Boston, MA 02108
*Counsel for William F. Spencer Funeral Services*

American Cremation Society, Inc.
385 Washington Street
Haverhill, MA 01832

# 05 - 11140 RCL

## UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS    MAGISTRATE JUDGE _Bowler_

| | |
|---|---|
| LORRAINE HUNT on behalf of herself and all others similarly situated, | No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | JURY TRIAL DEMANDED |

LORRAINE HUNT on behalf of herself
and all others similarly situated,          )    No.
                                            )
                      Plaintiff,            )    CLASS ACTION COMPLAINT
                                            )
                                            )    JURY TRIAL DEMANDED
vs.                                         )
                                            )
BAYVIEW CREMATORY, LLC, DEREK A.            )
WALLACE, LINDA STOKES, AMERICAN             )
CREMATION SOCIETY, INC., AMERICAN           )
SOCIETY FOR CREMATION, AMERICAN             )
SOCIETY FOR FUNERAL SERVICES, INC.,         )
COMMONWEALTH CREMATION &                    )
SHIPPING SERVICE, INC.,                     )
COMMONWEALTH FUNERAL SERVICE,               )
INC., CREMATION SOCIETY, INC.,              )
DRACUT FUNERAL HOME                         )
INCORPORATED, FARRAH FUNERAL                )
HOME, HAMEL WICKENS & TROUPE                )
FUNERAL HOME, INC., HART-WALLACE            )
FUNERAL HOME, KEEFE FUNERAL                 )
HOME, INC., SCATAMACCHIA FUNERAL            )
HOME, SIMPLICITY BURIAL                     )
& CREMATION, INC. f/k/a OCEANSIDE           )
FAMILY FUNERAL HOME, WILLIAM F.             )
SPENCER FUNERAL SERVICES and DOES           )
1-50, INCLUSIVE,                            )
                                            )
                      Defendants.           )

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

Lorraine Hunt ("Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

## NATURE OF THE ACTION

1.      This is a class action complaint arising from the mishandling, abuse and desecration of the remains of loved ones of Plaintiff and the class members she seeks to represent.

2.      Plaintiff and the Class contracted with, and utilized the services of, the Funeral Home Defendants (defined below), to properly and respectfully perform services, including the cremation of their loved ones. Motivated by greed, the Funeral Home Defendants utilized the services of Bayview Crematory, which was "well known throughout the industry" as a "shoddy operator." Keeping with their reputation, Bayview Crematory engaged in practices offensive to public decency. For example, Bayview Crematory commingled bodies while they were cremated, failed to keep accurate records of the bodies, and engaged in other wrongful conduct, so that the bodies of the deceased were returned to their family members in urns mixed with the ashes of other bodies or not returned at all. The Funeral Home Defendants turned a willful blind eye to the actions of Defendant Bayview Crematory.  Unknown to Plaintiffs and the Class, Bayview Crematory operated without a license since at least 1999 until such time as it was closed down by the authorities in February, 2005.

3.      This suit seeks equitable relief and damages on behalf of the families of all decedents whose remains were cremated by Bayview Crematory and alleges breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent concealment, negligent misrepresentation, negligence, intentional mishandling of a corpse, negligent mishandling of a corpse, intentional infliction of emotional distress, negligent infliction of emotional distress and civil conspiracy.

- 1 -

## PARTIES

4.     Plaintiff Lorraine Hunt is a resident of Quincy, Massachusetts. She is the daughter and the next of kin of Robert Lowe Cashman.

5.     Defendant Bayview Crematory, LLC, is a New Hampshire corporation with its principal place of business at 204 New Zealand Road, Seabrook, New Hampshire. Bayview Crematory handled thousands of cremations each year. Bayview Crematory picked up bodies to be cremated in several states, including New Hampshire, Maine, Massachusetts, and Rhode Island.

6.     Defendant Derek A. Wallace ("Wallace") operated and/or owned Bayview Crematory at all times relevant herein. Upon information and belief, defendant Wallace is a citizen of the state of New Hampshire. Defendant Wallace also owned the Hart-Wallace Funeral Home.

7.     Defendant Linda Stokes ("Stokes"), defendant Wallace's mother, at all times relevant herein, was the owner of the property where Defendant Bayview Crematory is located. Upon information and belief, defendant Stokes is a citizen of the state of New Hampshire.

8.     Defendants named in ¶¶5 to 7 are referred to collectively herein as the "Bayview Crematory Defendants."

9.     Defendant American Cremation Society, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a place of business in Haverhill, Massachusetts.

10.    Defendant American Society For Cremation is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Haverhill, Massachusetts.

11.    Defendant American Society For Funeral Services, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 342 Washington Street, Haverhill, Massachusetts.

- 2 -

12.     Defendant Commonwealth Cremation & Shipping Service, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 1654 Washington Street, Boston, Massachusetts.

13.     Defendant Commonwealth Funeral Service, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Brighton, Massachusetts.

14.     Defendant Cremation Society, Inc. is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principle place of business at 28 Adams Street, Quincy, Massachusetts.  Roger Hamel is the owner of the Cremation Society of Massachusetts.

15.     Defendant Dracut Funeral Home Incorporated is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 2159 Lakeview Avenue, Dracut, Massachusetts.

16.     Defendant Farrah Funeral Home is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Lawrence, Massachusetts.

17.     Defendant Hamel Wickens & Troupe Funeral Home, Inc. ("Hamel Wickens") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 26 Adams Street, Quincy, Massachusetts. Bayview Crematory handled at least 60% of Hamel Wickens' cremation business.

18.     Defendant Hart-Wallace Funeral Home is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Lawrence, Massachusetts.

- 3 -

19.     Defendant Keefe Funeral Home, Inc. ("Keefe") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 2175 Massachusetts Avenue, Cambridge, Massachusetts.

20.     Defendant Scatamacchia Funeral Home is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Haverhill, Massachusetts.

21.     Defendant Simplicity Burial & Cremation, Inc. ("Simplicity") is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business at 287 High Street, Newburyport, Massachusetts. Simplicity was formerly known as Oceanside Family Funeral Home with a principal place of business at 34 Lafayette Road, Salisbury, Massachusetts. Defendant Wallace part-owned Oceanside Funeral Home.

22.     Defendant William F. Spencer Funeral Services is a corporation organized and existing under the laws of the Commonwealth of Massachusetts with a principal place of business in Boston, Massachusetts.

23.     Plaintiff hereby specifies, reserves and designates additional funeral homes that utilized the services of Bayview Crematory as Does 1 through 50, inclusive, as Defendants herein. The true names, identities and capacities of the Defendants sued as Does herein are presently unknown to Plaintiff, which reserves the right to amend to incorporate their true names, identities and capacities.

24.     Each of the defendants named in ¶¶9 to 23 are herein collectively referred to as the "Funeral Home Defendants." Each of the Funeral Home Defendants utilized the services of defendant Bayview Crematory during the class period.

- 4 -

## JURISDICTION AND VENUE

25.    The Court has original jurisdiction over this matter, pursuant to 28 U.S.C.S. §1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential class members in which plaintiff is a citizen of Massachusetts while at least one defendant is a citizen of a different state.

26.    The Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and defendants; because the amount in controversy exceeds $75,000, exclusive of interest and costs as to Plaintiff, and each and every member of the Class who has been injured and damaged as a result of defendants' conduct. Additionally, the Class has a common and undivided interest in obtaining punitive damages and equitable relief that far exceed the jurisdictional minimum in value.

27.    Venue properly lies in this district pursuant to 28 U.S.C. §1391(a), because Plaintiff as well as many of the Funeral Home Defendants reside in this district of Massachusetts, as they conduct business in this district within the meaning of 28 U.S.C. §1391(a) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in this district of Massachusetts.

28.    Many of the defendants reside, are found, have an agent, or have transacted substantial business within the District of Massachusetts. Many of the material acts alleged herein occurred within the District of Massachusetts.

## CLASS ACTION ALLEGATIONS

29.    This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings this action both in her individual capacity, and as a class action against defendants, on behalf of herself and: (i) all persons who controlled the disposition of the remains of any decedents delivered for cremation to defendant Bayview Crematory; (ii) all persons

- 5 -

who were parties to any contract with any of the defendants regarding funeral arrangements for a decedent who was delivered for cremation to defendant Bayview Crematory; and (iii) the estates of the decedents and the representatives thereof (the "Class") during the period commencing at a date certain, presently unknown to Plaintiff, and continuing through February 23, 2005 (the "Class Period"). Excluded from the Class are defendants, including, the members of the Individual Defendants' families, any entity in which any defendant has a controlling interest, or which is a parent or subsidiary of, or which is controlled by, any defendants, and the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, or assigns of any of the defendants.

30.    The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members of the proposed Class.

31.    Common questions of law and fact exist as to all Class members and predominate over any questions which affect only individual Class members. These common questions of law and fact include:

(a)    whether contrary to their contractual, fiduciary and non-delegable duties, defendants systematically and commonly failed to accomplish the cremation and disposition process with dignity and respect expected of them by public sensibilities;

(b)    whether defendant Bayview Crematory systematically and commonly mishandled, desecrated, abused and commingled the remains of decedents in a manner offensive to human sensibilities and/or expressly prohibited by law; and

(c)    whether the Funeral Home Defendants turned a blind eye or otherwise failed to inspect, supervise, monitor or oversee Bayview Crematory's practices.

- 6 -

32.     Plaintiff's claims are typical of the claims of the Class members she seeks to represent in that Plaintiff and each Class member sustained, and continues to sustain, damages arising from Defendants' wrongdoing. Plaintiff's damages, as well as the damages of each Class member, were caused by Defendants' wrongful conduct as alleged herein.

33.     Plaintiff will fairly and adequately protect the interests of those Class members she seeks to represent and has no interests that are antagonistic to the interests of any other Class member. Plaintiff has retained counsel who have substantial experience and success in complex litigation, including the litigation of class actions and consumer protection claims, including consumer protection claims in the class action context.

34.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable. Furthermore, because the damages suffered, and continued to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

35.     In addition, the prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for defendant. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

### COMMON FACTUAL ALLEGATIONS

### Bayview Crematory Mishandled and Commingled Corpses

36.     Throughout the Class Period, Bayview Crematory (which operated without a license since at least 1999) picked up bodies, cremated them, and returned the ashes to the Funeral Home

- 7 -

Defendants for the low price of $190. If the Funeral Home Defendants followed industry practice

and transported the bodies of the decedents themselves, it would cost as much as $265. Bayview

Crematory's pickup-and-delivery policy allowed the Funeral Home Defendants to either lower their

prices or sharply increase their profits.

37.     The Funeral Home Defendants, in order to either save the small sum of approximately

$75 per deceased body, entrusted the remains of the loved ones of Plaintiff and the other Class

members to Bayview Crematory even though that meant that the Funeral Home Defendants would

have to turn over control of bodies under their charge. Reputable funeral home operators would not

use Bayview Crematory because they did not feel comfortable turning over control of the bodies of

the deceased to Bayview Crematory.

38.     For example, as reported in an article in *The Boston Globe* on June 29, 2003 titled,

"N.H. Firm Offers Lift to Funeral Homes' Bottom Line But Questions, Complaints Are Raised

Against Operator":

> Robert Biggins, the owner of the Magoun-Biggins Funeral Home in Rockland, said
> he had no personal knowledge of Bayview Crematory **but was troubled by the idea
> of relinquishing control of a body under his charge.** He said families turn over a
> loved one to his funeral home, not to a crematory they know nothing about. He said
> the Tri-State Crematory in Noble, Ga., also operated a pickup and delivery system,
> which shielded it from funeral home scrutiny. Investigators last year found more
> than 300 decomposed and mummified bodies in the woods surrounding Tri-State
> Crematory.
>
> **John Anderson**, owner of Anderson-Bryant Funeral Home in Stoneham, **said
> Bayview's approach concerned him.** He said his funeral home prefers to take
> bodies to a crematory and watch the whole process. "That eliminates the problem
> they had in Georgia," he said.

[Emphasis added.]

39.     Regardless of the price charged for their services, Defendants, as well as the entire

cremation and funeral home industry, have an ethical code which demands decorum and respect in

- 8 -

handling human remains. However, the Funeral Home Defendants knew, or recklessly and/or negligently disregarded, that Bayview Crematory failed to abide by this ethical code.

**Defendant Wallace Was Suspended for Five Years for Unprofessional Conduct**

40.     On August 25, 2004, the Board of Regulation of Funeral Directors and Embalmers handed defendant Wallace a five-year suspension as a result of unprofessional conduct and deceptive practices, including one case where he refused to complete funeral arrangements for a client because she had purchased a lower-priced casket elsewhere. Defendant Wallace lost his licenses as an embalmer and funeral director for violating a number of rules which regulate the way funeral directors interact with customers.

41.     According to the 53-page decision from the Board of Regulation of Funeral Directors and Embalmers (the "Decision"), Wallace attempted **to cover up his transgressions** and was unwilling to take the charges against him seriously. In fact, **Wallace had to be reprimanded and asked not to laugh during witness testimony**.

42.     The Decision noted that: "Respondent claims that he made many 'mistakes' which do not rise to the level of gross misconduct . . . . If there were only one mistake, that argument might hold water. However, what he terms mistakes were a **litany of violations** of the board's rules and regulations."

43.     Accordingly the board found Wallace violated a large number of board regulations and rules.

44.     The charges against Wallace arose primarily from three complaints. One of the complaints claimed that Wallace had embalmed a body in October 2001 but refused to handle the rest of the funeral arrangements after learning the deceased's daughter had purchased a lower-priced casket from another company. Wallace's actions violated Federal Trade Commission rules that state that funeral homes cannot decline to do business with a customer who purchased a casket from

- 9 -

another vendor. According to the Decision, Wallace then held the body hostage and refused to release it until he received a certified check for $1,710, even though that charge was not justified.

45.    Another complaint accused Wallace of reneging on a prepaid funeral contract. Although the deceased's mother had paid $4,375 in 1990 for a contract that she assumed would cover the cost of her funeral whenever she died, Wallace improperly charged the deceased's next of kin an additional $1,200 to $1,400 and also tried to substitute a casket of lesser quality than the one that the deceased had originally selected and paid for.

46.    Wallace was also disciplined for his ownership of the Bayview Crematory. The board concluded Wallace violated Massachusetts regulations barring funeral directors from owning cemeteries or crematories. According to the Decision, Wallace tried to cover up his violation of the regulations in September 2002 by selling his interest in the crematory to his mother for $1 while continuing to run the facility. "The number of misrepresentations by Derek Wallace in connection with this dual ownership is staggering," the board said in its Decision.

47.    Additionally, defendant Hart-Wallace Funeral Home was shut down as a result of defendant Wallace's conduct.

**The Police Shut Down Bayview Crematory Due to a Series of Gruesome Finds**

48.    On February 23, 2005, the New Hampshire police, executing a warrant for financial records at Bayview Crematory, made a series of gruesome finds prompting them to shut it down. Police officers found, among other things: unlabeled urns filled with ashes; two bodies stuffed into a single oven; a body rotting in a broken freezer; and a trash bin heaped with charred pacemakers, hip replacements, and prosthetics.

49.    An article in *The Boston Herald* titled "Cops find rotting corpse at crematory" on February 24, 2005 stated in part:

- 10 -

> "We discovered we had a decaying body in a broken cooler," Rockingham County
> Attorney James Reams said.
>
> The body had decomposed there for seven to 10 days at 78 degrees.
>
> Reams said they also found a worker burning two "intermingled" bodies at the same
> time in the same oven, as well as blood and other medical waste in a Dumpster
> outside the crematorium that records show has operated unlicensed since at least
> 1999.

50.    Investigators probing the Bayview Crematory noted that Bayview's practices were so

shoddy that hundreds of New England families could not be sure that the high-volume, low-priced

crematorium gave them back the right ashes. Bayview Crematory handled the remains of hundreds

of Massachusetts residents, as well as cadavers from Harvard Medical School, despite operating

without a required license for six years. The Rockingham County Attorney, Jim Reams, who is in

charge of the case, admitted that: "There is nothing we can do to assure [families] that they have the

right remains."

51.    According to the Funeral Consumers Alliance of Eastern Massachusetts, a watchdog

group that advises consumers, "The funeral homes that used Bayview betrayed the confidence of the

families they served."

52.    Indeed, rather than having a funeral director accompany a body from funeral home to

crematorium, Bayview simply picked up bodies on its own, cutting costs in half and generating

much business from funeral homes in New Hampshire, Massachusetts and other states.

53.    The Funeral Home Defendants are responsible for the atrocities that occurred at

Bayview Crematory because they knew, or recklessly and/or negligently disregarded, the

disrespectful way that Bayview Crematory treated the remains of the loved ones of Plaintiff and the

Class. A February 26, 2005 article in *The Boston Globe* titled "Families' Doubt on Ashes Led to

Lawsuits Crematory Was Sued Last Year in Boston" stated in part:

The focus for now is still on Bayview, a low-price crematory that is not held in high regard, according to a funeral director at one Boston-area funeral home, who said Bayview was avoided because of the way it did business.

**"It was pretty well-known throughout the industry that they were a shoddy operation," said the director, who spoke on condition of anonymity.**

"They would send a box truck around, and they would swing through the area twice a week," he said. "They would tag a box, put the body in it, and continue on their way."

[Emphasis added.]

54.    On March 20, 2005, it was reported in an article over *The Associated Press State &*
*Local Wire* titled "Unlicensed crematorium operator faces more complaints" that defendant Wallace
was being investigated on two new complaints brought by the Massachusetts Division of
Professional Licensure. One complaint alleges he double-billed a family of $600 that had been
prepaid by their dead relative. The other alleges a falsified signature of a Massachusetts medical
examiner was on a death certificate.

55.    On April 18, 2005, it was reported that ashes in four urns seized at Bayview
Crematory in February 2005 will probably never be identified because the paperwork seized at
Bayview did not reveal whose remains were in the urns. After remains are cremated there's no
DNA.

56.    On May 13, 2005, authorities found the remains of 25 bodies in urns when they
raided the Hart-Wallace Funeral Home and Simplicity Burial and Crematory. Defendant Wallace
owns Hart-Wallace Funeral Home and co-owns Simplicity Burial and Crematory.

57.    Three of the leading cremation and funeral associations, the Cremation Association of
North America ("CANA"), the International Cemetery & Funeral Association ("ICFA"), and the
National Funeral Directors Association ("NFDA") engaged in a cooperative effort and set forth basic
due diligence steps for funeral homes when dealing with crematories. These due diligence steps

- 12 -

were presented in a "Due Diligence for Funeral Homes Utilizing Third Party Crematories" package (the "Due Diligence Package") and were made available to each of the members of CANA, ICFA and NFDA. The Due Diligence Package recommended that each funeral home follows the due diligence steps in order to "protect the cremation families it serves."

58.    The Introduction of the Due Diligence Package stated that each funeral home "has a responsibility to the family to ensure that the crematory will carry out the cremation in a legal, professional and ethical manner." Importantly, the Due Diligence Package clearly stated that the "funeral home should deliver the remains to the crematory using its own personnel." Instead of adhering to this important principle, each of the Funeral Home Defendants utilized Bayview Crematory to pick up remains from the Funeral Home Defendants and then drop them off when the cremation process was completed.

59.    Additionally, the Due Diligence Package stated that each funeral home should have a "due diligence" file on each outside crematory the funeral home uses and that an "important aspect of due diligence is a review of the licenses and operational records of the crematory." It was recommended that the records request should be updated at least once a year. Had any of the Funeral Home Defendants reviewed the licenses of Bayview Crematory, they would have readily determined that Bayview Crematory had operated without a license since at least 1999. Finally, the Due Diligence Package recommended that each funeral home should conduct an unannounced inspection of the crematory at least once a year and document their findings.

60.    Throughout the Class Period, the Funeral Home Defendants executed individual contracts with Plaintiff and each member of the Class to perform funeral related services in connection with the passing of a loved one, including cremation services. These services were to be

- 13 -

performed in a respectful manner. Each decedent's remains were to be cremated with dignity and respect in keeping with public sensibilities and in accordance with the law.

61.    Motivated by greed, the Funeral Home Defendants each used Defendant Bayview Crematory to carry out the cremation process for the benefit of Plaintiff and the Class. However, the Funeral Home Defendants chose to have the cremations take place in a facility that was never properly approved or established under any appropriate state regulations or laws and did not have the authority to do the cremations that were conducted.

62.    Contrary to their contractual, fiduciary and non-delegable duties, defendants commonly and systematically failed, throughout the Class Period, to accomplish the cremation and disposition process with the dignity and respect expected of them by public sensibilities and required of them by law. Defendants, without describing their actual practices or obtaining express written permission from Plaintiff or any Class members, knowingly, recklessly and/or negligently permitted and facilitated the disrespectful, improper and illegal mishandling, desecration, abuse and commingling of the remains of the decedents.

63.    Throughout the Class Period, Defendant Bayview Crematory systematically and commonly mishandled, desecrated, abused and commingled the remains of the decedents in a manner offensive to human sensibilities and/or expressly prohibited by law.

64.    The Funeral Home Defendants failed to inspect, supervise, monitor or oversee Bayview Crematory's practices although they were under a duty to do so and thereby breached their duties to Plaintiff and the Class. The Funeral Home Defendants also failed to return the cremated remains of family members.

65.    The failure of each and every Funeral Home Defendant to discharge its duty of special care to ensure that the remains entrusted to their care were handled respectfully and in

- 14 -

accordance with the wishes of the families of the deceased contributed to and caused harm to Plaintiff and the Class. Had any one of the Defendant Funeral Home Defendants inspected, supervised or monitored Bayview Crematory's cremation practices, as this special duty requires, Bayview Crematory's practices would have been discovered and stopped before widespread injury took place. Because each and every Defendant Funeral Home failed to meet its duty, Bayview Crematory was able to continue its practice of mishandling, commingling and desecrating the remains of the loved ones of family after family. Through defendants' willful, reckless, and/or negligent failure to discover and/or disclose the true nature of the facilities, equipment, practices, and procedures utilized at Bayview Crematory about the true nature of the practices at Bayview Crematory, each defendant contributed to and caused harm to every member of the Class by enabling and facilitating the mishandling, commingling and desecration of the decedents' remains.

66.     Additionally, each of the Funeral Home Defendants owned and or controlled by defendant Wallace and/or Stokes had direct knowledge of the wrongful conduct at Bayview Crematory and intentionally steered business to Bayview Crematory for financial gain irrespective of the wrongful acts described herein.

67.     The remains of the decedent, Robert Lowe Cashman, who died on April 6, 2004, were entrusted at or about that time to Defendant Hamel, Wickens & Troupe Funeral Home, by plaintiff Lorraine Hunt, his daughter, and thereafter picked up by, or delivered to, Bayview Crematory for cremation. Bayview Crematory issued a cremation certificate #4176 and indicated a cremation date of April 8, 2004.

68.     Plaintiff is now informed and believes, and thereon alleges, that her father was subjected to the unlawful and improper practices of Bayview Crematory. Her father's remains were not cremated with dignity and respect or in accordance with their wishes or the law. Instead, his

- 15 -

remains were subjected by the defendants to commingling, mishandling, abuse and other improper

practices and processes and, as a proximate result, were desecrated, mishandled and/or commingled

together with the remains of other Class members' loved ones.

69.    Because the defendants exercised complete control over the remains of the decedents

and due to defendants' improper and unlawful desecration of the remains, many families whose

loved ones were given to Defendant Bayview Crematory will never know to what treatment the

remains of their loved ones were subjected.

70.    Plaintiff's claims arose out of a series of transactions or occurrences that have a

question of law or fact common to all Defendants. The series of transactions or occurrences that

have a common question of law or fact is the series of contracts between Plaintiff and the other Class

members and the Funeral Home Defendants. The series of occurrences that have a common

question of law or fact are the events at Defendant Bayview Crematory's property (a common

locale) involving the mishandling of Plaintiffs' and the Class members' decedents' remains.

71.    As a proximate result of: (a) defendants' representations that the decedents' remains

would be and had been cremated in the authorized and requested manner with dignity and respect;

(b) the defendants' possession and control of the remains of the decedents' remains and complete

control over the manner of treatment of these remains; and (c) the concealment by the defendants of

the mistreatment, mishandling, desecration and abuse of the remains, Plaintiff and the Class

members did not discover that their loved one's remains were subjected to the defendants'

misconduct until within one year preceding the filing of this Complaint.

## COUNT I

### EQUITABLE (INJUNCTIVE AND/OR DECLARATORY) RELIEF
### (AGAINST ALL DEFENDANTS)

72.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.    Plaintiff and the Class members and/or their decedents entered into written or oral contracts with the defendants to obtain and ensure the cremation of their loved ones in an individual, dignified, respectful and lawful manner. Plaintiff and the Class members and/or their decedents were induced to enter into such contracts by the defendants' representations, which emphasized and assured the dignified and respectful manner in which the decedents' remains would be handled and cremated and omitted any information regarding the actual practices of Bayview Crematory or the defendants' failure to inspect, supervise or monitor Bayview Crematory. Plaintiff and the Class members were the natural and intended beneficiaries of those written and oral contracts.

74.    Plaintiff and the Class members and/or their decedents performed all promises, covenants and conditions required on their part to be performed pursuant to the cremation contracts and have fully paid the agreed-upon price for the defendants' services.

75.    During the Class Period, the defendants breached these contracts by failing to accomplish the cremation of the remains of the decedents in an individual, dignified, respectful and/or lawful manner.

76.    Instead, the defendants employed, authorized and/or allowed the employment of processes and practices resulting in the mishandling, abuse and commingling of the decedents' remains.

77.    The remains of the decedents were improperly and unlawfully handled while in the defendants' exclusive possession and control, without the authorization, knowledge, permission,

- 17 -

consent or ratification of Plaintiff or the Class members. The remains were abused, desecrated and commingled with each other and disposed of as no more than garbage, such that the integrity of the remains was violated and the remains were not returned to Plaintiff and the Class for disposition. The decedents' remains were not afforded individual, respectful and dignified disposition and were, instead, mishandled, abused and desecrated.

78.     The named Plaintiff and the Class members are charged by law, by their own perceived moral obligations and ethical duties and by natural sentiments to accomplish the disposition of their decedents' remains as requested by the decedents, as set forth in the cremation contracts with the defendants, and in keeping with public sensibilities and the law.

79.     No adequate remedy at law exists to address the abuse of the decedents' remains and, due to the defendants' actions, there may be no way to undo the injustices that have been done. Worse, many family members who entrusted their departed loved ones to the defendants may never be able to learn the true fate of their remains.

80.     Accordingly, Plaintiff, on behalf of herself and the Class, requests the following equitable relief:

(a)     A judicial determination and declaration of the rights of Plaintiff and the Class and the responsibilities of the defendants with respect to the remains that are the subject of this action;

(b)     That the defendants be enjoined to return to Plaintiff and the Class members any and all remains of decedents still in the Defendant Bayview Crematory's possession, custody or control so that respectful and dignified disposition of the remains may be accomplished;

(c)     That the defendants disclose to Plaintiff and the Class, insofar as is possible, the whereabouts of the desecrated and commingled remains and residue containing commingled

- 18 -

remains of decedents delivered to Bayview Crematory during the Class Period so that Plaintiff and the Class may carry out the dignified and respectful disposition of same;

(d)    That the property upon which the remains were discovered and in which they were interred, desecrated and commingled be held in trust for the benefit of the Class pending the ultimate disposition by the Court;

(e)    That the defendants be enjoined to cease and desist all mishandling, abuse and desecration of human remains; and

(f)    That the defendants be determined and declared to be financially responsible for the costs and expenses of accomplishing any and all dignified and respectful disposition of the decedents' remains as may be possible.

## COUNT II

### BREACH OF CONTRACT
### (AGAINST THE FUNERAL HOME DEFENDANTS)

81.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

82.    Plaintiff and the Class members and/or their decedents entered into written or oral contracts with the Funeral Home Defendants to obtain and ensure the cremation of the decedents in an individual, dignified, respectful and lawful manner. The expectations of the named Plaintiff and the Class members, as reasonable persons, were that these contracts, expressly or by reasonable implication, assured the legal, dignified and respectful disposition of their decedents' remains. These contracts uniformly omitted material information regarding Bayview Crematory's actual practices, Bayview Crematory's unlicensed status, and the Funeral Home Defendants' failure to inspect, monitor or supervise Bayview Crematory. Plaintiff and the Class members were the natural and intended beneficiaries of those written and oral contracts.

- 19 -

83.    Plaintiff and the Class members and/or their decedents performed all promises, covenants and conditions required on their part to be performed pursuant to the cremation contracts and have fully paid the agreed-upon price for the defendants' services.

84.    The defendants breached their express written and oral contracts, implied contracts with and promises to Plaintiff, the Class and their decedents by improperly handling or causing the improper handling of the decedents' remains as described herein, and by failing to disclose the true nature of Bayview Crematory's practices and procedures.

85.    The class members were the natural and intended beneficiaries of the contracts with the defendants regarding funeral services to be provided for the decedents.

86.    As a proximate result of the defendants' breaches of contract, Plaintiff and the Class and/or their decedents have incurred damages in the amounts they previously paid the defendants for cremation services improperly performed, and, as a further result of the defendants' breaches of contract, Plaintiff and the Class have incurred and will incur additional monetary losses in attempting to recover, identify and respectfully dispose of the decedents' remains.

## COUNT III

### BREACH OF FIDUCIARY DUTY/SPECIAL DUTY
### (AGAINST ALL DEFENDANTS)

87.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

88.    By offering funeral-related services that Plaintiff and the Class reasonably expected would be performed or accomplished in a dignified and respectful manner, the defendants knowingly and intentionally entered into a special relationship of trust and confidence with Plaintiff, the Class and their decedents. In entering into agreements to effectuate and complete the disposition of remains, the defendants undertook to respectfully, responsibly and lawfully discharge these duties

- 20 -

including specifically the duty to perform disposition services in a dignified and respectful manner, within the bounds of industry practice, and in accordance with all applicable law and regulations.

89.    The defendants were, therefore, charged with a fiduciary or special duty to Plaintiff, the Class and their decedents to fully and faithfully perform the disposition duties.

90.    By mishandling, abusing and desecrating the decedents' remains as described herein, by negligently or recklessly entrusting Bayview Crematory with the bodies of Plaintiff's and the Class's loved ones, and by failing to properly perform or accomplish those services that the defendants had expressly or impliedly agreed to perform, the defendants, and each of them, breached the fiduciary duties owed by them to Plaintiff, the Class and the decedents.

91.    As a direct and proximate result of the defendants' breaches of their fiduciary duties, Plaintiff and the Class have been damaged and injured as set forth above.

92.    Further, the failure of each and every Funeral Home Defendant to faithfully perform the disposition duties, including the failure to ensure that its agent, Bayview Crematory, properly and respectfully handled the decedents' remains, contributed to and caused injury to Plaintiff and the Class as a whole because but for the failure of each Funeral Home Defendant properly to discharge its duty, Bayview Crematory's horrific practices would have been discovered and stopped before widespread injury took place.

93.    Finally, the Funeral Home Defendants were recklessly or negligently complicit in, and vicariously liable for, the fraudulent concealment by the Bayview Crematory Defendants of the adulterated nature of the cremated remains returned by the Bayview Crematory Defendants to the families by failing to supervise, monitor, and inspect the premises and practices of Bayview Crematory, and thereby allowing Bayview Crematory's fraudulent practices to continue.

94.     The defendants' conduct in breach of their fiduciary obligations, was intentional, knowing, done with oppression, fraud and malice and/or done in reckless and conscious disregard of the rights of Plaintiff and the Class. Plaintiff and the Class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing, enabling, aiding and abetting, or recklessly allowing similar indecencies upon human remains.

## COUNT IV

### FRAUDULENT CONDUCT
### (AS TO BAYVIEW CREMATORY DEFENDANTS)

95.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

96.     The conduct of the Bayview Crematory operations by the Bayview Crematory Defendants, as described in this Complaint, operated as a fraud upon Plaintiff and the Class in that the actual conduct of these defendants was uniformly and actively concealed from Plaintiff and the Class throughout the class period.

97.     Plaintiff's reliance on all defendants' proper conduct of every stage of the disposition process was justified and reasonable in that the Funeral Home Defendants, with whom Plaintiff and the Class dealt, and to whom they entrusted their loved ones' remains for disposition, held themselves out to be reputable, experienced and trustworthy entities in the business of funeral cremation and related services.

98.     Plaintiff and the Class first became aware and could first reasonably have become aware of the concealed misconduct of the Bayview Crematory Defendants on or about February 23, 2005.

99.    As a proximate result of the Bayview Crematory Defendants' fraudulent conduct, fraud and deceit, Plaintiff and the Class have suffered damages and injuries described herein.

100.    Bayview Crematory Defendants' fraud and deceit, consisting of: 1) their concealment of their unlicensed status; 2) their fraudulent conduct in commingling, desecrating, and adulterating the human remains entrusted to them and the resulting cremated remains; and 3) their uniform concealment and nondisclosure of this misconduct, and their implicit representation, through the return of separately packaged cremated remains, that cremations had been properly accomplished, concealing from Plaintiff and the Class in such a way that it was difficult or impossible for Plaintiff to discover the intrinsically commingled and adulterated nature of the cremated remains, was intentional, knowing, done with oppression, fraud and malice and done in reckless and conscious disregard of the rights of Plaintiff and the Class. Plaintiff and the Class are, therefore, entitled to punitive and exemplary damages from said defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## COUNT V

### NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

101.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

102.    At all material times, the defendants owed a duty to Plaintiff and the Class to act with the ordinary care of a reasonable person with respect to all aspects of the services promised including, but not limited to, all phases of the cremation process, including but not limited to the hiring, retention, training and supervision of all agents, employees and representatives of the defendants, in connection with such services and transactions, the management and administration of

- 23 -

the services and transaction, the association with other persons and entities to accomplish the performance of such services, the individual, proper and respectful performance of all steps of the cremation process, and the ascertainment that all such services were being fully and properly undertaken and performed.

103.    The defendants negligently and carelessly failed to discharge these duties.

104.    As a proximate cause of the defendants' negligence, Plaintiff and the Class members have been damages and injured as described herein.

## COUNT VI

### WILLFUL INTERFERENCE WITH REMAINS AND INTENTIONAL MISHANDLING OF A CORPSE (AGAINST ALL DEFENDANTS)

105.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

106.    Plaintiff and the Class, as the decedents' next of kin, had or have a personal quasi-property right to ensure the proper handling and burial of the decedents' remains.

107.    Plaintiff and the Class expressed their wishes to the defendants regarding the manner in which the remains were to be handled.

108.    The defendants had the opportunity to comply with Plaintiff's and the Class member's expressed wishes.

109.    The defendants, however, willfully and deliberately mishandled the decedents' remains, and/or caused, contributed to, or aided and abetted the Bayview Crematory Defendants' mishandling by knowingly failing to assure that Bayview Crematory's operations were conducted properly, respectfully, and in accordance with all applicable law and regulations, and thereby interfered with the rights and responsibilities of Plaintiff and the Class to effect the proper

- 24 -

disposition of the remains with utmost dignity, in accordance with the law and their wishes, requests and beliefs.

110.    The defendants' mishandling of the remains and their interference with the rights of Plaintiff and the Class precluded Plaintiff and the Class from exercising their rights and performing their responsibilities of appropriately disposing of the remains of their decedents.

111.    As a direct, known, foreseeable and proximate result of the intentional mishandling of the remains by the defendants, Plaintiff and the Class have suffered and continue to suffer injury and damages.

112.    In mishandling or causing or contributing to the mishandling of the remains of the decedents, the defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of Plaintiff and the Class. Plaintiff and the Class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## COUNT VII

### NEGLIGENT INTERFERENCE WITH REMAINS AND MISHANDLING OF A CORPSE (AGAINST ALL DEFENDANTS)

113.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

114.    Plaintiff and the Class, as the decedents' next of kin, had or have a personal quasi-property right to ensure the proper handling and burial of the decedent's remains.

115.    Plaintiff and the Class expressed their wishes to the defendants regarding the manner in which the remains were to be handled.

- 25 -

116.    The defendants had the opportunity to comply with Plaintiff's and the Class member's expressed wishes.

117.    The defendants negligently, recklessly and carelessly mishandled the decedents' remains and interfered with the rights and responsibilities of Plaintiff and the Class to dispose of the remains in ways unauthorized by Plaintiff and the Class and their decedents, ways that were contrary to the law and contrary to their wishes, requests and beliefs.

118.    The defendants' conduct was accomplished through a common course and practice of improper handling of remains, resulting from the defendants' own negligence and negligent entrustment of the decedents' remains to persons who lacked the qualifications, training, sensitivity, experience and integrity required to handle the remains properly and by the defendants' negligent failure to control, supervise and investigate the actions of such persons and entities.

119.    As a direct and proximate result of the defendants' negligent interference with the decedents' remains, Plaintiff and the Class have suffered and continue to suffer damages and injuries.

## COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL DEFENDANTS)

120.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

121.    The defendants' conduct directed toward Plaintiff and the Class members, as described herein, was intentional, knowing, and/or reckless. It is so outrageous that it is not tolerated by civilized society.

- 26 -

122.    As a direct and proximate result of the defendants' conduct, Plaintiff and the Class

suffered serious mental injuries and emotional distress that no reasonable person could be expected

to endure or adequately cope with.

123.    In their conduct, the defendants acted intentionally, knowingly, with oppression,

fraud and malice and in reckless and conscious disregard of the rights of Plaintiff and the Class.

Plaintiff and the Class are, therefore, entitled to punitive and exemplary damages from the

defendants in such amount as shall be necessary and appropriate to punish the defendants and to

deter them and anyone else from ever committing similar indecencies upon human remains.

## COUNT IX

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST ALL DEFENDANTS)

124.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

forth herein.

125.    At all material times, the defendants owed a duty to Plaintiff and the Class to act with

the ordinary care of a reasonable person with respect to all aspects of the services promised

including, but not limited to, all phases of the cremation process, including but not limited to the

hiring, retention, training and supervision of all agents, employees and representatives of the

defendants, in connection with such services and transactions, the management and administration of

the services and transaction, the association with other persons and entities to accomplish the

performance of such services, the individual, proper and respectful performance of all steps of the

cremation process, and the ascertainment that all such services were being fully and properly

undertaken and performed.

126.    The defendants negligently and carelessly failed to discharge these duties.

- 27 -

127.    As a proximate cause of the defendants' negligence, Plaintiff and the Class members

have suffered serious and severe mental injuries and emotional distress that no reasonable person

could be expected to endure or adequately cope with.

## COUNT X

## CIVIL CONSPIRACY
## (AGAINST ALL DEFENDANTS)

128.    Plaintiff repeats and realleges each and every allegation contained above as if fully set

forth herein.

129.    Each and every of the defendants conspired to accomplish an unlawful purpose.

130.    Each and every of the defendants knew at all times relevant herein that the conduct of

the other defendants, including the Bayview Crematory Defendants, constituted a breach of duty and

gave substantial assistance or encouragement to the other defendants so to conduct themselves. Each

defendant offered substantial assistance and/or encouragement to the other defendants with the

knowledge that such assistance and/or encouragement was contributing to a common tortuous plan.

131.    As a result of defendants' conspiracy to accomplish an unlawful purpose, Plaintiff

and the Class members have suffered harm.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests the following relief, on behalf of herself and the Class:

(a)    Certification of this action as a class action, appointment of Plaintiff as Class

representative and undersigned counsel as class counsel;

(b)    An award of equitable, injunctive and declaratory relief described herein,

including judicial supervision of the defendants and a judicial determination of the rights and

responsibilities of the parties regarding the remains that are the subject to this action;

- 28 -

(c)    An award of compensatory damages in an amount deemed appropriate by the

trier of fact, jointly and severally against the defendants;

(d)    An award of punitive damages, jointly and severally against the defendants;

(e)    The establishment of a constructive trust upon the defendants' property,

revenues and/or profits for the benefit of the Class and disgorgement and restitution of the past

revenues and/or profits to the class;

(f)    An award of prejudgment and post-judgment interest;

(g)    An award of costs, including but not limited to discretionary costs, attorneys'

fees and expenses incurred in pursuing this case;

- 29 -

(h)   Any other and further equitable relief this Court deems just and proper; and

(i)   Any other and further relief to which they may be entitled at law or in equity.

DATED: June 1, 2005                              By her attorneys,

Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
53 State Street
Boston, MA 02109
Telephone: 617/439-3939
Facsimile: 617/439-0134

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
ROBERT M. ROTHMAN
EVAN J. KAUFMAN
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiff Lorraine Hunt

- 30 -

## COMMONWEALTH OF MASSACHUSETTS

ESSEX,        SS.

TRIAL COURT
SUPERIOR COURT DEPT.
CIVIL NO.

C50729



---

PAUL ANZALONE; JANET M. FONTAINE;
FLORENCE H. HOULE; BRENDA HERDEGEN;
SHAUN HERDEGEN; PATRICIA SULLIVAN;
MARIA PEREZ; BAMBI WHITE; DEBORA FOX;
BRENDA RUSSO; SUZANNE M. CONNOLLY;
MAIDA ANN INVERNIZZI; SHAWN PATRICK
INVERNIZZI; STEVE F. SIMONSON; ARTHUR
LAKE; CONSTANCE RAITT; BARBARA J.
HAMEL; DOREEN WILSON; PAULINE JUDD;
EDWARD P. ANDERSON; DEBORAH SPINNEY;
CLIFTON SPINNEY; KENNETH SPINNEY;
RAYMOND H. MONAHAN; PATRICIA M. SCOTT;
DORIS R. CLARK; RUTH DERGARDBEDIAN;
RITA M. MUIR; RITA KENT; JANICE MERRILL;
KATHLEEN BOUDREAU; ANDREW MCWAIN, III;
DEBORAH ELLSEY; IRENE ROBERTSON; and
BERTON NELSON,

Plaintiffs,

vs.

BAYVIEW CREMATORY, LLC, A New
Hampshire Limited Liability Company; LINDA
STOKES, TRUSTEE OF THE DEKES REALTY
TRUST OF 107 SOUTH BROADWAY,
LAWRENCE MASSACHUSETTS; WILLIAM
F. SPENCER FUNERAL SERVICES;
FARRAH FUNERAL HOME; HART-
WALLACE FUNERAL HOME; AMERICAN
CREMATION SOCIETY, INC., a Massachusetts
Corporation; CREMATION SOCIETY, INC., a
Massachusetts Corporation; COMMONWEALTH

1

CREMATION & SHIPPING SERVICE, INC., a
Massachusetts Corporation; COMMONWEALTH
FUNERAL SERVICE, INC., a Massachusetts
Corporation; <u>DRACUT FUNERAL HOME</u>
INCORPORATED, a Massachusetts Corporation;
HAMEL, WICKENS & TROUPE FUNERAL HOME,
INC., a Massachusetts Corporation; SIMPLICITY
BURIAL & CREMATION, INC., a Massachusetts
Corporation f/k/a OCEANSIDE FAMILY FUNERAL
HOME; and SCATAMACCHIA FUNERAL HOME,

        Defendants.

---

## CLASS REPRESENTATION COMPLAINT

Plaintiffs, Paul Anzalone ("Anzalone"), Janet M. Fontaine ("Fontaine"), Florence H.

Houle ("Houle"), Brenda Herdegen ("B. Herdegen"), Shaun Herdegen ("S. Herdegen"), Patricia

Sullivan ("Sullivan"), Maria Perez ("Perez"), Bambi White ("White"), Debora Fox ("Fox"),

Brenda Russo ("Russo"), Suzanne M. Connolly ("Connolly"), Maida Ann Invernizzi ("M.

Invernizzi"), Shawn Patrick Invernizzi ("S. Invernizzi"), Steve F. Simonson ("Simonson"),

Arthur Lake ("Lake"), Constance Raitt ("Raitt"), Barbara J. Hamel ("Hamel"), Doreen Wilson

("Wilson"), Pauline Judd ("Judd"), Edward P. Anderson ("Anderson"), Deborah Spinney ("D.

Spinney"), Clifton Spinney ("C. Spinney"), Kenneth Spinney ("K. Spinney"), Raymond H.

Monahan ("Monahan"), Patricia M. Scott ("Scott"), Doris R. Clark ("Clark"), Ruth

DerGardbedian ("DerGardbedian"), Rita M. Muir ("Muir"), Janice Merrill ("Merrill"), Kathleen

Boudreau ("Boudreau"), Andrew McWain, III ("McWain"), Deborah Ellsey ("Ellsey"), Irene

Robertson ("Robertson"), and Berton Nelson ("Nelson"), **(sometimes collectively the**

**"Plaintiffs" or "Putative Class Representatives")**, sue Bayview Crematory, LLC, a New

Hampshire Limited Liability Company **("Bayview")**, Linda Stokes, Trustee of the Dekes Realty

Trust of 107 South Broadway, Lawrence, Massachusetts ("Stokes"); William F. Spencer Funeral Services ("Spencer"), Farrah Funeral Home ("Farrah"), Hart-Wallace Funeral Home ("Hart-Wallace"), American Cremation Society, Inc., a Massachusetts Corporation ("American Cremation"), Cremation Society, Inc., a Massachusetts Corporation ("Cremation Society"), Commonwealth Cremation & Shipping Service, Inc., a Massachusetts Corporation ("Commonwealth Cremation"), Commonwealth Funeral Service, Inc., a Massachusetts Corporation ("Commonwealth Funeral"), Dracut Funeral Home, Incorporated, a Massachusetts Corporation ("Dracut"), Hamel, Wickens & Troupe Funeral Home, Inc., a Massachusetts Corporation ("Hamel Wickens"), Simplicity Burial & Cremation, Inc., a Massachusetts Corporation f/k/a Oceanside Family Funeral Home ("Simplicity"), and Scatamacchia Funeral Home ("Scatamacchia") **(sometimes collectively referred to as the "Funeral Home Defendants")** William F. Spencer, Louis J. Farrah, II, Derek A. Wallace, Stephen Scatamacchia, Scott R. Hamel, Roger G. Hamel, Paul Caillouette, Stephanie D. LaPusata, Arthur C. Hasiotis, Mark P. Gacek, Robert Scatamacchia, **(sometimes collectively referred to as the "Funeral Director Defendants") (Bayview, Stokes, the Funeral Home Defendants and the Funeral Director Defendants are sometimes collectively referred to as the "Defendants")** and allege:

## The Parties

1.    Anzalone is *sui juris* and a resident of Mansfield, Massachusetts.

2.    Fontaine is *sui* juris and a resident of Lawrence, Massachusetts.

3.    Houle is *sui juris* and a resident of North Andover, Massachusetts.

4.    B. Herdegen is *sui juris* and a resident of Methuen, Massachusetts.

5.    S. Herdegen is *sui juris* and a resident of Methuen, Massachusetts.

6.      Sullivan is *sui juris* and a resident of Winthrope, Massachusetts.

7.      Perez is *sui juris* and a resident of Brookline, Massachusetts.

8.      White is *sui juris* and a resident of South Yarmouth, Massachusetts.

9.      Fox is *sui juris* and a resident of Framingham, Massachusetts.

10.     Russo is *sui juris* and a resident of Framingham, Massachusetts.

11.     Connolly is *sui juris* and a resident of Dracut, Massachusetts.

12.     M. Invernizzi is *sui juris* and a resident of Milford, Massachusetts.

13.     S. Invernizzi is *sui juris* and a resident of Milford, Massachusetts.

14.     Simonson is *sui juris* and a resident of Dedham, Massachusetts.

15.     Lake is *sui juris* and a resident of Framingham, Massachusetts.

16.     Raitt is *sui juris* and a resident of Lawrence, Massachusetts.

17.     Hamel is *sui juris* and a resident of Lawrence, Massachusetts.

18.     Wilson is *sui juris* and a resident of Dracut, Massachusetts.

19.     Judd is *sui juris* and a resident of East Derry, New Hampshire.

20.     Anderson is *sui juris* and a resident of Peabody, Massachusetts.

21.     D. Spinney is *sui juris* and a resident of Lawrence, Massachusetts.

22.     C. Spinney is *sui juris* and a resident of Lawrence, Massachusetts.

23.     K. Spinney is *sui juris* and a resident of Lawrence, Massachusetts.

24.     Monahan is *sui juris* and a resident of Lawrence, Massachusetts.

25.     Scott is *sui juris* and a resident of Merrimac, Massachusetts.

26.     Clark is *sui juris* and a resident of Haverhill, Massachusetts.

27.     DerGardbedian is *sui juris* and a resident of Groveland, Massachusetts.

28.     Muir is *sui juris* and a resident of Haverhill, Massachusetts.

29.      Kent is *sui juris* and a resident of Saugus, Massachusetts.

30.      Merrill is *sui juris* and a resident of Newburyport, Massachusetts.

31.      Boudreau is *sui juris* and a resident of Needham, Massachusetts.

32.      McWain is *sui juris* and a resident of New Bedford, Massachusetts.

33.      Ellsey is *sui juris* and a resident of North Andover, Massachusetts.

34.      Robertson is *sui juris* and a resident of Somerville, Massachusetts.

35.      Nelson is *sui juris* and a resident of Marlborough, Massachusetts.

36.      Bayview is a duly organized and existing limited liability company in the State of New Hampshire, maintaining its principal place of business in Seabrook, New Hampshire.

37.      Stokes is the Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts, the fee title holder to the real property and improvements constituting the Bayview Crematory.

38.      Spencer is a business entity of undetermined nature conducted by William F. Spencer in the Commonwealth of Massachusetts, maintaining its principal place of business in Boston, Massachusetts.

39.      Farrah is a business entity of undetermined nature conducted by Louis J. Farrah, II in the Commonwealth of Massachusetts, maintaining its principal place of business in Lawrence, Massachusetts.

40.      Hart-Wallace is a business entity of undetermined nature conducted by Derek A. Wallace in the Commonwealth of Massachusetts, maintaining its principal place of business in Lawrence, Massachusetts.

41.    American Cremation is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Haverhill, Massachusetts.

42.    Cremation Society is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Quincy, Massachusetts.

43.    Commonwealth Cremation is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Boston, Massachusetts.

44.    Commonwealth Funeral is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Brighton, Massachusetts.

45.    Dracut is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Dracut, Massachusetts.

46.    Hamel Wickens is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Quincy, Massachusetts.

47.    Simplicity is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Newburyport, Massachusetts.

48.    Scatamacchia is a business entity of undetermined nature conducted by Robert Scatamacchia in the Commonwealth of Massachusetts, maintaining its principal place of business in Haverhill, Massachusetts.

49.    At all times material hereto, William F. Spencer was an agent, servant, employee and the licensed and designated funeral director of Spencer.

6

50.    At all times material hereto, Louis J. Farrah, II was an agent, servant, employee and the authorized and designated funeral director of Farrah.  -

51.    At all times material hereto, Derek Wallace was an agent, servant, employee of Bayview and the licensed and designated funeral director of Hart-Wallace.

52.    At all times material hereto, Stephen Scatamacchia was an agent, servant, employee and the licensed and designated funeral director of American Cremation.

53.    At all times material hereto, Scott R. Hamel, Paul Caillouette, and Stephanie D. LaPusata were agents, servants, employees and licensed and designated funeral directors of Hamel Wickens.

54.    At all times material hereto, Roger G. Hamel was an agent, servant, employee and the licensed and designated funeral director of Cremation Society.

55.    At all times material hereto, Arthur C. Hasiotis was an agent, servant, employee and the licensed and designated funeral director of Commonwealth Cremation.

56.    At all times material hereto, Mark P. Gacek was an agent, servant, employee and the licensed and designated funeral director of Dracut.

57.    At all times material hereto, Derek Wallace was an agent, servant, employee and the licensed and designated funeral director of Simplicity.

58.    At all times material hereto, Robert Scatamacchia was an agent, servant, employee and the licensed and designated funeral director of Scatamacchia.

59.    At all times material hereto, Arthur C. Hasiotis was an agent, servant, employee and the licensed and designated funeral director of Commonwealth Funeral.

## Jurisdiction and Venue

60.    Bayview is subject to the jurisdiction of this Court pursuant to Massachusetts General Laws, Chapter 223A, § 3 in that it transacts business in this commonwealth in its dealings with the Funeral Home Defendants, as well as other funeral homes; contracts to supply services in this commonwealth in the form of cremation of decedents and return of their cremains to funeral homes and individuals in this commonwealth; caused tortious injury to citizens of this commonwealth both in and outside of this commonwealth while engaging in regular business and engaging in a persistent course of conduct and deriving substantial revenue for services rendered.

61.    Stokes is subject to the jurisdiction of this Court pursuant to Massachusetts General Laws, Chapter 223A, § 3 by virtue of having caused tortious injury by an act or omission in this commonwealth and causing tortious injury in this commonwealth by an act or omission outside of this commonwealth by virtue of a persistent course of conduct.

62.    Spencer is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Boston, Massachusetts.

63.    Farrah is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Lawrence, Massachusetts.

64.    Hart-Wallace is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Lawrence, Massachusetts.

65.    American Cremation is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Haverhill, Massachusetts.

66.    Cremation Society is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Quincy, Massachusetts.

67.     Commonwealth Cremation is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Boston, Massachusetts.

68.     Commonwealth Funeral is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Brighton, Massachusetts.

69.     Dracut is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Dracut, Massachusetts.

70.     Hamel Wickens is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Quincy, Massachusetts.

71.     Simplicity is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Newburyport, Massachusetts.

72.     Scatamacchia is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Haverhill, Massachusetts.

73.     The Funeral Director Defendants are all subject to the jurisdiction of this Court in that they are agents, servants, and employees of at least one of the Funeral Home Defendants. More particularly, each of the Funeral Director Defendants was the qualified or designated person who signed the death certificate of a family member and/or loved one of each Plaintiff in the course of providing funeral directing services, including cremation at Bayview Crematory.

74.     Pursuant to 28 U.S.C. § 1332 (d)(4)(A), more than two-thirds, if not all, of the members of all proposed Classes, as set forth herein below, are citizens of the Commonwealth of Massachusetts. The majority of the Defendants from whom significant relief is sought by the members of the Classes and whose conduct forms a significant basis for those claims are citizens of the Commonwealth of Massachusetts. Further, the principal injuries occurring to the Putative Class Representatives and the members of the Classes occurred in the Commonwealth of

9

Massachusetts. In the three (3) years preceding the filing of this action, no other class action has been filed asserting the same or similar factual allegations against any of the Defendants on behalf of the same persons.

75.    Additionally, pursuant to 28 U.S.C. § 1332 (d)(4)(B) two-thirds (2/3) or more of the members of the proposed Classes in the aggregate, and the primary defendants, are citizens of the Commonwealth of Massachusetts.

### Preliminary Allegations

76.    On or about October 08, 1999, Stokes became the owner, as trustee, of certain real property and improvements located in Rockingham County, New Hampshire. The real property and improvements are known as the Bayview Crematory.

77.    At all times material hereto, and particularly at the time of the acquisition of the real property and improvements known as the Bayview Crematory, the Defendant, Derek A. Wallace was the sole beneficiary of the "Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts".

78.    At all times material hereto, Derek A. Wallace was the individual in control of the day to day operations of the Bayview Crematory acting by and through his trustee, Stokes.

79.    At all times material hereto, Stokes not only knew of the existence and operation of the Bayview Crematory on the real property she held as trustee for Derek A. Wallace, but also aided and assisted Derek A. Wallace in her capacity of titleholder to the subject property in the operation of the Bayview Crematory. Stokes is the mother of Derek A. Wallace.

80.    At all times material hereto, Stokes was fully cognizant and aware of the fact that Bayview was not a state authorized and approved crematory in the State of New Hampshire and

had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America. Further, Stokes was fully cognizant and aware that Bayview Crematory had no authority or approval to conduct business in this commonwealth, but had and maintained business relations with the Funeral Home Defendants and the Funeral Director Defendants that were for the ostensible benefit of the Putative Class Representatives. Stokes permitted Bayview to operate its unauthorized and unapproved business with full knowledge of the effect on the Putative Class Representatives.

81.     On December 27, 2003, Jane M. Kuzmich, the spouse of Paul Anzalone, died in Attleboro, Massachusetts. On or about December 27, 2003, Anzalone entered into a written agreement with Spencer for funeral directing services relating to his wife's death, including her cremation and the return of her cremains to Anzalone. A true and correct copy of the written agreement is attached hereto, marked Exhibit "A" and made a part hereof.

82.     On July 26, 2001, Gary Scionti, the son of Janet M. Fontaine, died in Lawrence, Massachusetts. Fontaine entered into a written agreement with Farrah for funeral directing services relating to her son's death, including his cremation and the return of his cremains to Fontaine. Fontaine is not in possession of a copy of the written agreement, however a copy is in the possession of Farrah.

83.     On April 19, 2000, Linda St. Louis, the daughter of Florence H. Houle, died in Lawrence, Massachusetts. On or about April 22, 2000, Houle's spouse, Richard J. Houle, entered into a written agreement with Hart-Wallace for funeral directing services relating to their daughter's death, including her cremation and the return of her cremains to Houle. A true and

correct copy of the written agreement is attached hereto, marked Exhibit "B" and made a part hereof.

84.    On December 26, 2000, Charles Edward Herdegen, the spouse of Brenda Herdegen, died in Methuen, Massachusetts.  B. Herdegen entered into a written agreement with American Cremation for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to B. Herdegen.  B. Herdegen is not in possession of a copy of the written agreement, however a copy is in the possession of American Cremation.

85.    On December 26, 2000, Charles Edward Herdegen, the father of Shaun Herdegen, died in Methuen, Massachusetts.  B. Herdegen entered into a written agreement with American Cremation for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Herdegen.  B. Herdegen is not in possession of a copy of the written agreement, however a copy is in the possession of American Cremation.

86.    On September 12, 2004, Francis X. Sullivan, the spouse of Patricia Sullivan, died in Winthrope, Massachusetts.  On or about September 14, 2004, Sullivan entered into a written agreement with Cremation Society for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Sullivan.  A true and correct copy of the written agreement is attached hereto, marked Exhibit "C" and made a part hereof.

87.    On October 6, 2004, Maria S. Ramon, the mother of Perez, died in Brookline, Massachusetts.  On or about October 7, 2004, Perez entered into a written agreement with Commonwealth Funeral for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Perez.  A true and correct copy of the written agreement is attached hereto, marked Exhibit "D" and made a part hereof.

88.     ·On September 2, 2001, Robley Fulcher, Jr., the father of Bambi White, died in Brewster, Massachusetts.  On or about August 21, 2001, White entered into a written agreement with Hamel Wickens for funeral directing services relating to her father's death, including his cremation and the return of his cremains to White   A true and correct copy of the written agreement is attached hereto, marked Exhibit "E" and made a part hereof.

89.     On January 1, 2004, Carmel Fulcher, the grandmother of Bambi White, died in Brewster, Massachusetts.  On or about January 7, 2004, White entered into a written agreement with Hamel Wickens for funeral directing services relating to her grandmother's death, including her cremation and the return of her cremains to White.  A true and correct copy of the written agreement is attached hereto, marked Exhibit "F" and made a part hereof.

90.     On November 19, 2004, Janet Russo, the sister of Debora Fox, died in Boston, Massachusetts.  On or about November 19, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her sister's death, including her cremation and the return of her cremains to Fox.  A true and correct copy of the written agreement is attached hereto, marked Exhibit "G" and made a part hereof.

91.     On December 27, 2004, Edith Russo, the mother of Debora Fox, died in Medford, Massachusetts.  On or about December 27, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Fox.  A true and correct copy of the written agreement is attached hereto, marked Exhibit "H" and made a part hereof.

92.     On November 19, 2004, Janet Russo, the sister of Brenda Russo, died in Boston, Massachusetts.  On or about November 19, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her sister's death, including

13

her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "G" and made a part hereof.

93.    On December 27, 2004, Edith Russo, the mother of Brenda Russo, died in Medford, Massachusetts. On or about December 27, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "H" and made a part hereof.

94.    May 4, 2001, James D. Connolly, the spouse of Suzanne Connolly, died in Boston, Massachusetts. On or about May 31, 2001, Connolly entered into a written agreement with Dracut for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Connolly A true and correct copy of the written agreement is attached hereto, marked Exhibit "I" and made a part hereof.

95.    On June 14, 2003, Paul Walter Invernizzi, the father of M. Invernizzi, died in Milford, Massachusetts. On or about June 14, 2003, M. Invernizzi entered into a written agreement with Cremation Society for funeral directing services relating to her father's death, including his cremation and the return of his cremains to M. Invernizzi A true and correct copy of the written agreement is attached hereto, marked Exhibit "J" and made a part hereof.

96.    On June 14, 2003, Paul Walter Invernizzi, the father of S. Invernizzi, died in Milford, Massachusetts. On or about June 14, 2003, M. Invernizzi entered into a written agreement with Cremation Society for funeral directing services relating to her father's death, including his cremation and the return of his cremains to M. Invernizzi A true and correct copy of the written agreement is attached hereto, marked Exhibit "J" and made a part hereof.

14

97.      On April 10, 2003, Doris M. Nichols, the mother of Stephen Simonson, died in Medford, Massachusetts. On or about April 9, 2003, Simonson entered into a written agreement with Hamel Wickens for funeral directing services relating to his mother's death, including her cremation and the return of her cremains to Simonson  A true and correct copy of the written agreement is attached hereto, marked Exhibit "K" and made a part hereof.

98.      On September 16, 2003, Suzanne Lake, the mother of Arthur Lake, died in North Andover, Massachusetts.  On or about March 11, 2002, Suzanne Lake entered into a written agreement with Hart-Wallace for funeral directing services relating to her death, including her cremation and the return of her cremains to Lake.  A true and correct copy of the written agreement is attached hereto, marked Exhibit "L" and made a part hereof.

99.      On October 3, 2004, John Raitt, Sr., the spouse of Constance Raitt, died in Methuen, Massachusetts.  On or about May 27, 2003, Raitt entered into a written agreement with Hart-Wallace for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Raitt.  A true and correct copy of the written agreement is attached hereto, marked Exhibit "M" and made a part hereof.

100.     On August 3, 2003, Carol Ann Ashford, mother of Barbara Hamel, died in Lawrence, Massachusetts.  Hamel entered into a written agreement with Hart-Wallace for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Hamel.  Hamel is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

101.     On May 10, 2004, David Alden Judd, father of Doreen Wilson, died in Brentwood, New Hampshire.  Wilson entered into a written agreement with Hart-Wallace for funeral directing services relating to her father's death, including his cremation and the return of his

cremains to Wilson. Wilson is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

102.    On May 10, 2004, David Alden Judd, spouse of Pauline Judd, died in Brentwood, New Hampshire. Wilson entered into a written agreement with Hart-Wallace for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Wilson. Wilson is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

103.    On May 5, 2001, Edward P. Anderson, Sr., father of Edward P. Anderson, died in Lawrence, Massachusetts. Anderson entered into a written agreement with Hart-Wallace for funeral directing services relating to his father's death, including his cremation and the return of his cremains to Anderson. Anderson is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

104.    On August 28, 2002, Joseph Spinney, the son of Deborah Spinney, died in St. Petersburg, Florida. D. Spinney entered into a written agreement with Hart-Wallace for funeral directing services relating to her son's death, including his cremation and the return of his cremains to D. Spinney. D. Spinney is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

105.    On August 28, 2002, Joseph Spinney, the brother of Clifton Spinney, died in St. Petersburg, Florida. D. Spinney entered into a written agreement with Hart-Wallace for funeral directing services relating to her son's death, including his cremation and the return of his cremains to D. Spinney. D. Spinney is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

106.     On August 28, 2002, Joseph Spinney, the brother of Kenneth Spinney, died in St. Petersburg, Florida. D. Spinney entered into a written agreement with Hart-Wallace for funeral directing services relating to her son's death, including his cremation and the return of his cremains to D. Spinney. D. Spinney is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

107.     On January 19, 2000, Thomas J. Monahan, the brother of Raymond H. Monahan, died in Lawrence, Massachusetts. Monahan entered into a written agreement with Hart-Wallace for funeral directing services relating to his brother's death, including his cremation and the return of his cremains to Monahan. Monahan is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

108.     On February 4, 2004, Harriet Louise Donovan, mother of Patricia Scott, died in Haverhill, Massachusetts. On or about March 31, 2004, Scott entered into a written agreement with Scatamacchia for funeral directing services relating to her death, including her cremation and the return of her cremains to Scott. A true and correct copy of the written agreement is attached hereto, marked Exhibit "N" and made a part hereof.

109.     On September 18, 2004, Josephine A. Bodwell, the mother of Doris R. Clark, died in Haverhill, Massachusetts. On or about September 3, 2004, Clark entered into a written agreement with Scatamacchia for funeral directing services relating to her death, including her cremation and the return of her cremains to Clark. A true and correct copy of the written agreement is attached hereto, marked Exhibit "O" and made a part hereof.

110.     On March 16, 2000, Howard L. Jerome, father of Ruth DerGardbedian, died in Haverhill, Massachusetts. DerGarbedian entered into a written agreement with Scatamacchia for funeral directing services relating to her father's death, including his cremation and the return of

his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

111.    On March 16, 2000, Howard L. Jerome, father of Rita M. Muir, died in Haverhill, Massachusetts. DerGarbedian entered into a written agreement with Scatamacchia for funeral directing services relating to her father's death, including his cremation and the return of his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

112.    On April 27, 2004, Rita Barber, mother of Rita Kent, died in Haverhill, Massachusetts. On or about April 27, 2004, Kent entered into a written agreement with Simplicity for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "P" and made a part hereof.

113.    On July 31, 2004, Ralph Merrill, spouse of Janice M. Merrill, died in Newburyport, Massachusetts. On or about July 31, 2004, Merrill entered into a written agreement with Simplicity for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Merrill. A true and correct copy of the written agreement is attached hereto, marked Exhibit "Q" and made a part hereof.

114.    On December 15, 2004, William F. Boudreau, spouse of Kathleen Boudreau, died in Boston, Massachusetts. On or about December 16, 2004, Boudreau entered into a written agreement with Hamel Wickens for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "R" and made a part hereof.

115.    On February 3, 2005, Andrew Jackson McWain, Jr., the father of Andrew McWain, III, died in Brockton, Massachusetts. On or about February 7, 2005, McWain entered into a written agreement with Cremation Society for funeral directing services relating to his father's death, including his cremation and the return of his cremains to McWain. A true and correct copy of the written agreement is attached hereto, marked Exhibit "S" and made a part hereof.

116.    On May 23, 2003, John F. McIntyre, father of Deborah Ellsey, died in Methuen, Massachusetts. Ellsey entered into a written agreement with American Cremation for funeral directing services relating to her father's death, including his cremation and the return of his cremains to Ellsey. Ellsey is not in possession of a copy of the written agreement, however a copy is in the possession of American Cremation.

117.    On November 05, 2003, Arthur Thomas Robertson, spouse of Irene Robertson, died in Concord, Massachusetts. Robertson entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Robertson. Robertson is not in possession of a copy of the written agreement, however a copy is in the possession of Commonwealth Cremation.

118.    On December 11, 2001, Vera Nelson, mother of Berton Nelson, died in Marlborough, Massachusetts. Nelson entered into a written agreement with Cremation Society for funeral directing services relating to his mother's death, including her cremation and the return of her cremains to Nelson. Nelson is not in possession of a copy of the written agreement, however a copy is in the possession of Cremation Society.

119.    In each and every instance, the cremation of the Putative Class Representative's decedent was performed and carried out by Bayview at its crematory in Seabrook, New

Hampshire, for compensation, at the request and direction of the respective Defendant identified above.

120.     Upon information and belief, Bayview was the exclusive crematory for all cremations performed as part of the funeral directing services provided by the Funeral Home Defendants and Funeral Director Defendants.

121.     Further, Derek A. Wallace, as a principal of Hart-Wallace, retained a beneficial ownership interest or equity in Bayview.

122.     Bayview was and is not a state authorized and approved crematory in the State of New Hampshire and had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America.

123.     Bayview's operation of its crematory was not only unauthorized and illegal, it was not in compliance with and did not observe the standards deemed ordinary and proper for the handling and cremation of decedents.  Particularly, Bayview performed multiple cremations simultaneously; failed to properly handle the bodies of decedents; and failed to prepare, keep and maintain accurate and proper records of its business.  This caused Bayview to return to the families of the named decedents, tainted and contaminated cremains, or cremains that were not consistent with the identity of the decedent.

## Class Action Allegations

## Numerosity

124.     The Class(es) sought to be certified are defined as:

### The "Spencer" Class

All Massachusetts residents who contracted with Spencer for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Farrah" Class

All Massachusetts residents who contracted with Farrah for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Hart-Wallace" Class

All Massachusetts residents who contracted with Hart-Wallace for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "American Cremation" Class

All Massachusetts residents who contracted with American Cremation for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Cremation Society" Class

All Massachusetts residents who contracted with Cremation Society for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Commonwealth Cremation" Class

All Massachusetts residents who contracted with Commonwealth Cremation for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Commonwealth Funeral" Class

All Massachusetts residents who contracted with Commonwealth Funeral for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Dracut" Class

All Massachusetts residents who contracted with Dracut for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Hamel Wickens" Class

All Massachusetts residents who contracted with Hamel Wickens for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Simplicity" Class

All Massachusetts residents who contracted with Simplicity for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

### The "Scatamacchia" Class

All Massachusetts residents who contracted with Scatamacchia for funeral directing services, involving cremation, whose decedent was cremated at Bayview Crematory, within the applicable limitations period.

(collectively, the "Classes").

125.    The members of each of the Classes are so numerous that separate joinder of each member is impracticable. Upon information and belief, and pending discovery, the Classes have

22

members in the hundreds, if not thousands, who had family members and other loved ones cremated by Bayview Crematory as part of funeral directing services provided by the Funeral Home and Funeral Director Defendants and other Massachusetts funeral homes.

126.     The Funeral Home and Funeral Director Defendants, as well as their officers, directors or any person or other entity related to, affiliated with, or employed by any of them are excluded from membership in any of the Classes.

### Commonality

127.     There are numerous questions of law and fact that are common to the claims of the Putative Class Representative and the class members.  Among these common questions of law and fact are the following:

        a.     Whether the Putative Class Representatives and members of the Classes suffered the death of a family member or other loved one;

        b.     Whether the Putative Class Representatives and members of the Classes hired or contracted with the Funeral Home Defendants for funeral directing services relating to their respective deceased family member or loved one, including cremation;

        c.     Whether the Funeral Director Defendants signed the decedents' respective death certificates as "funeral service licensee or other designee";

d.      Whether the respective decedents' remains were cremated at Bayview at the direction and/or instruction of the Funeral Home and Funeral Director Defendants;

e.      Whether the Funeral Home and Funeral Director Defendants regularly or exclusively used Bayview for cremating the remains of decedents as part of the funeral directing services provided to the Putative Class Representatives and the members of the Classes;

f.      Whether the Funeral Home and Funeral Director Defendants knew or should have known of Bayview's status as a crematory, and whether it was properly authorized and operating in the State of New Hampshire;

g.      Whether Stokes, in her capacity as trustee and by virtue of being the mother of Derek A. Wallace, knew of the unauthorized and unapproved use of the property to which she held title and its effect upon the Putative Class Representatives and the members of the Classes;

h.      Whether Bayview, in the course of performing services for the Funeral Home and Funeral Director Defendants in the cremation of the respective decedents of the Putative Class Representatives and the members of the Classes observed the regular and customary practices, procedures, and protocols in the industry;

24

i.    Whether Bayview, in the course of performing services for the Funeral Home and Funeral Director Defendants in the cremation of the respective decedents of the Putative Class Representatives and the members of the Classes was negligent in the handling and disposition of the bodies;

j.    Whether the Funeral Home Defendants and the Funeral Director Defendants were negligent in the handling and disposition of the bodies of the respective decedents of the Putative Class Representatives and the members of the Classes;

k.    Whether the Funeral Home Defendants and the Funeral Director Defendants actions, with regard to the handling and disposition of the bodies of the respective decedents of the Putative Class Representatives and the members of the Classes, were intentional;

l.    Whether the Putative Class Representatives and the members of the Classes suffered damage and severe emotional distress as a result of the acts of omission and commission by the Defendants;

m.    Whether the Putative Class Representatives and the members of the Classes suffered damage under Chapter 93A of The General Laws of Massachusetts ("Regulation of Business Practices For Consumers Protection")(hereinafter "RBPCP").

25

## Typicality

128.    The claims of The Putative Class Representatives are typical of the claims of the members of the Classes in that each class member has had funeral directing services, including cremation performed by Bayview Crematory, provided by one of the Funeral Home or Funeral Director Defendants.

129.    The unauthorized and illegal operation of the Bayview Crematory, as well as its improper, offensive, and mortifying method of operation, together with its deficient and/or non-existent record-keeping practices all resulted in damage to the Putative Class Representatives and the members of the Classes. These are the core issues in this case which present issues of fact and law that predominate over all other issues in this matter.

130.    The Putative Class Representatives. as well as the members of the Classes, have all had funeral directing services, including cremation performed by Bayview Crematory, provided by one of the Funeral Home or Funeral Director Defendants. Upon information and belief, there has never been a prior lawsuit certified for class treatment in Massachusetts on behalf of the Putative Class Representatives or members of the Classes.

## Adequacy of Representation

131.    The Putative Class Representatives are adequate representatives of the members of their respective Classes and will fairly and adequately protect the interests of their respective class members. They are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature to represent them. There is no hostility of interest between or among the Putative Class Representatives and the unnamed members of the Classes.

132.    The Putative Class Representatives anticipate no difficulty in the management of this litigation as a Class action.  To prosecute this case, The Putative Class Representatives have chosen Charlip Law Group, LC and Lisa Debrosse Johnson.  The Charlip Law Group has significant experience, not only in complex litigation and class action litigation, but also mass claims relating to issues and claims similar to those presented in this action.  These firms have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### Requirements of Rule 23(b)

133.    The family members and other loved ones of the Putative Class Representatives and the members of the Classes all contracted for funeral directing services, including cremation, with one of the Funeral Home and Funeral Director Defendants.

134.    The basic questions of law and fact common to the claims of the Putative Class Representatives and the members of the Classes predominate over any question of law and fact affecting any individual member of the Classes and class representation is superior to other available methods to the fair and efficient adjudication of the controversy.  There are no particular and overriding interests of any member of any of the Classes in individually controlling the prosecution of separate claims.  Upon information and belief, there is no pending litigation to which any member of any of the Classes is a party and in which any question of law or fact controverted in this action is or will be adjudicated.  Moreover, there are no difficulties likely to be encountered in the management of the claims on behalf of the members of the Classes.

135.    This action is properly maintained as a class action inasmuch as the basic core of operative fact, including but not limited to issues relating to liability, arise from a similar, if not identical underlying factual scenario.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy by avoiding a multiplicity of identical suits creating a drain of a time and judicial resources of the Clerk and the Courts.

136.    The defenses asserted by the Defendants will be very similar, if not identical, as to the Putative Class Representatives and the members of the Classes.  It would be impractical to assert and adjudicate these claims and defenses in separate litigation.

## Count I
## Negligence – Stokes

137.    The Putative Class Representatives adopt and reallege paragraphs 1 through 136 as though fully set forth herein.

138.    This is an action for damages arising from the negligence of Stokes.

139.    At all times material hereto, Derek A. Wallace was the individual in control of the day to day operations of the Bayview Crematory, acting by and through his mother, fiduciary and trustee, Stokes.

140.    At all times material hereto, Stokes not only knew of the existence of the Bayview Crematory on the real property she held title to as trustee for Derek A. Wallace, but also aided and assisted Derek A. Wallace in her capacity of titleholder to the subject property in the operation of the Bayview Crematory.  Stokes is the mother of Derek A. Wallace.

141.    At all times material hereto, Stokes was fully cognizant and aware of the fact that Bayview was not a state authorized and approved crematory in the State of New Hampshire and

had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America.

142.    Further, Stokes was fully cognizant and aware that Bayview Crematory had no authority or approval to conduct business in this commonwealth, but had and maintained business relations with the Funeral Home Defendants and the Funeral Director Defendants that were for the ostensible benefit of the Putative Class Representatives and the members of the Classes. Stokes permitted Bayview to operate its unauthorized and unapproved business with full knowledge of the effect on the Putative Class Representatives and the members of the Classes.

143.    Stokes had an affirmative duty as the owner of the subject real property to assure that the premises would not be used in an unauthorized and unapproved manner. As the owner of the real property. Stokes had an affirmative duty to conduct at least the most minimal investigation and determination into the nature of the business being conducted on the premises and to insure that such use did not create a condition or situation where injury or harm may befall others.

144.    Stokes knew or should have known that the use of the premises as a crematory was neither authorized nor approved by New Hampshire state agencies. Further, Stokes knew that the property was, in fact, being used as a crematory and that the bodies being cremated by the entities owned and/or controlled by her son, Derek A. Wallace, also the sole beneficiary of the Dekes Realty Trust, were the family members and loved ones of the Putative Class Representatives.

145.    Stokes did not and was not inclined to conduct any investigation into the authorization and approval for the use of the property she owned as a crematory. Stokes, by virtue of her fiduciary, personal and business associations with her son and sole beneficiary, Derek A. Wallace,

29

never instituted an inquiry, nor requested information from Derek A. Wallace regarding the use of the property as a crematory.

146.    Stokes' failure to determine the authorization and propriety of the use of the premises as a crematory was a breach of her duty to the Putative Class Representatives and the members of the Classes. But for Stokes' breach of her duty to the Putative Class Representatives and the members of the Classes, the property would not have been operated as an unauthorized and improper crematory. Accordingly, Stokes' acts of omission and commission were negligent.

147.    As a direct and proximate cause of Stokes' negligence, the Putative Class Representatives and the members of the classes have suffered significant damages that would not have occurred to them, but for the acts of omission and commission of Stokes.

WHEREFORE, by reason of the foregoing, the Putative Class Representatives and the members of each Class demand damages against Stokes, together with the costs of this action and such other relief as this Court may deem proper.

### Count II
### Negligent Infliction of Emotional Distress

148.    The Putative Class Representatives adopt and reallege paragraphs 1 through 136 as though fully set forth herein.

149.    This is an action for negligent infliction of emotional distress resulting from tortious interference with a dead body.

150.    Each of the Putative Class Representatives and members of the Classes is a family member, loved one, and/or person authorized by law to handle the disposition of their respective decedent's remains.

151.    The Funeral Home and Funeral Director Defendants, pursuant to their agreements with the Putative Class Representatives and the members of the Classes, hired, retained or otherwise contracted with Bayview for the cremation of the remains of each decedent of the Putative Class Representatives and the members of the Classes.

152.    At all times material to these claims, Bayview was an unauthorized crematory, illegally and improperly receiving, handling, maintaining and cremating dead bodies, including those decedents of the Putative Class Representatives and the members of the Classes. Bayview's handling of dead bodies, its business practices, procedures and protocols, were wantonly disrespectful and wholly disregarded of the feelings of the Putative Class Representatives and the members of the Classes by virtue of its horrendous cremation techniques, now leaving the Putative Class Representatives and the members of the Classes with the knowledge, suspicion or belief that the remains of a deceased loved one and/or family member have not been preserved as desired.

153.    Bayview's cremation techniques were so devoid of propriety, that the cremains of the deceased loved ones of the Putative Class Representatives and the members of the Classes, are tainted and contaminated.

154.    The Funeral Home and Funeral Director Defendants had an affirmative duty, as part of the funeral directing services they were providing to the respective Putative Class Representative or member of the respective Class, to ascertain, investigate and assure that the crematory being used was properly authorized, operated properly within the law and in accordance with acceptable practices, procedures and protocols in the industry. This duty was heightened by virtue of the nature of the service that was being rendered and the knowledge that their respective Putative Class Representative and members of their respective Class were relying upon them for the proper treatment and preservation of the remains of their deceased loved ones and/or family members.

31

155.    The Funeral Home and Funeral Director Defendants' failure to investigate and ascertain,

on even the most minimal level, the true nature of the Bayview Crematory was a seminal failure so

consequential to the emotional well-being of the Putative Class Representatives and the members of

the Classes, that the resulting horrendous acceptance, handling, treatment and disposition of the

loved one and/or family member of each Putative Class Representative and member of the Classes,

rose to the level of mutilation and desecration of the body, occasioning indescribable mental pain

and suffering to the Putative Class Representatives and the members of the Classes, also

manifesting itself through significant physical consequences.

156.    The various acts of omission and commission by the Funeral Home and Funeral

Director Defendants described above constitute at a minimum a reckless and negligent interference

with a body.

157.    As a direct and proximate result of the reckless and negligent conduct of the Funeral

Home and Funeral Director Defendants, the Putative Class Representatives have suffered extreme

emotional distress for which they all claim damages against the Funeral Home and Funeral Director

Defendants.

WHEREFORE, by reason of the foregoing, the Putative Class Representatives and the

members of each Class demand damages against Bayview and the Defendant named in their

respective class definition as set forth herein above, together with the costs of this action and such

other relief as this Court may deem proper.

## Count III
### Reckless and/or Intentional Infliction of Emotional Distress

158.    The Putative Class Representatives adopt and reallege paragraphs 1 through 136 as

though fully set forth herein.

159.    This is an action for reckless and/or intentional infliction of emotional distress resulting from tortious interference with a dead body.

160.    Each of the Putative Class Representatives and members of the Classes is a family member, loved one, and/or person authorized by law to handle the disposition of their respective decedent's remains.

161.    The Funeral Home and Funeral Director Defendants, pursuant to their agreements with the Putative Class Representatives and the members of the Classes, hired, retained or otherwise contracted with Bayview for the cremation of the remains of each decedent of the Putative Class Representatives and the members of the Classes.

162.    At all times material to these claims, Bayview was an unauthorized crematory, illegally and improperly receiving, handling, maintaining and cremating dead bodies, including those decedents of the Putative Class Representatives and the members of the Classes.  Bayview's handling of dead bodies, its business practices, procedures and protocols, were wantonly disrespectful and wholly disregarded the feelings of the Putative Class Representatives and the members of the Classes by virtue of its horrendous cremation techniques, now leaving the Putative Class Representatives and the members of the Classes with the knowledge that the remains of a deceased loved one and/or family member have not been preserved as desired.

163.    Bayview's cremation techniques were so devoid of propriety, that the cremains of the deceased loved ones of the Putative Class Representatives and the members of the Classes, are either tainted and/or contaminated or there is no way to have any reasonable certainty concerning the identity and/or integrity of the cremains.  Upon information and belief, the purported and represented cremains of certain decedents have been determined to include body parts, jewelry, and medical appliances having no association or relationship to the decedent.

164.     These cremations constitute reckless and intentional conduct, so outrageous and extreme as to go beyond all possible or permissible bounds of decency and are utterly intolerable in a civilized society.

165.     The Funeral Home and Funeral Director Defendants had an affirmative duty, as part of the funeral directing services they were providing to the respective Putative Class Representative or member of the respective Class, to ascertain, investigate and assure that the crematory being used was properly authorized and established, operated properly within the law and in accordance with acceptable practices, procedures and protocols in the industry. Further, the Funeral Home and Funeral Director Defendants had a duty to ensure that the bodies of the decedents being cremated for the Putative Class Representatives and the members of the Classes were handled and disposed of in a manner evidencing respect and reverence, consistent with the direction and expectations of the Putative Class Representatives and the members of the Classes. This duty was heightened by virtue of the nature of the service that was being rendered and the knowledge that their respective Putative Class Representative and members of their respective Class were relying upon them for the proper treatment and preservation of the remains of their deceased loved ones and/or family members.

166.     The Funeral Home and Funeral Director Defendants' failure to investigate and ascertain, on even the most minimal level, was a seminal failure so consequential to the well-being of the Putative Class Representatives and the members of the Classes, that the resulting horrendous acceptance, handling, treatment and disposition of the loved one and/or family member of each Putative Class Representative and member of the Classes, rose to the level of mutilation and desecration of the body, occasioning indescribable mental pain and suffering to the Putative Class Representatives and the members of the Classes, also manifesting itself in significant physical consequences.

167.    The intentional acts of omission and commission by the Funeral Home and Funeral Director Defendants described above are reckless and intentional conduct, so outrageous and extreme as to go beyond all possible or permissible bounds of decency and are utterly intolerable in a civilized society.

168.    As a direct and proximate result of the intentional conduct of the Funeral Home and Funeral Director Defendants, the Putative Class Representatives have suffered extreme emotional distress for which they all claim damages against the Funeral Home and Funeral Director Defendants.

WHEREFORE, by reason of the foregoing, the Putative Class Representatives and the members of each Class demand damages against Bayview and the Defendant named in their respective class definition as set forth herein above, together with the costs of this action and such other relief as this Court may deem proper.

### Count IV
### Class Relief Sought

WHEREFORE, the Putative Class Representatives and the members of the respective Classes request that, after completion of class discovery and hearing on a motion for class certification, this Court enter an order:

A.    Certifying this action as a class action under Rule 23, Massachusetts Rules of Civil Procedure;

B.    Designating the Class Representatives for each of the Classes;

C.    Appointing Charlip Law Group, LC as lead class counsel and Lisa DeBrosse Johnson as class co-counsel;

D.      An award of damages on each count of the Class Representation Complaint;

E.      An award to the Class members for their costs, interest and reasonable attorneys fees;

F.      An award of attorney's fees to class counsel and class co-counsel in accordance with prevailing factors and considerations for determination of class counsel fees in the Commonwealth of Massachusetts; and

G.      Any and all further relief this Court deems just and proper.


## Demand For Jury Trial

The Plaintiffs, Putative Class Representatives and the members of all certified Classes demand trial by jury on all issues so triable as a matter of right.

Dated this __ll__ day of May, 2005.

Respectfully Submitted,
Plaintiffs/Putative Class Representatives,
By their attorneys,

Lisa DeBrosse Johnson, BBO# 632428
The Pilot House
Lewis Wharf
Boston, MA 02110
(617) 854-3740

And

David H. Charlip
Florida Bar No.: 329932
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 Facsimile
Pending Admission, Pro Hac Vice