# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

_____
LORRAINE HUNT on behalf of herself
and others similarly situated,
      Plaintiff,

        *v.*                        Case Number: 05-11140 RCL

BAYVIEW CREAMATORY, LLC…..
FARRAH FUNERAL HOME et al.,
      Defendants
_____

## THE DEFENDANTS FARRAH FUNERAL HOME AND LOUIS J. FARRAH, II'S MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT

      Now come the Defendants, Farrah Funeral Home and Louis J. Farrah, II, and respectfully requests this Honorable Court to dismiss the within action for lack of jurisdiction, for pending of a state action arising out of the same issues and for failure to state a claim upon which relief can be granted and pursuant to Fed. R. Civ. P. 12(b).

      As grounds therefor, the Defendants, Farrah Funeral Home and Louis J. Farrah, II, (hereinafter "Farrah")  state that the Plaintiff has failed to meet the requirements for class certification pursuant to Fed. R. Civ. P. 23, that the Class Action Fairness Act of 2005 mandates the court decline jurisdiction, that the suit lacks complete diversity jurisdiction if a class is not certified, that a state matter is already pending arising out of the same circumstances that the Plaintiff can prove no set of facts upon which relief can be granted on any claim where the Plaintiff has alleged no relationship with Farrah.

      The Defendants, Farrah Funeral Home and Louis J. Farrah, II, rely upon the attached Memorandum of Law, in support of the within motion.

# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

---

LORRAINE HUNT on behalf of herself
and others similarly situated,
       Plaintiff,

        *v.*                Case Number: 05-11140 RCL

BAYVIEW CREAMATORY, LLC.....
FARRAH FUNERAL HOME et al.,
       Defendants

---

## THE DEFENDANTS, FARRAH FUNERAL HOME AND LOUIS J. FARRAH, II'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT

### I.  STATEMENT OF THE CASE

      Louis J. Farrah, II d/b/a Farrah Funeral Home ("Farrah") is named as one of several defendants in the above-captioned suit. The Plaintiff claims her decedent's remains were handled by the co-defendant Hamel, Wickens & Troupe Funeral Home. Neither the Plaintiff nor her decedent had any relationship whatsoever with Farrah and the Plaintiff does not allege any relationship with Farrah in her Complaint. Although the Plaintiffs Complaint references an alleged "class," the Plaintiff has failed to identify any individual within that "class" that had any relationship with Farrah. Indeed, the Plaintiff has failed to identify any other member of the alleged "class" in any way.

### II.   STATEMENT OF THE ISSUES

  A.  Should the Plaintiffs Complaint be dismissed where it fails to meet the requirements for a certification of a class pursuant to Fed. R. Civ.. P. 23 and where the Plaintiff has not alleged any relationship between her, her decedent or any identified individual and Farrah?

  B.  Should the Plaintiffs Complaint be dismissed where the court must decline jurisdiction pursuant to the Class Action Fairness Act of 2005 ?

  C.  Should the Plaintiffs Complaint be dismissed for lack of jurisdiction if the class is not certified where there is not complete diversity of citizenship between the Plaintiff and the Defendants where both the Plaintiff and Farrah are citizens of Massachusetts?

2

D.   Should the Plaintiffs Complaint be dismissed where a state action arising out of the same transaction and seeking class certification was pending prior to the filing of the instant suit?

E. Should the Plaintiffs Complaint be dismissed for failure to state a claim upon which relief can be granted with regard to all counts asserted against the Defendant Farrah where the Plaintiff has no relationship with Farrah and where the Plaintiff alleges no specific facts against Farrah to prove the essential elements of her claims?

## III.  ARGUMENT

### A.  MOTION TO DISMISS STANDARD

When considering a Motion to Dismiss, the court may take into account matters of public record, orders, items, appearing in the record of the case, and exhibits attached to the complaint, in addition to the allegations in the complaint. See Schaer v. Brandeis Univ.. 432 Mass. 474, 477 (2000) citing 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure  1357, at 299 (1990). It is appropriate ... to allow a motion to dismiss if the allegations of the complaint "clearly demonstrate that the plaintiff does not have a claim." Fabrizio v. City of Ouincy, 9 Mass. App. Ct. 733, 734 (1980) quoting Wright & Miller, Federal Practice and Procedure  1357 at 604 and cases cited inn. 84 (1969).

A defendant may move to dismiss an action against it based on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R.. Civ. P 12(b) (6). Although the Court must accept well-pleaded facts as true, it cannot "accept a complainant's unsupported conclusions or interpretations of law."  Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F. 2d 962, 971 (1st Cir). 1993 citing United States v AVX Corp., 962 F. 2d 108, 115 (1st cir, 1992). "It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that 'conclusions' become 'facts' for pleading purposes."  Dartmouth Review v. Dartmouth College, 889 F. 2d 13, 16 (1st Cir. 1989).

Further, the Court cannot credit the bald assertions or mere specious allegations made in the complaint. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Moreover, the rule does not entitle a plaintiff to rest on "subjective characterizations" or conclusory descriptions of "a general scenario which could be dominated by unpleaded facts." Dewev v. Univ. of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982). Rule 12 (b) (6) is not entirely a toothless tiger. Dartmouth, supra. Thus, plaintiffs are obliged to set forth in their complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Id. citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). In this vein, the Plaintiff herein clearly fails to satisfy the standard.

The Plaintiff critically fails to assert any factual allegations as pertaining to Farrah with regard to any material element of her claims. Indeed, other than naming Farrah as a defendant, the

3

Plaintiff has failed to allege any relationship between Farrah and herself or any identified class member and the Plaintiff has failed to allege a single fact (as opposed to a baseless allegation) pertaining specifically to Farrah. Dismissal of the entire Complaint against Farrah is appropriate and equitable pursuant to Fed. R. Civ. P. 12(b)(6).

**B.        THE COMPLAINT FAILS TO SATISFY THE REQUIREMENTS FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23 AND MUST THEREFORE BE DISMISSED AGAINST FARRAH WHERE THE PLAINTIFF ALLEGES NO RELATIONSHIP WITH FARRAH.**

Fed. R. Civ. P. 23 (a) allows for members of a class to sue on behalf of all other members only if:

(1) the class is so numerous that joinder of all members is impracticable,
(2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4) the representative parties will fairly and adequately protect the interests of the class.

The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commence by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Here, the Plaintiff cannot satisfy the requirements of Fed. R. Civ. P. 23. Notably, the Plaintiff has not identified a single other class member by name. The Plaintiff merely alleges that this suit involves "a class action of more than 100 potential class members." (emphasis added). However, the courts have clearly ruled that "(mere) speculation as to the number of members does not satisfy the Rule," Carr v. New York Stock Exchange, Inc., 414 F.Supp. 1292, 1304 (N.D.Cal. 1976).

Additionally, there are not common issues of law or fact where each of the alleged class members had different relationships with each of the defendants, where some alleged class members may have personally engaged in written contracts and where some may merely claim there was some sort of oral agreement between the defendants and the decedents. Damages will be unique to each alleged unidentified class member. Moreover, the claims and defenses of the representative class are not typical of those of the parties. The rights of the named Plaintiff are not similar to those of the unidentified class members whose unique relationships to the decedents and to the defendants has not been alleged. Indeed, while the Plaintiff alleges her decedent's remains were handled by Hamel, Wickens & Troupe Funeral Home, the Plaintiff fails to allege that a single identified "class member" had any relationship with Farrah.

Additionally, the representative parties will not fairly protect the interests of the class where the representative party herein cannot even identify any member of the class that had any relationship with Farrah and where she cannot even allege a single set of facts pertaining specifically to Farrah that would entitle anyone to a claim for relief. Moreover, in the unlikely event that class certification is deemed appropriate, any class action claims can already be addressed in the currently pending state action,that was commenced prior to this action.

The state matter (discussed below), Paul Anzalone, et al v. Bawiew Crematory. LLC. et al, C.A. No. 05-789C (Essex Superior Court) (attached hereto as Exhibit A), sought to certify a class of the identical members prior to the filing of the instant action. Each defendant named in the state matter has also been named in the instant suit and no defendant has sought removal of the state matter to federal court. The pendency of two class actions arising out of the same alleged transactions based on state law in both the federal and state courts is an obstacle to the equitable administration of justice. Clearly, the certification of a class in this matter is inappropriate and the claim against Farrah must be dismissed where the named Plaintiff has not alleged any relationship with Farrah.

### C.    THE COURT MUST DECLINE JURISDICTION OF THIS MATTER PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005.

In her complaint, the Plaintiff alleges jurisdiction based on diversity of citizenship, 28 U.S.C. 1332, apparently relying upon the recently enacted Class Action Fairness Act of 2005 ("CAFA"). CAFA expanded the subject matter jurisdiction of federal courts over class actions in which at least one plaintiff class member was diverse in citizenship from the defendant and where the amount in controversy exceeded $ 5 million. 28 U.S.C. 1332(d). However, pursuant to CAFA, this court must decline jurisdiction of the instant matter.

28 U.S.C. 1332(d)(4) provides:

A district court shall decline to exercise jurisdiction under paragraph (2)-
   (A)(i) over a class action in which-

      (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
      (II) at least 1 defendant is a defendant-
          (aa) from whom significant relief is sought by members of the plaintiff class;
          (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
          (cc) who is a citizen of the State in which the action was originally filed; and
      (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

Here, the Plaintiff has failed to identify the potential class members. To the extent the face of the pleadings name the Plaintiff, an admitted citizen of Massachusetts, as the sole identified class member and "others similarly situated," the court must accept the pleadings as identifying more than two-thirds of the class members as Massachusetts citizens. Additionally, the majority of defendants (more than two-thirds) are Massachusetts citizens. The Plaintiff is seeking significant relief from the Hamel, Wickens & Troupe Funeral Home, a Massachusetts corporation,whose alleged conduct is the basis for the Plaintiffs claim. Furthermore, the principal injuries allegedly committed by the Defendants were committed in Massachusetts. No other class action asserting the same or factual allegation has been filed in the District Court of Massachusetts in the past three years. The declination of jurisdiction, is therefore appropriate.

In the alternative, the court may decide to decline jurisdiction based on 28U.S.C. 1332(d)(3), which provides:

(3) A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which  the  action  was   originally  filed  based on  consideration  of-

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the. alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

The legislative history of CAFA clearly reveals Congress' desire to limit a plaintiff's forum shopping in a class action matter. In consideration of the interest of justice, the totality of the circumstances and the factors enumerated in CAFA, the court may appropriately dismiss the Plaintiffs Complaint here for lack of jurisdiction where the claims involve matter of Massachusetts

interest, where the claims will be governed by the laws of Massachusetts, where the class action was pleaded in a manner to avoid another forum where an identical class action was already pending, where Massachusetts has a distinct nexus to the class members, the harm and the defendants, where the substantial number of all parties are citizens of Massachusetts and where a similar class action was already filed in Massachusetts Superior Court. Dismissal of the instant case is fair and appropriate in this matter.

### D.    IF THE CLASS IS NOT CERTIFIED THEN THE PLAINTIFF'S CLAIM MUST BE DISMISSED FOR LACK OF JURISDICTION WHERE THERE IS NOT COMPLETE DIVERSITY OF CITIZENSHIP.

In the event the class is not certified and the action is not entitled to the benefit of CAFA, then the instant matter must be dismissed for lack of complete diversity jurisdiction. The Plaintiff erroneously alleges that her suit is entitled to jurisdiction because there is complete diversity of citizenship, however, her own pleadings indicate such statement is incorrect. The Plaintiffs claim of diversity fails as a matter of law where she alleges both Plaintiff and Farrah are citizens of Massachusetts. Where there is no class action, the federal rules require complete diversity to exercise such jurisdiction. See Lundquist v. Precision Valley Aviation. Inc., 946 F.2d 810 (1st Cir. 1991) ("Under 28 U.S.C.  1332 (a)(l), there is diversity of citizenship if the plaintiff is a 'citizen' of a different state than all of the defendants.") ; see also Borrows v. Robson, 993 F. Supp..l7, 18 (D. Mass. 1997).

The Court has consistently interpreted § 1332 as requiring complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 375 (1978). Clearly, the action must be dismissed against Farrah in the event the Court agrees that the class should not be certified.

### E.    THE PLAINTIFF'S CLAIM SHOULD BE DISMISSED BASED ON THE PENDENCY OF A STATE ACTION ARISING OUT OF THE SAME TRANSACTION.

The Plaintiffs claims should be dismissed in this matter because another case already pending in state court arises out of the same issues contained herein. In Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), the Supreme Court listed various circumstances under which a federal district court might decline to exercise jurisdiction based on the pendency of a state action arising out of the same transaction. The Court set forth four factors: 1. whether property is involved in the litigation; 2. the inconvenience of the federal forum; 3. the desirability of stopping piecemeal litigation; and 4. the order in which jurisdiction was obtained by the courts. Id. at 813. In Moses H. Cone v. Mercury Construction Corp., 460 U.S. 1  (1982), the Court added two more elements: 5. whether federal law or state law controls and 6. whether the state forum will adequately protect the interests of the parties.

Here, the matter of Paul Anzalone. et al v. Bayview Crematory, LLC. et al, C.A. No. 05-789C was filed in Essex Superior Court several weeks prior to the filing of the instant Federal Complaint. All of the defendants named in the Anzalone suit were also named in the instant Federal action. Additionally, the Anzalone suit seeks to certify a class of which the Plaintiff in the instant suit could be a member and the Anzalone suit seeks redress for the same issues claimed in the instant suit. No defendant has sought relief from the Class Action Fairness Act in the form of removal to federal court. As such, the instant matter should be dismissed under the Colorado River, supra, and Cone, supra, standards. The Federal forum is inconvenient and inappropriate for the Defendant Farrah where both Farrah and the Plaintiff and Massachusetts residents and where Farrah has already been named in a nearly identical suit in state court. Additionally, the Court has a strong desire to avoid piecemeal litigation and the dismissal of the Federal Complaint would clearly accomplish such a goal. The state court jurisdiction is also more appropriate in this matter where the state court had original jurisdiction over this matter weeks prior to the filing of the instant suit and where all the claims contained herein can be adjudicated under state law.

Finally, the state court forum win clearly protect the interests of all the parties where both the Plaintiff and Farrah are Massachusetts residents. In applying the Colorado River, supra doctrine, courts have found it significant in dismissing cases that "the ordinary justification for having jurisdiction over diverse citizens is not present. . . ." Microsoftware Computer Systems v. Ontel Corp., 686 F.2d 531 (7th Cir. 1982). Here, there simply is no need to protect any out-of-state party, there is not complete diversity and the Federal court should decline to exercise.jurisdiction over this matter and dismiss the Plaintiffs Complaint.

## F. THE PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

"A [m]otion to dismiss [the] complaint on grounds it fails to state a claim upon which relief can be granted should ... be granted [where] it appears certain that the complaining party is not entitled to relief under any set of facts which could be proved in support of his claim." Spinner v. Nutt, 417 Mass. 549 (1994). Here, it is evident beyond doubt that the Plaintiff can prove no set of facts in support of her claims and that the Plaintiff is not entitled to relief under any theory of law. The Plaintiff admits in her Complaint that neither she nor her decedent had any relationship whatsoever with Farrah. Furthermore, the Plaintiff fails to identify any individual in the purported class that had any relationship with Farrah. The Plaintiffs entire Complaint against Farrah is based on bald and baseless assertions made generally against all the funeral home/director defendants with no specific facts alleged as to Farrah's alleged wrongdoing. Moreover, the Plaintiffs conclusory yet unsupported allegations against Farrah are pure arbitrary puffery and as such, the Plaintiff has absolutely no expectation of proving the essential elements of her claim. Dismissal is therefore appropriate in this matter pursuant to Fed. R. Civ. P. 12(b).

1. THE PLAINTIFF FAILS TO STATE A CLAIM FOR EQUITABLE RELIEF AGAINST FARRAH.

In her complaint, the Plaintiff has failed to allege sufficient facts against Farrah that, if accepted as true, state a claim for which any equitable (injunctive and/or declaratory) relief may be granted. The Plaintiff failsto assert any specific facts regarding any alleged contract or interaction between herself or anyone other identified individual and Farrah. The Plaintiff also fails to specifically allege any wrongdoing by Farrah. The Plaintiff further fails to identify any specific decedent allegedly entrusted into Farrah's care. As such, the relief requested by the Plaintiff is impossible with regard to Farrah. Dismissal of the Plaintiffs baseless Complaint against Farrah is indeed the only equitable relief that should be granted in this matter.

2.   THE PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST FARRAH.

In her complaint, the Plaintiff has failed to allege sufficient facts against Farrah that, if accepted. as true, state a claim for which relief may be granted for breach of contract. The facts recited by the Plaintiff demonstrate that she and Farrah have no contractual relationship. The Plaintiff alleges that her decedent's remains were entrusted to the Hamel, Wickens & Troupe Funeral Home. The Plaintiff never alleges that she or her decedent had any relationship whatsoever with Farrah. The Plaintiff has failed to identify a single person of the alleged class that had any contractual relationship with Farrah. The Plaintiff fails to identify or attach as an exhibit any alleged contract executed by Farrah. Where there was no relationship between the Plaintiff and Farrah, the Plaintiff has no expectation of proving the essential elements of a breach of contract claim and the Plaintiffs claim must be dismissed.

3.   THE PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY/SPECIAL DUTY AGAINST FARRAH.

In her complaint, the Plaintiff has failed to allege sufficient facts against Farrah that, if accepted as true, state a claim for which relief may be granted for breach of fiduciary/special duty. The Defendant Farrah has found no caselaw in this circuit that identifies any special or fiduciary duty owed to a customer by a funeral home or its director. The complaint contains no facts, as opposed to baseless allegations, no matter how favorably construed in favor of the Plaintiff, from which the Court could even infer that Farrah entered into any agreement with the Plaintiff or any other identified decedent, that Farrah owed any special or fiduciary duty to any identified Plaintiff, that Farrah "mishandled", "abused" or "desecrated" any identified remains, or that Farrah was "complicit in ...fraudulent concealment by the Bayview Crematory Defendants." As such, dismissal of the Plaintiffs Complaint is appropriate.

4.   THE PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE AGAINST FARRAH.

In her complaint, the Plaintiff has failed to allege sufficient fact against Farrah that, if accepted as true, state a claim for which relief may be granted on her allegations of negligence. Again, the Plaintiff fails to assert any facts identifying any relationship between her, her decedent or any identified alleged class member and Farrah. Therefore, the Plaintiff has no expectation of proving any set of facts that Farrah owed or breached any duty to the Plaintiff. Furthermore, the Plaintiff cannot prove that any alleged conduct by Farrah caused her any harm where she had no relationship whatsoever with Farrah. The Plaintiffs claim for negligence must thus be dismissed.

5. THE PLAINTIFF FAILS TO STATE A CLAIM FOR WILLFUL INTERFERENCE WITH REMAINS AND INTENTIONAL MISHANDLING OF A CORPSE AGAINST FARRAH.

In her complaint, the Plaintiff has failed to allege sufficient facts against Farrah that, if accepted as true, state a claim for which relief may be granted for negligent interference with remains and mishandling of a corpse. Farrah has been unable to find any caselaw in this Circuit that has recognized a claim for the intentional mishandling of a corpse or for willful interference with remains. Nonetheless, the Plaintiff has not alleged any relationship between her or any identified decedent and Farrah. As such, the Plaintiff cannot prove any set of facts that establish that anyone expressed their wishes to Farrah regarding any alleged remains entrusted to Farrah's care. The Plaintiffs bald assertions that Farrah "willfully and deliberately" mishandled the decedents' remains are baseless where the Plaintiff cannot even identify a single decedent for which Farrah provided funeral services. The Court simply cannot give credence to the Plaintiffs conclusory yet unfounded allegations and the Complaint must be dismissed.

6. THE PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INTERFERENCE WITH REMAINS AND MISHANDLING OF A CORPSE AGAINST FARRAH.

In her complaint, the Plaintiff has failed to allege sufficient facts against Farrah that, if accepted as true, state a claim for which relief may be granted for negligent interference Vvith remains and mishandling of a corpse. Again, the Plaintiff has not alleged any relationship between her or any identified decedent and Farrah. The Plaintiff has not established that any identified relative of any decedent had any communications with Farrah. Where the identity of the remains in issue has not even be revealed by the Plaintiff in the Complaint, the claim must fail as a matter of law and the count must be dismissed against Farrah.

7. THE PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST FARRAH.

In her complaint, the Plaintiff has failed to allege sufficient facts against Farrah that, if accepted as true, state a claim for which relief may be granted on her allegations of intentional infliction of emotional distress. The Plaintiff has not alleged that she had any interaction whatsoever with Farrah. The Plaintiff has not identified a single alleged class member that had any interaction whatsoever with Farrah. The Plaintiff cannot prove any set of facts that establish that Farrah intentionally partook in any outrageous conduct or that any individual was harmed by Farrah. As such, Farrah cannot possibly be found to have intentionally inflicted emotional distress upon an unidentified person and the claim must be dismissed.

8. THE PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST FARRAH.

In her complaint, the Plaintiff has failed to allege sufficient facts against Farrah that, if accepted as true, state a claim for which relief may be granted on her allegations of intentional infliction of emotional distress. The Plaintiff has not alleged that she had any interaction whatsoever with Farrah. The Plaintiff has not identified a single alleged class member that had any

interaction whatsoever with Farrah. Where Farrah owed no duty to the Plaintiff or any other unidentified individual allegedly in the class. Farrah cannot be found to have negligently breached that duty or inflicted harm. Moreover, where neither the Plaintiff nor any other alleged class member had any relationship with Farrah, Farrah could not have caused them harm and the claim must be dismissed.

9.  THE PLAINTIFF FAILS TO STATE A CLAIM FORCIVIL CONSPIRACY AGAINST FARRAH.

In her complaint, the Plaintiff has failed to allege sufficient facts against Farrah that, if accepted as true, state a claim for which relief may be granted on her allegations of civil conspiracy. In addition to the baseless claims discussed above, the Plaintiff seeks to hold Farrah liable as part of an industry-wide conspiracy to accomplish some unidentified "unlawful purpose" and "tortuous plan." The Plaintiff fails to allege even a scintilla of evidence that Farrah was a party to any conspiracy and the Plaintiff has failed to allege any acts by Farrah in connection with such a conspiracy. The Plaintiff fails to assert how Farrah participated in any alleged scheme with the other defendants. Without any supportable assertions regarding Farrah's role, the Plaintiffs baseless allegations that Farrah co-conspired with the other defendants amounts to nothing more than "bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like" that this Court cannot credit. Aulson v. Blanchard, 83 F.2d 1, 3 (1st Cir. 1996); see also United States v. AVX Corp., 962 F. 2d 108, 115 (1st Cir. 1989) ("[E]mpirically unverifiable conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference."), quoting Dartmouth Review, supra. Accordingly, all claims against Farrah must be dismissed.

IV.  CONCLUSION

For the reasons set forth above, the Defendant respectfully requests that its Motion to Dismiss be granted in full or in part.

DEFENDANTS
Farrah Funeral Home and
Louis J. Farrah, II
By their attorney,

 /s/    Bradley A. MacDonald_____
Bradley A. Mac Donald, Esq.
B.B.O. No. 310380
CUMMINGS, KING, & MACDONALD
1 Gateway Center, Ste. 351
Newton, MA 02458
(617) 630-5100

11

CERTIFICATE OF SERVICE:  I hereby certify that on January 31, 2006, I served the foregoing upon all counsel of record either via electronic notice or via U.S. Mail, postage paid, if electronic notification was unavailable.


  /s/ Bradley A. MacDonald_____
Bradley A. MacDonald, Esq.

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.

TRIAL COURT
SUPERIOR COURT DEPT.
CIVIL NO.

050709

PAUL ANZALONE; JANET M. FONTAINE;
FLORENCE H. HOULE; BRENDA HERDEGEN;
SHAUN HERDEGEN; PATRICIA SULLIVAN;
MARIA PEREZ; BAMBI WHITE; DEBORA FOX;
BRENDA RUSSO; SUZANNE M. CONNOLLY;
MAIDA ANN INVERNIZZI; SHAWN PATRICK
INVERNIZZI; STEVE F. SIMONSON; ARTHUR
LAKE; CONSTANCE RAITT; BARBARA J.
HAMEL; DOREEN WILSON; PAULINE JUDD;
EDWARD P. ANDERSON; DEBORAH SPINNEY;
CLIFTON SPINNEY; KENNETH SPINNEY;
RAYMOND H. MONAHAN; PATRICIA M. SCOTT;
DORIS R. CLARK; RUTH DERGARDBEDIAN;
RITA M. MUIR; RITA KENT; JANICE MERRILL;
KATHLEEN BOUDREAU; ANDREW MCWAIN, III;
DEBORAH ELLSEY; IRENE ROBERTSON; and
BERTON NELSON,

Plaintiffs,

vs.

BAYVIEW CREMATORY, LLC, A New
Hampshire Limited Liability Company; LINDA
STOKES, TRUSTEE OF THE DEKES REALTY
TRUST OF 107 SOUTH BROADWAY,
LAWRENCE MASSACHUSETTS; WILLIAM
F. SPENCER FUNERAL SERVICES;
FARRAH FUNERAL HOME; HART-
WALLACE FUNERAL HOME; AMERICAN
CREMATION SOCIETY, INC., a Massachusetts
Corporation; CREMATION SOCIETY, INC., a
Massachusetts Corporation; COMMONWEALTH

1

CREMATION & SHIPPING SERVICE, INC., a
Massachusetts Corporation; COMMONWEALTH
FUNERAL SERVICE, INC., a Massachusetts
Corporation; DRACUT FUNERAL HOME
INCORPORATED, a Massachusetts Corporation;
HAMEL, WICKENS & TROUPE FUNERAL HOME,
INC., a Massachusetts Corporation; SIMPLICITY
BURIAL & CREMATION, INC., a Massachusetts
Corporation f/k/a OCEANSIDE FAMILY FUNERAL
HOME; and SCATAMACCHIA FUNERAL HOME,

       Defendants.

## CLASS REPRESENTATION COMPLAINT

Plaintiffs, Paul Anzalone ("Anzalone"), Janet M. Fontaine ("Fontaine"), Florence H.

Houle ("Houle"), Brenda Herdegen ("B. Herdegen"), Shaun Herdegen ("S. Herdegen"), Patricia

Sullivan ("Sullivan"), Maria Perez ("Perez"), Bambi White ("White"), Debora Fox ("Fox"),

Brenda Russo ("Russo"), Suzanne M. Connolly ("Connolly"), Maida Ann Invernizzi ("M.

Invernizzi"), Shawn Patrick Invernizzi ("S. Invernizzi"), Steve F. Simonson ("Simonson"),

Arthur Lake ("Lake"), Constance Raitt ("Raitt"), Barbara J. Hamel ("Hamel"), Doreen Wilson

("Wilson"), Pauline Judd ("Judd"), Edward P. Anderson ("Anderson"), Deborah Spinney ("D.

Spinney"), Clifton Spinney ("C. Spinney"), Kenneth Spinney ("K. Spinney"), Raymond H.

Monahan ("Monahan"), Patricia M. Scott ("Scott"), Doris R. Clark ("Clark"), Ruth

DerGardbedian ("DerGardbedian"), Rita M. Muir ("Muir"), Janice Merrill ("Merrill"), Kathleen

Boudreau ("Boudreau"), Andrew McWain, III ("McWain"), Deborah Ellsey ("Ellsey"), Irene

Robertson ("Robertson"), and Berton Nelson ("Nelson"), **(sometimes collectively the**

**"Plaintiffs" or "Putative Class Representatives")**, sue Bayview Crematory, LLC, a New

Hampshire Limited Liability Company **("Bayview")**, Linda Stokes, Trustee of the Dekes Realty

2

Trust of 107 South Broadway, Lawrence, Massachusetts (**"Stokes"**); William F. Spencer Funeral Services ("Spencer"), Farrah Funeral Home ("Farrah"), Hart-Wallace Funeral Home ("Hart-Wallace"), American Cremation Society, Inc., a Massachusetts Corporation ("American Cremation"), Cremation Society, Inc., a Massachusetts Corporation ("Cremation Society"), Commonwealth Cremation & Shipping Service, Inc., a Massachusetts Corporation ("Commonwealth Cremation"), Commonwealth Funeral Service, Inc., a Massachusetts Corporation ("Commonwealth Funeral"), Dracut Funeral Home, Incorporated, a Massachusetts Corporation ("Dracut"), Hamel, Wickens & Troupe Funeral Home, Inc., a Massachusetts Corporation ("Hamel Wickens"), Simplicity Burial & Cremation, Inc., a Massachusetts Corporation f/k/a Oceanside Family Funeral Home ("Simplicity"), and Scatamacchia Funeral Home ("Scatamacchia") **(sometimes collectively referred to as the "Funeral Home Defendants")** William F. Spencer, Louis J. Farrah, II, Derek A. Wallace, Stephen Scatamacchia, Scott R. Hamel, Roger G. Hamel, Paul Caillouette, Stephanie D. LaPusata, Arthur C. Hasiotis, Mark P. Gacek, Robert Scatamacchia, **(sometimes collectively referred to as the "Funeral Director Defendants")** (Bayview, Stokes, the Funeral Home Defendants and the Funeral Director Defendants are sometimes collectively referred to as the "Defendants")** and allege:

## The Parties

1.  Anzalone is *sui juris* and a resident of Mansfield, Massachusetts.

2.  Fontaine is *sui* juris and a resident of Lawrence, Massachusetts.

3.  Houle is *sui juris* and a resident of North Andover, Massachusetts.

4.  B. Herdegen is *sui juris* and a resident of Methuen, Massachusetts.

5.  S. Herdegen is *sui juris* and a resident of Methuen, Massachusetts.

JUN.10.2005  10:34AM   CLAIMS DEPT                                   NO.494   P.5/38

6.     Sullivan is *sui juris* and a resident of Winthrope, Massachusetts.

7.     Perez is *sui juris* and a resident of Brookline, Massachusetts.

8.     White is *sui juris* and a resident of South Yarmouth, Massachusetts.

9.     Fox is *sui juris* and a resident of Framingham, Massachusetts.

10.    Russo is *sui juris* and a resident of Framingham, Massachusetts.

11.    Connolly is *sui juris* and a resident of Dracut, Massachusetts.

12.    M. Invernizzi is *sui juris* and a resident of Milford, Massachusetts.

13.    S. Invernizzi is *sui juris* and a resident of Milford, Massachusetts.

14.    Simonson is *sui juris* and a resident of Dedham, Massachusetts.

15.    Lake is *sui juris* and a resident of Framingham, Massachusetts.

16.    Raitt is *sui juris* and a resident of Lawrence, Massachusetts.

17.    Hamel is *sui juris* and a resident of Lawrence, Massachusetts.

18.    Wilson is *sui juris* and a resident of Dracut, Massachusetts.

19.    Judd is *sui juris* and a resident of East Derry, New Hampshire.

20.    Anderson is *sui juris* and a resident of Peabody, Massachusetts.

21.    D. Spinney is *sui juris* and a resident of Lawrence, Massachusetts.

22.    C. Spinney is *sui juris* and a resident of Lawrence, Massachusetts.

23.    K. Spinney is *sui juris* and a resident of Lawrence, Massachusetts.

24.    Monahan is *sui juris* and a resident of Lawrence, Massachusetts.

25.    Scott is *sui juris* and a resident of Merrimac, Massachusetts.

26.    Clark is *sui juris* and a resident of Haverhill, Massachusetts.

27.    DerGardbedian is *sui juris* and a resident of Groveland, Massachusetts.

28.    Muir is *sui juris* and a resident of Haverhill, Massachusetts.

4

29.     Kent is *sui juris* and a resident of Saugus, Massachusetts.

30.     Merrill is *sui juris* and a resident of Newburyport, Massachusetts.

31.     Boudreau is *sui juris* and a resident of Needham, Massachusetts.

32.     McWain is *sui juris* and a resident of New Bedford, Massachusetts.

33.     Ellsey is *sui juris* and a resident of North Andover, Massachusetts.

34.     Robertson is *sui juris* and a resident of Somerville, Massachusetts.

35.     Nelson is *sui juris* and a resident of Marlborough, Massachusetts.

36.     Bayview is a duly organized and existing limited liability company in the State of
New Hampshire, maintaining its principal place of business in Seabrook, New Hampshire.

37.     Stokes is the Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence,
Massachusetts, the fee title holder to the real property and improvements constituting the
Bayview Crematory.

38.     Spencer is a business entity of undetermined nature conducted by William F. Spencer
in the Commonwealth of Massachusetts, maintaining its principal place of business in Boston,
Massachusetts.

39.     Farrah is a business entity of undetermined nature conducted by Louis J. Farrah, II in
the Commonwealth of Massachusetts, maintaining its principal place of business in Lawrence,
Massachusetts.

40.     Hart-Wallace is a business entity of undetermined nature conducted by Derek A.
Wallace in the Commonwealth of Massachusetts, maintaining its principal place of business in
Lawrence, Massachusetts.

41.     American Cremation is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Haverhill, Massachusetts.

42.     Cremation Society is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Quincy, Massachusetts.

43.     Commonwealth Cremation is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Boston, Massachusetts.

44.     Commonwealth Funeral is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Brighton, Massachusetts.

45,     Dracut is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Dracut, Massachusetts.

46.     Hamel Wickens is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Quincy, Massachusetts.

47.     Simplicity is a duly organized and existing corporation in the Commonwealth of Massachusetts maintaining its principal place of business in Newburyport, Massachusetts.

48.     Scatamacchia is a business entity of undetermined nature conducted by Robert Scatamacchia in the Commonwealth of Massachusetts, maintaining its principal place of business in Haverhill, Massachusetts.

49.     At all times material hereto, William F. Spencer was an agent, servant, employee and the licensed and designated funeral director of Spencer.

6

50. At all times material hereto, Louis J. Farrah, II was an agent, servant, employee and the authorized and designated funeral director of Farrah.

51. At all times material hereto, Derek Wallace was an agent, servant, employee of Bayview and the licensed and designated funeral director of Hart-Wallace.

52. At all times material hereto, Stephen Scatamacchia was an agent, servant, employee and the licensed and designated funeral director of American Cremation.

53. At all times material hereto, Scott R. Hamel, Paul Caillouette, and Stephanie D. LaPusata were agents, servants, employees and licensed and designated funeral directors of Hamel Wickens.

54. At all times material hereto, Roger G. Hamel was an agent, servant, employee and the licensed and designated funeral director of Cremation Society.

55. At all times material hereto, Arthur C. Hasiotis was an agent, servant, employee and the licensed and designated funeral director of Commonwealth Cremation.

56. At all times material hereto, Mark P. Gacek was an agent, servant, employee and the licensed and designated funeral director of Dracut,

57. At all times material hereto, Derek Wallace was an agent, servant, employee and the licensed and designated funeral director of Simplicity.

58. At all times material hereto, Robert Scatamacchia was an agent, servant, employee and the licensed and designated funeral director of Scatamacchia.

59. At all times material hereto, Arthur C. Hasiotis was an agent, servant, employee and the licensed and designated funeral director of Commonwealth Funeral.

7

### Jurisdiction and Venue

60.    Bayview is subject to the jurisdiction of this Court pursuant to Massachusetts General Laws, Chapter 223A, § 3 in that it transacts business in this commonwealth in its dealings with the Funeral Home Defendants, as well as other funeral homes; contracts to supply services in this commonwealth in the form of cremation of decedents and return of their cremains to funeral homes and individuals in this commonwealth; caused tortious injury to citizens of this commonwealth both in and outside of this commonwealth while engaging in regular business and engaging in a persistent course of conduct and deriving substantial revenue for services rendered.

61.    Stokes is subject to the jurisdiction of this Court pursuant to Massachusetts General Laws, Chapter 223A, § 3 by virtue of having caused tortious injury by an act or omission in this commonwealth and causing tortious injury in this commonwealth by an act or omission outside of this commonwealth by virtue of a persistent course of conduct.

62.    Spencer is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Boston, Massachusetts.

63.    Farrah is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Lawrence, Massachusetts.

64.    Hart-Wallace is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Lawrence, Massachusetts.

65.    American Cremation is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Haverhill, Massachusetts.

66.    Cremation Society is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Quincy, Massachusetts.

67.     Commonwealth Cremation is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Boston, Massachusetts.

68.     Commonwealth Funeral is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Brighton, Massachusetts.

69.     Dracut is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Dracut, Massachusetts.

70.     Hamel Wickens is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Quincy, Massachusetts.

71.     Simplicity is subject to the jurisdiction of this Court in that it is a domestic corporation maintaining its principal offices in Newburyport, Massachusetts.

72.     Scatamacchia is subject to the jurisdiction of this Court in that it is an ongoing business enterprise maintaining its principal offices in Haverhill, Massachusetts.

73.     The Funeral Director Defendants are all subject to the jurisdiction of this Court in that they are agents, servants, and employees of at least one of the Funeral Home Defendants. More particularly, each of the Funeral Director Defendants was the qualified or designated person who signed the death certificate of a family member and/or loved one of each Plaintiff in the course of providing funeral directing services, including cremation at Bayview Crematory.

74.     Pursuant to 28 U.S.C. § 1332 (d)(4)(A), more than two-thirds, if not all, of the members of all proposed Classes, as set forth herein below, are citizens of the Commonwealth of Massachusetts. The majority of the Defendants from whom significant relief is sought by the members of the Classes and whose conduct forms a significant basis for those claims are citizens of the Commonwealth of Massachusetts. Further, the principal injuries occurring to the Putative Class Representatives and the members of the Classes occurred in the Commonwealth of

9

Massachusetts. In the three (3) years preceding the filing of this action, no other class action has
been filed asserting the same or similar factual allegations against any of the Defendants on
behalf of the same persons.

75.    Additionally, pursuant to 28 U.S.C. § 1332 (d)(4)(B) two-thirds (2/3) or more of the
members of the proposed Classes in the aggregate, and the primary defendants, are citizens of
the Commonwealth of Massachusetts.

### Preliminary Allegations

76.    On or about October 08, 1999, Stokes became the owner, as trustee, of certain real
property and improvements located in Rockingham County, New Hampshire. The real property
and improvements are known as the Bayview Crematory.

77.    At all times material hereto, and particularly at the time of the acquisition of the real
property and improvements known as the Bayview Crematory, the Defendant, Derek A. Wallace
was the sole beneficiary of the "Dekes Realty Trust of 107 South Broadway, Lawrence,
Massachusetts".

78.    At all times material hereto, Derek A. Wallace was the individual in control of the
day to day operations of the Bayview Crematory acting by and through his trustee, Stokes.

79.    At all times material hereto, Stokes not only knew of the existence and operation of
the Bayview Crematory on the real property she held as trustee for Derek A. Wallace, but also
aided and assisted Derek A. Wallace in her capacity of titleholder to the subject property in the
operation of the Bayview Crematory. Stokes is the mother of Derek A. Wallace.

80.    At all times material hereto, Stokes was fully cognizant and aware of the fact that
Bayview was not a state authorized and approved crematory in the State of New Hampshire and

10

had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America. Further, Stokes was fully cognizant and aware that Bayview Crematory had no authority or approval to conduct business in this commonwealth, but had and maintained business relations with the Funeral Home Defendants and the Funeral Director Defendants that were for the ostensible benefit of the Putative Class Representatives. Stokes permitted Bayview to operate its unauthorized and unapproved business with full knowledge of the effect on the Putative Class Representatives.

81.     On December 27, 2003, Jane M. Kuzmich, the spouse of Paul Anzalone, died in Attleboro, Massachusetts. On or about December 27, 2003, Anzalone entered into a written agreement with Spencer for funeral directing services relating to his wife's death, including her cremation and the return of her cremains to Anzalone. A true and correct copy of the written agreement is attached hereto, marked Exhibit "A" and made a part hereof.

82.     On July 26, 2001, Gary Scionti, the son of Janet M. Fontaine, died in Lawrence, Massachusetts. Fontaine entered into a written agreement with Farrah for funeral directing services relating to her son's death, including his cremation and the return of his cremains to Fontaine. Fontaine is not in possession of a copy of the written agreement, however a copy is in the possession of Farrah.

83.     On April 19, 2000, Linda St. Louis, the daughter of Florence H. Houle, died in Lawrence, Massachusetts. On or about April 22, 2000, Houle's spouse, Richard J. Houle, entered into a written agreement with Hart-Wallace for funeral directing services relating to their daughter's death, including her cremation and the return of her cremains to Houle. A true and

11

correct copy of the written agreement is attached hereto, marked Exhibit "B" and made a part hereof.

84.      On December 26, 2000, Charles Edward Herdegen, the spouse of Brenda Herdegen, died in Methuen, Massachusetts. B. Herdegen entered into a written agreement with American Cremation for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to B. Herdegen. B. Herdegen is not in possession of a copy of the written agreement, however a copy is in the possession of American Cremation.

85.      On December 26, 2000, Charles Edward Herdegen, the father of Shaun Herdegen, died in Methuen, Massachusetts. B. Herdegen entered into a written agreement with American Cremation for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Herdegen. B. Herdegen is not in possession of a copy of the written agreement, however a copy is in the possession of American Cremation.

86.      On September 12, 2004, Francis X. Sullivan, the spouse of Patricia Sullivan, died in Winthrope, Massachusetts. On or about September 14, 2004, Sullivan entered into a written agreement with Cremation Society for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Sullivan. A true and correct copy of the written agreement is attached hereto, marked Exhibit "C" and made a part hereof.

87.      On October 6, 2004, Maria S. Ramon, the mother of Perez, died in Brookline, Massachusetts. On or about October 7, 2004, Perez entered into a written agreement with Commonwealth Funeral for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Perez. A true and correct copy of the written agreement is attached hereto, marked Exhibit "D" and made a part hereof.

88.      On September 2, 2001, Robley Fulcher, Jr., the father of Bambi White, died in Brewster, Massachusetts. On or about August 21, 2001, White entered into a written agreement with Hamel Wickens for funeral directing services relating to her father's death, including his cremation and the return of his cremains to White A true and correct copy of the written agreement is attached hereto, marked Exhibit "E" and made a part hereof.

89.      On January 1, 2004, Carmel Fulcher, the grandmother of Bambi White, died in Brewster, Massachusetts. On or about January 7, 2004, White entered into a written agreement with Hamel Wickens for funeral directing services relating to her grandmother's death, including her cremation and the return of her cremains to White. A true and correct copy of the written agreement is attached hereto, marked Exhibit "F" and made a part hereof.

90.      On November 19, 2004, Janet Russo, the sister of Debora Fox, died in Boston, Massachusetts. On or about November 19, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her sister's death, including her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "G" and made a part hereof.

91.      On December 27, 2004, Edith Russo, the mother of Debora Fox, died in Medford, Massachusetts. On or about December 27, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "H" and made a part hereof.

92.      On November 19, 2004, Janet Russo, the sister of Brenda Russo, died in Boston, Massachusetts. On or about November 19, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her sister's death, including

13

her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "G" and made a part hereof.

93.     On December 27, 2004, Edith Russo, the mother of Brenda Russo, died in Medford, Massachusetts. On or about December 27, 2004, Fox entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Fox. A true and correct copy of the written agreement is attached hereto, marked Exhibit "H" and made a part hereof.

94.     May 4, 2001, James D. Connolly, the spouse of Suzanne Connolly, died in Boston, Massachusetts. On or about May 31, 2001, Connolly entered into a written agreement with Dracut for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Connolly A true and correct copy of the written agreement is attached hereto, marked Exhibit "I" and made a part hereof.

95.     On June 14, 2003, Paul Walter Invernizzi, the father of M. Invernizzi, died in Milford, Massachusetts. On or about June 14, 2003, M. Invernizzi entered into a written agreement with Cremation Society for funeral directing services relating to her father's death, including his cremation and the return of his cremains to M. Invernizzi A true and correct copy of the written agreement is attached hereto, marked Exhibit "J" and made a part hereof.

96.     On June 14, 2003, Paul Walter Invernizzi, the father of S. Invernizzi, died in Milford, Massachusetts. On or about June 14, 2003, M. Invernizzi entered into a written agreement with Cremation Society for funeral directing services relating to her father's death, including his cremation and the return of his cremains to M. Invernizzi A true and correct copy of the written agreement is attached hereto, marked Exhibit "J" and made a part hereof.

97.    On April 10, 2003, Doris M. Nichols, the mother of Stephen Simonson, died in Medford, Massachusetts. On or about April 9, 2003, Simonson entered into a written agreement with Hamel Wickens for funeral directing services relating to his mother's death, including her cremation and the return of her cremains to Simonson  A true and correct copy of the written agreement is attached hereto, marked Exhibit "K" and made a part hereof.

98.    On September 16, 2003, Suzanne Lake, the mother of Arthur Lake, died in North Andover, Massachusetts. On or about March 11, 2002, Suzanne Lake entered into a written agreement with Hart-Wallace for funeral directing services relating to her death, including her cremation and the return of her cremains to Lake.  A true and correct copy of the written agreement is attached hereto, marked Exhibit "L" and made a part hereof.

99.    On October 3, 2004, John Raitt, Sr., the spouse of Constance Raitt, died in Methuen, Massachusetts. On or about May 27, 2003, Raitt entered into a written agreement with Hart-Wallace for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Raitt.  A true and correct copy of the written agreement is attached hereto, marked Exhibit "M" and made a part hereof.

100.    On August 3, 2003, Carol Ann Ashford, mother of Barbara Hamel, died in Lawrence, Massachusetts. Hamel entered into a written agreement with Hart-Wallace for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Hamel. Hamel is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

101.    On May 10, 2004, David Alden Judd, father of Doreen Wilson, died in Brentwood, New Hampshire. Wilson entered into a written agreement with Hart-Wallace for funeral directing services relating to her father's death, including his cremation and the return of his

cremains to Wilson. Wilson is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

102.      On May 10, 2004, David Alden Judd, spouse of Pauline Judd, died in Brentwood, New Hampshire. Wilson entered into a written agreement with Hart-Wallace for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Wilson. Wilson is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

103.      On May 5, 2001, Edward P. Anderson, Sr., father of Edward P. Anderson, died in Lawrence, Massachusetts. Anderson entered into a written agreement with Hart-Wallace for funeral directing services relating to his father's death, including his cremation and the return of his cremains to Anderson. Anderson is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

104.      On August 28, 2002, Joseph Spinney, the son of Deborah Spinney, died in St. Petersburg, Florida. D. Spinney entered into a written agreement with Hart-Wallace for funeral directing services relating to her son's death, including his cremation and the return of his cremains to D. Spinney. D. Spinney is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

105.      On August 28, 2002, Joseph Spinney, the brother of Clifton Spinney, died in St. Petersburg, Florida. D. Spinney entered into a written agreement with Hart-Wallace for funeral directing services relating to her son's death, including his cremation and the return of his cremains to D. Spinney. D. Spinney is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

106.     On August 28, 2002, Joseph Spinney, the brother of Kenneth Spinney, died in St. Petersburg, Florida. D. Spinney entered into a written agreement with Hart-Wallace for funeral directing services relating to her son's death, including his cremation and the return of his cremains to D. Spinney. D. Spinney is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

107.     On January 19, 2000, Thomas J. Monahan, the brother of Raymond H. Monahan, died in Lawrence, Massachusetts. Monahan entered into a written agreement with Hart-Wallace for funeral directing services relating to his brother's death, including his cremation and the return of his cremains to Monahan. Monahan is not in possession of a copy of the written agreement, however a copy is in the possession of Hart-Wallace.

108.     On February 4, 2004, Harriet Louise Donovan, mother of Patricia Scott, died in Haverhill, Massachusetts. On or about March 31, 2004, Scott entered into a written agreement with Scatamacchia for funeral directing services relating to her death, including her cremation and the return of her cremains to Scott. A true and correct copy of the written agreement is attached hereto, marked Exhibit "N" and made a part hereof.

109.     On September 18, 2004, Josephine A. Bodwell, the mother of Doris R. Clark, died in Haverhill, Massachusetts. On or about September 3, 2004, Clark entered into a written agreement with Scatamacchia for funeral directing services relating to her death, including her cremation and the return of her cremains to Clark. A true and correct copy of the written agreement is attached hereto, marked Exhibit "O" and made a part hereof.

110.     On March 16, 2000, Howard L. Jerome, father of Ruth DerGardbedian, died in Haverhill, Massachusetts. DerGarbedian entered into a written agreement with Scatamacchia for funeral directing services relating to her father's death, including his cremation and the return of

17

his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

111. On March 16, 2000, Howard L. Jerome, father of Rita M. Muir, died in Haverhill, Massachusetts. DerGarbedian entered into a written agreement with Scatamacchia for funeral directing services relating to her father's death, including his cremation and the return of his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

112. On April 27, 2004, Rita Barber, mother of Rita Kent, died in Haverhill, Massachusetts. On or about April 27, 2004, Kent entered into a written agreement with Simplicity for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "P" and made a part hereof.

113. On July 31, 2004, Ralph Merrill, spouse of Janice M. Merrill, died in Newburyport, Massachusetts. On or about July 31, 2004, Merrill entered into a written agreement with Simplicity for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Merrill. A true and correct copy of the written agreement is attached hereto, marked Exhibit "Q" and made a part hereof.

114. On December 15, 2004, William F. Boudreau, spouse of Kathleen Boudreau, died in Boston, Massachusetts. On or about December 16, 2004, Boudreau entered into a written agreement with Hamel Wickens for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "R" and made a part hereof.

his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

111.     On March 16, 2000, Howard L. Jerome, father of Rita M. Muir, died in Haverhill, Massachusetts. DerGarbedian entered into a written agreement with Scatamacchia for funeral directing services relating to her father's death, including his cremation and the return of his cremains to DerGardbedian. DerGardbedian is not in possession of a copy of the written agreement, however a copy is in the possession of Scatamacchia.

112.     On April 27, 2004, Rita Barber, mother of Rita Kent, died in Haverhill, Massachusetts. On or about April 27, 2004, Kent entered into a written agreement with Simplicity for funeral directing services relating to her mother's death, including her cremation and the return of her cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "P" and made a part hereof.

113.     On July 31, 2004, Ralph Merrill, spouse of Janice M. Merrill, died in Newburyport, Massachusetts. On or about July 31, 2004, Merrill entered into a written agreement with Simplicity for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Merrill. A true and correct copy of the written agreement is attached hereto, marked Exhibit "Q" and made a part hereof.

114.     On December 15, 2004, William F. Boudreau, spouse of Kathleen Boudreau, died in Boston, Massachusetts. On or about December 16, 2004, Boudreau entered into a written agreement with Hamel Wickens for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Kent. A true and correct copy of the written agreement is attached hereto, marked Exhibit "R" and made a part hereof.

18

115.    On February 3, 2005, Andrew Jackson McWain, Jr., the father of Andrew McWain, III, died in Brockton, Massachusetts. On or about February 7, 2005, McWain entered into a written agreement with Cremation Society for funeral directing services relating to his father's death, including his cremation and the return of his cremains to McWain. A true and correct copy of the written agreement is attached hereto, marked Exhibit "S" and made a part hereof.

116.    On May 23, 2003, John F. McIntyre, father of Deborah Ellsey, died in Methuen, Massachusetts. Ellsey entered into a written agreement with American Cremation for funeral directing services relating to her father's death, including his cremation and the return of his cremains to Ellsey. Ellsey is not in possession of a copy of the written agreement, however a copy is in the possession of American Cremation.

117.    On November 05, 2003, Arthur Thomas Robertson, spouse of Irene Robertson, died in Concord, Massachusetts. Robertson entered into a written agreement with Commonwealth Cremation for funeral directing services relating to her husband's death, including his cremation and the return of his cremains to Robertson. Robertson is not in possession of a copy of the written agreement, however a copy is in the possession of Commonwealth Cremation.

118.    On December 11, 2001, Vera Nelson, mother of Berton Nelson, died in Marlborough, Massachusetts. Nelson entered into a written agreement with Cremation Society for funeral directing services relating to his mother's death, including her cremation and the return of her cremains to Nelson. Nelson is not in possession of a copy of the written agreement, however a copy is in the possession of Cremation Society.

119.    In each and every instance, the cremation of the Putative Class Representative's decedent was performed and carried out by Bayview at its crematory in Seabrook, New

19