UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LORRAINE HUNT, On Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BAYVIEW CREMATORY, LLC., et al., <br><br> Defendants. | ) No. 05-11140-RCL <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

DECLARATION OF THEODORE M. HESS-MAHAN
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT FARRAH FUNERAL HOME'S MOTION TO DISMISS

I, Theodore M. Hess-Mahan, hereby declare:

1.      I am an attorney with the firm Shapiro Haber & Urmy LLP representing the plaintiff in this action.  I make this declaration in support of Plaintiff's Opposition to Defendant Farrah Funeral Home's Motion to Dismiss of my own personal knowledge.

2.      Attached hereto as Exhibit A is a true and correct copy of the Complaint filed in this Court in the action entitled *Favaloro v. President and Fellows of Harvard College, Bayview Crematory, LLC, et al.*, Civ. No. 05-11594 (RCL) (the "*Favaloro* Action").

I declare under penalty of perjury that the foregoing is true and correct.

- 1 -

Executed this 28th day of February 2006.

**/s/Theodore M. Hess-Mahan**
Theodore M. Hess-Mahan

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 28, 2006.

**/s/Theodore M. Hess-Mahan**
Theodore M. Hess-Mahan

COMMONWEALTH OF MASSACHUSETTS



ESSEX,    SS.

TRIAL COURT
SUPERIOR COURT DEPT.
CIVIL NO.



---

GERALDINE FAVALORO, for herself and on
behalf of all others similarly situated,

    Plaintiff,

vs.

PRESIDENT AND FELLOWS OF HARVARD
COLLEGE, BAYVIEW CREMATORY, LLC,
a New Hampshire Limited Liability Company,
LINDA STOKES, TRUSTEE OF THE DEKES
REALTY TRUST OF 107 SOUTH BROADWAY,
LAWRENCE, MASSACHUSETTS, and JOHN J.
GENTILE,

    Defendants.

---

## CLASS REPRESENTATION COMPLAINT

Plaintiff, Geraldine Favaloro (**"Ms. Favaloro"** or sometimes **"Putative Class Representative"**), sues the Defendants, President and Fellows of Harvard College (**"Harvard"**), Bayview Crematory, LLC, a New Hampshire Limited Liability Company (**"Bayview"**), Linda Stokes, Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts (**"Stokes, Trustee"**); and John J. Gentile (**"Gentile"**)(**Harvard, Bayview, Stokes, Trustee, and Gentile are sometimes referred to collectively as the "Defendants"**) and alleges:

1

### The Parties

1.    Ms. Favaloro is *sui* juris and a resident of Gloucester, Massachusetts.

2.    Harvard is an educational entity organized and existing under the laws of the Commonwealth of Massachusetts, maintaining its principal place of business in Cambridge, Massachusetts. Harvard has a Medical School that includes an Office of Anatomical Resources.

3.    Bayview is a duly organized and existing limited liability company in the State of New Hampshire, maintaining its principal place of business in Seabrook, New Hampshire.

4.    Stokes, Trustee is the Trustee of the Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts, the fee title holder to the real property and improvements constituting the Bayview Crematory.

5.    Gentile is a licensed funeral director in the Commonwealth of Massachusetts, maintaining his principal place of business in Maulden, Massachusetts.

### Jurisdiction and Venue

6.    Harvard is subject to the jurisdiction of this Court in that it is an entity maintaining its principal place of business in Cambridge, Massachusetts.

7.    Bayview is subject to the jurisdiction of this Court pursuant to Massachusetts General Laws, Chapter 223A, § 3 in that it transacts business in this Commonwealth in its dealings with Gentile; contracts to supply services in this Commonwealth in the form of removal of decedents to Bayview's crematory in New Hampshire and the ensuing return of their remains to Harvard and Gentile in this Commonwealth; caused tortious injury to citizens of this Commonwealth both

in and outside of this Commonwealth while engaging in regular business and engaging in a persistent course of conduct and deriving substantial revenue for services rendered.

8.     Stokes is subject to the jurisdiction of this Court pursuant to Massachusetts General Laws, Chapter 223A, § 3 by virtue of having caused tortious injury by an act or omission in this Commonwealth and causing tortious injury in this Commonwealth by an act or omission outside of this Commonwealth by virtue of a persistent course of conduct.

9.     Gentile is subject to the jurisdiction of this Court in that he is a citizen and resident of the Commonwealth of Massachusetts. As a licensed and designated funeral director in the Commonwealth of Massachusetts he arranges with Harvard for the transportation of decedents' anatomical remains from Harvard's Medical School to Bayview for cremation and the ensuing return of those purported anatomical remains to Harvard for further disposition in accordance with the directions given to Harvard.

10.     Pursuant to 28 U.S.C. § 1332 (d)(4)(A), greater than two-thirds, if not all, of the members of the proposed Class in the aggregate, as set forth herein below, are citizens of the Commonwealth of Massachusetts. The majority of the Defendants from whom significant relief is sought by the members of the Class and whose conduct forms a significant basis for those claims are citizens of the Commonwealth of Massachusetts. Further, the principal injuries occurring to Ms. Favaloro and the members of the Class occurred in the Commonwealth of Massachusetts. In the three (3) years preceding the filing of this action, no other class action has been filed asserting the same or similar factual allegations against any of the Defendants on behalf of the same persons.

3

11.     Additionally, and upon information and belief, pursuant to 28 U.S.C. § 1332 (d)(4)(B) two-thirds (2/3) or more of the members of the proposed Class in the aggregate, and the primary defendants, are citizens of the Commonwealth of Massachusetts.

## Preliminary Allegations

12.     On February 12, 2004, Betty L. Frontiero (**"Ms. Frontiero"**), a resident of Gloucester, Essex County, Massachusetts died in Gloucester, Massachusetts.

13.     Ms. Favaloro is the daughter of Ms. Frontiero.

14.     Prior to her death, Ms. Frontiero expressed an interest in participating in Harvard Medical School's Anatomical Gifts Program (the "Anatomical Gifts Program"). In response to Ms. Frontiero's inquiry for information relating to the Anatomical Gifts Program, Madelaine Claire Weiss, Associate Director of Harvard's Anatomical Gifts Program, wrote a letter to Ms. Fronitero dated February 3, 2004. A true and correct copy of the February 3, 2004 letter is attached hereto, marked Exhibit "A" and made a part hereof.

15.     Ms. Weiss' February 3, 2004 letter was accompanied by a brochure (**the "Brochure"**) and a set of forms, all prepared by Harvard, for making an anatomical donation. The Brochure describes the method and procedure for the donation of a body. The Brochure also provides citations to "Religious Support" for anatomical donation, including "Cardinal Law" that:

> *"The gift of one's body for the purpose of legitimate medical research is an act of charity and respect for life. In appreciation of such a gift, the school assures the reverent disposition of the remains."*

(Emphasis added). A true and correct copy of the Brochure accompanying Ms. Weiss' letter is attached hereto, marked Exhibit "B" and made a part hereof.

4

16.    Additionally, the Brochure states that at the conclusion of the studies, *"the school will comply with the donor's instructions regarding the disposition of the body as elected on the Instrument of Anatomical Gift."* (Emphasis added).  Among the options available to the donor in the Brochure is cremation *"at the expense of the school."* (Emphasis added).

17.    In fact, Harvard is statutorily required to dispose of any body that is the subject of an anatomical gift to Harvard "in accordance with the terms specified by the donor" pursuant to Massachusetts General Laws, Chapter 113, § 13(a).

18.    Ms. Frontiero made a decision to donate her body to Harvard.  Ms. Frontiero executed Harvard's forms respectively entitled "Instrument by which I register my wish to make an Anatomical Gift to a Massachusetts Medical School" designated as Harvard Medical School, a "Disposition of Anatomical Remains", and a "Donor Data Sheet".  True and correct copies of the Instrument, Disposition, and Donor Data Sheet are attached hereto, marked respectively as Exhibits "C", "D", and "E", and made a part hereof.

19.    Ms. Frontiero's "Disposition of Anatomical Remains" form clearly stated "terms specified" (Massachusetts General Laws, Chapter 113, § 13(a)) by her to have Harvard dispose of her body by cremating and the return of her anatomical remains to her daughter, Ms. Favaloro.  The instructions did not authorize or approve the embalming of her body.

20.    After Ms. Frontiero's death on February 12, 2004, her body was taken to the Greeley Funeral Home in Gloucester, Massachusetts.

21.    On February 12, 2004, at 5:20 P.M., Ms. Frontiero's body was receipted for by a designated representative of Harvard Medical School Anatomical Gifts Program.  A true and correct copy of Harvard's receipt for Ms. Frontiero's body is attached hereto, marked Exhibit "F" and made a part hereof.

5

22.     On February 13, 2004, while Ms. Frontiero's body was in the care, custody, and control of Harvard, it was embalmed.

23.     On November 2, 2004, nine (9) months after Ms. Frontiero's death, and after Harvard's studies using Ms. Frontiero's body were completed, Harvard Medical School's Anatomical Gifts Program delivered the anatomical remains of Ms. Frontiero to its agent, John J. Gentile. A true and correct copy of Gentile's receipt for Ms. Frontiero's remains is attached hereto, marked Exhibit "G" and made a part hereof.

24.     Pursuant to Ms. Frontiero's specified terms to Harvard, as set forth on Harvard's Disposition of Anatomical Remains form, Harvard provided Gentile with a "Cremation Route Sheet" and attached authorization and directions that "After cremation place in an individual container clearly marked with donor's name and return remains to Harvard Medical School for . . . return to HMS (for family or other agent by U.S. Mail)". A true and correct copy of Harvard's Cremation Route Sheet is attached hereto, marked Exhibit "H" and made a part hereof.

25.     Ms. Frontiero's anatomical remains were ostensibly cremated at Bayview on November 9, 2004. A true and correct copy of Bayview's Cremation Certificate for Ms. Frontiero's purported anatomical remains is attached hereto, marked Exhibit "I" and made a part hereof.

26.     On November 16, 2004, Harvard Medical School's Anatomical Gifts Program receipted for the purported cremated anatomical remains of Ms. Frontiero from Bayview. A true and correct copy of Harvard's Receipt of Cremated Remains and Release of Liability for Ms. Frontiero's remains is attached hereto, marked Exhibit "J" and made a part hereof.

27.     The purported cremated anatomical remains of Ms. Frontiero were ultimately delivered to Ms. Favaloro thereafter.

28.    On or about October 08, 1999, Stokes became the owner, as trustee, of certain real property and improvements located in Rockingham County, New Hampshire. The real property and improvements are known as the Bayview Crematory.

29.    At all times material hereto, and particularly at the time of the acquisition of the real property and improvements known as the Bayview Crematory, Derek A. Wallace was the sole beneficiary of the "Dekes Realty Trust of 107 South Broadway, Lawrence, Massachusetts".

30.    At all times material hereto, Derek A. Wallace was the individual in control of the day to day operations of the Bayview Crematory acting by and through his trustee, Stokes.

31.    At all times material hereto, Stokes not only knew of the existence and operation of the Bayview Crematory on the real property she held as trustee for Derek A. Wallace, but also aided and assisted Derek A. Wallace in her capacity of titleholder to the subject property in the operation of the Bayview Crematory. Stokes is the mother of Derek A. Wallace.

32.    At all times material hereto, Stokes was fully cognizant and aware of the fact that Bayview was not a state authorized and approved crematory in the State of New Hampshire and had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America. Further, Stokes was fully cognizant and aware that Bayview Crematory had no authority or approval to conduct business in this Commonwealth, but had and maintained business relations with funeral homes and funeral directors, including Gentile. Stokes permitted Bayview to improperly operate its unauthorized and unapproved business with full knowledge of the foreseeable consequences and likely effect on Favaloro and the Class.

33.    Upon information and belief, in each and every instance, the cremation of a donor of anatomical gifts to Harvard Medical School Anatomical Gifts Program that elected cremation

and return of the cremated anatomical remains to his or her family members or other loved ones was performed and carried out by Bayview at its crematory in Seabrook, New Hampshire, for compensation, at the request and direction of Gentile as the agent of Harvard.

34.     Upon information and belief, Bayview was the exclusive crematory for all cremations provided by Harvard through its agent, Gentile, as part of its obligation to the decedent/donors and its statutory duty to *"comply with the donor's instructions"*, as stated in the Brochure and as required by Massachusetts General Laws, Chapter 113, § 13(a).

35.     Bayview was and is not a state authorized and approved crematory in the State of New Hampshire and had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America.

36.     Bayview's operation of its crematory was not only unauthorized and illegal, it was not in compliance with and did not observe the standards deemed ordinary and proper for the handling and cremation of decedents. Particularly, Bayview performed multiple cremations simultaneously; left bodies to decompose in non-refrigerated containers; generally failed to properly handle the bodies of decedents; and failed to prepare, keep and maintain accurate and proper records of its business. This caused Bayview to return to Harvard and ultimately the families of Ms Favaloro and other Class members, tainted and contaminated remains, or remains that were not consistent with the unique identity of the decedent/donor.

## **Class Action Allegations**

### **Numerosity**

37.     The Class sought to be certified is defined as:

> All next of kin, family members and/or loved ones of donors to
> Harvard Medical School Anatomical Gifts Program whose
> decedent/donor directed cremation of his or her anatomical
> remains and return of those remains to their next of kin, family
> members and/or loved ones that were cremated at Bayview
> Crematory at the direction of Harvard through its agents, within
> the applicable limitations period.

(collectively, the "Class").

38.     The members of the Class are so numerous that separate joinder of each member is

impracticable.   Upon information and belief, and pending completion of class discovery, the

Class has members in the hundreds, if not thousands, who had next of kin, family members or

loved ones that were donors to Harvard Medical School Anatomical Gifts Program.   These

decedent/donors were cremated as part of the decedent/donor's election and direction to Harvard.

Harvard, through its agent, Gentile, selected Bayview Crematory for the cremation as part of

Harvard's obligation to *"comply with the donor's instructions"*, as stated in the Brochure and as

statutorily required of Harvard by Massachusetts General Laws, Chapter 113, § 13(a).

39.     Harvard, Bayview, Stokes, Trustee and Gentile, as well as any officers, directors or

any person or other entity related to, affiliated with, or employed by any of them are excluded

from membership in the Class.


## Commonality

40.     There are numerous questions of law and fact that are common to the claims of Ms.

Favaloro and the Class members.   Among these common questions of law and fact are the

following:

        a.     Whether the Class members' decedent/donors made an anatomical gift to

        Harvard School of Medicine;

9

b.     Whether the decedent/donors' gift directed cremation and return of the cremated anatomical remains to their next of kin;

c.     Whether Harvard assured the Class members of a reverent disposition of the remains of the decedent/donor;

d.     Whether Harvard complied with the decedent/donor's instructions regarding disposition of his or her anatomical remains;

e.     Whether Harvard complied with Massachusetts General Laws, Chapter 113, § 13(a) in the disposition of the body of the decedent/donors;

f.     Whether the Class members' decedent/donors bodies were obtained by Harvard directly or through its agents, servants, or employees;

g.     Whether Gentile was an agent, servant, or employee of Harvard;

h.     Whether the Class members' decedent/donors bodies were used by Harvard as part of the teaching, studies, investigation, and experimentation of its Medical School;

i.     Whether at the conclusion of Harvard's studies of the Class members' decedents/donors' bodies, the anatomical remains were delivered to Gentile or other funeral home or director;

j.     Whether the anatomical remains of the Class members' decedents were properly cremated at Bayview;

k.     Whether Harvard knew or should have known that Bayview was not a properly authorized or approved crematory in the State of New Hampshire;

l.     Whether in light of its plainly stated intent to assure the reverent disposition of the decedents' anatomical remains and to comply with the

10

decedents' instructions, Harvard was charged with the responsibility of determining that the facilities used by its agent, Gentile, were properly authorized and approved as a crematory.

m.    Whether Gentile knew or should have known that Bayview was not a properly authorized or approved crematory in the State of New Hampshire;

n.    Whether in light of his principal's plainly stated intent to assure the reverent disposition of the decedents' anatomical remains and to comply with the decedents' instructions, Gentile was charged with the responsibility of determining that Bayview was properly authorized and approved as a crematory.

o.    Whether Gentile knew or should have known that Bayview was not a properly authorized or approved crematory in the State of New Hampshire;

p.    Whether Harvard had a duty to the Class members to determine that Bayview was properly authorized and approved as a crematory.

q.    Whether Gentile had a duty to the Class members to determine that the facilities used by Bayview were properly authorized and approved as a crematory.

r.    Whether Harvard complied with Massachusetts General Laws, Chapter 113, § 13(a) in the disposition of the bodies of Ms. Frontiero and the decedent/donors of the Class members.

s.    Whether Harvard's acts of commission or omission resulted in damages to Favaloro and the Class members; and

t.    Whether Gentile's acts of commission or omission resulted in damages to Favaloro and the Class members.

11

### Typicality

41.    The claims of Ms. Favaloro are typical of the claims of the members of the Class in that each class member was to receive the cremated anatomical remains of their respective decedent/donor, after Harvard had completed its studies. The body of the decedent/donor of each member of the Class was, according to Harvard, assured of a reverent disposition, in accordance with the instructions of the decedent.

42.    The unauthorized and illegal operation of the Bayview Crematory, as well as its improper, offensive, and mortifying method of operation, together with its deficient and/or non-existent record-keeping practices, as well as the failure of Harvard and Gentile to make even the slightest investigation or determination of Bayview's authorization to conduct business as a crematory, all resulted in an offensively irreverent disposition of the anatomical remains of the class members' decedent/donors and resulting damage to Ms. Favaloro and the members of the Class. These are the core issues in this case which present issues of fact and law that predominate over all other issues in this matter.

43.    Ms. Favaloro. as well as the members of the Class, have all had their deceased loved ones cremated at an illegal, unauthorized and improper facility, as part of the obligations assumed, promised and agreed to by Harvard and its agents, servants, and employees in exchange for *"the gift of one's body"* and as part of *"the moral imperative to offer and use our lives for the enablement of each other"*. Upon information and belief, there has never been a prior lawsuit certified for class treatment in Massachusetts on behalf of Ms. Favaloro or members of the Class.

## Adequacy of Representation

44.      Ms. Favaloro is an adequate representative of the members of the Class and will fairly

and adequately protect the interests of the respective class members.  She is committed to the

vigorous prosecution of this action and has retained competent counsel, experienced in litigation

of this nature to represent them.  There is no hostility of interest between Ms. Favaloro and the

unnamed members of the Class.

45.      Ms. Favaloro anticipates no difficulty in the management of this litigation as a Class

action.  To prosecute this case, Ms. Favaloro has chosen Charlip Law Group, LC and Lisa

Debrosse Johnson, Esq.  The Charlip Law Group has significant experience, not only in complex

litigation and class action litigation, but also mass claims relating to issues and claims similar to

those presented in this action.  These firms are litigating similar cases in Massachusetts, Maine,

and New Hampshire against the same or some of the same Defendants.  These firms have the

financial and legal resources to meet the substantial costs and legal issues associated with this

type of litigation.

## Requirements of Rule 23(b)

46.      The decedents of Ms. Favaloro and the members of the Class all were donors to

Harvard's Anatomical Gifts Program and were cremated at Bayview.

47.      The basic questions of law and fact common to the claims of Ms. Favaloro and the

members of the Class predominate over any question of law and fact affecting any individual

member of the Class and class representation is superior to other available methods to the fair

and efficient adjudication of the controversy.  There are no particular and overriding interests of

any member of any of the Class in individually controlling the prosecution of separate claims. Upon information and belief, there is no pending litigation to which any member of any of the Class is a party and in which any question of law or fact presented or controverted in this action is or will be adjudicated. Moreover, there are no difficulties likely to be encountered in the management of the claims on behalf of the members of the Class.

48.      This action is properly maintained as a class action inasmuch as the basic core of operative fact, including but not limited to issues relating to liability, arise from a similar, if not identical underlying factual scenario. A class action is superior to other available methods for the fair and efficient adjudication of the controversy by avoiding a multiplicity of identical suits creating a drain of a time and judicial resources of the Clerk and the Courts.

49.      The defenses asserted by the Defendants will be very similar, if not identical, as to Ms. Favaloro and the members of the Class. It would be impractical to assert and adjudicate these claims and defenses in separate litigation.

## Count I
### Negligence – Bayview

50.      Ms. Favaloro adopts and realleges paragraphs 1 through 49 as though fully set forth herein.

51.      This is an action for damages arising from the negligence of Bayview.

52.      At all times material hereto, Derek A. Wallace was the individual in control of the day-to-day operations of the Bayview Crematory, acting by and through his mother and trustee, Linda Stokes. Further, the actions of Bayview were conducted and carried out by its various representatives, agents, servants, and employees.

14

53.    Derek A. Wallace, Stokes, and other agents of Bayview were fully cognizant and aware of the fact that Bayview was not a state authorized and approved crematory in the State of New Hampshire and had no official authority to conduct the business of cremating the remains of decedents under any rule, regulation, statute, law or ordinance of any state or of the United States of America.

54.    Further, Derek A. Wallace, Stokes, and other agents of Bayview were fully cognizant and aware that Bayview Crematory had no authority or approval to conduct business as a crematory or to represent itself as such to Gentile, as well as other funeral homes and directors. Notwithstanding, Bayview initiated and maintained business relations with Gentile, as well as other funeral homes and directors that were for the ostensible benefit of Ms. Favaloro and the Class members. Derek A. Wallace, as the primary operator of Bayview and the sole beneficiary of the trust that held title to the land upon which Bayview was situated, permitted Bayview to operate its unauthorized and unapproved business with full knowledge of the effect on Ms. Favaloro and the Class members.

55.    Bayview had an affirmative duty to assure that the premises would not be used in an unauthorized and unapproved manner. Further, and regardless of its legal status as a crematory, Bayview had an affirmative duty to operate the crematory in a manner consistent with the standard of care and regard for the handling and disposition of dead bodies customary and accepted in the industry. These duties included an obligation to assure Ms. Favaloro and the Class members that such use did not create a condition or situation where illegal, improper or unauthorized operation could foreseeably cause psychic and/or physical injury to Ms. Favaloro and the Class members.

56.    Bayview's failure to obtain the appropriate authorization and approval for operation of a crematory and Bayview's failure to operate the crematory in a manner consistent with the standard

of care and regard for the handling and disposition of dead bodies customary and accepted in the industry constitutes negligence.

57.     As a direct and proximate cause of Bayview's negligent acts of omission and commission, Ms. Favaloro and the Class members have suffered significant emotional distress, stigma damages, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning that would not have occurred to them, but for the negligence of Bayview.

WHEREFORE, by reason of the foregoing, Ms. Favaloro and the members of each Class demand damages against Bayview, together with the costs of this action and such other relief as this Court may deem proper.

## Count II
## Negligence – Harvard

58.     Ms. Favaloro adopts and realleges paragraphs 1 through 49 as though fully set forth herein.

59.     This is an action for damages arising from the negligence of Harvard.

60.     By virtue of Harvard's standard instruments for donation and as mandated by statute, Harvard had an obligation and affirmative duty to the decedent/donors to its Medical School's Anatomical Gifts Program to determine that the facilities used for cremation were authorized and approved, as well as operated properly and in accordance with the standard of care and regard for the handling and disposition of dead bodies customary and accepted in the industry.

61.     Harvard and its agent, Gentile, did not conduct any investigation into the authorization and approval for the operation of the Bayview crematory.

62.    Harvard and its agent, Gentile, failed to conduct any investigation into whether the Bayview crematory was operated in a manner consistent with the standard of care and regard for the handling and disposition of dead bodies customary and accepted in the industry.

63.    Harvard and its agent, Gentile, failed to observe the recommendations of national industry associations with regard to the due diligence required of a funeral home and funeral director in determining the licensing, status and operation of a crematory.

64.    Harvard failed to dispose of the bodies of the decedent/donors in accordance with the "terms specified by the donor".

65.    The above-described acts of commission and omission constituted a breach of Harvard's duties to the family members and next of kin of Ms. Frontiero and Class members' decedent/donors.

66.    But for the negligence of Harvard and its agent, Gentile, the unauthorized and unapproved operation of the Bayview crematory would have been discovered; the fact that Bayview was not operated in a manner consistent with the standard of care and regard for the handling and disposition of dead bodies customary and accepted in the industry would have been determined; and the due diligence required of a funeral home and funeral director in determining the licensing, status, and operation of a crematory would have been performed with regard to the Bayview crematory.

67.    As a direct and proximate result of Harvard's negligence, Ms. Favaloro and the Class members have suffered significant emotional distress, stigma damages, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning that would not have occurred to them, but for the acts of omission and commission of Harvard, its agents and employees.

WHEREFORE, by reason of the foregoing, Ms. Favaloro and the Class members demand damages against Harvard, together with the costs of this action and such other relief as this Court may deem proper.

## Count III
### Negligence – Gentile

68.      Ms. Favaloro adopts and realleges paragraphs 1 through 49 as though fully set forth herein.

69.      This is an action for damages arising from the negligence of Gentile.

70.      At all times material hereto, Gentile was a licensed and designated funeral director engaged in a regular course of business that included arranging, as the agent of Harvard, for the cremation of bodies donated to Harvard Medical School's Anatomical Gifts Program.

71.      Gentile charged and was compensated by Harvard for his services.

72.      The instances where Gentile used the Bayview Crematory in the furtherance of the services to be provided for Harvard to Ms. Favaloro and the Class members were not isolated and unique. Rather, Gentile usually and regularly hired, retained, paid, or otherwise made use of the Bayview Crematory in the performance of his duties for Harvard.

73.      Gentile had a duty to determine that the Bayview Crematory was a properly authorized and approved facility. Further, Gentile had a duty to assure that the Bayview Crematory was operated in a manner consistent with the standard of care and regard for the handling and disposition of dead bodies customary and accepted in the industry. Also, Gentile had a duty to observe the recommendations of national industry associations with regard to the due diligence required of him in determining the licensing, status and operation of the Bayview crematory.

74.    Gentile had a duty to conduct at least the most minimal investigation and determination into business the practices, procedures, and protocols being conducted on the Bayview Crematory premises.   Had Gentile observed the due diligence requirements recommended by his industry's associations, he would have determined the problems existing at the Bayview Crematory.

75.    Gentile failed to conduct any investigation into the authorization and approval for the operation of the Bayview crematory.

76.    Gentile failed to conduct any investigation into whether the Bayview crematory was operated in a manner consistent with the standard of care and regard for the handling and disposition of dead bodies customary and accepted in the industry.

77.    Gentile failed to observe the recommendations of national industry associations with regard to the due diligence required of a funeral director in determining the licensing, status and operation of a crematory.

78.    Gentile's failure to determine the authorization and propriety of the use of the Bayview premises as a crematory, to assure that the Bayview Crematory was operated in a manner consistent with the standard of care and regard for the handling and disposition of dead bodies customary and accepted in the industry, and to observe the recommendations of national industry associations with regard to the due diligence required of a funeral director in determining the licensing, status and operation of a crematory constitutes a breach of the duties owed to Ms. Favaloro and the Class members and was negligent.

79.    As a direct and proximate result of Gentile's negligence, Ms. Favaloro and the Class members have suffered significant emotional distress, stigma damages, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning that would not have occurred to them, but for the acts of omission and commission of Gentile.

WHEREFORE, by reason of the foregoing, Ms. Favaloro and the members of each Class demand damages against Gentile, together with the costs of this action and such other relief as this Court may deem proper.

## Count IV
## Negligent Infliction of Emotional Distress
## All Defendants

80.     Ms. Favaloro adopts and realleges paragraphs 1 through 49 as though fully set forth herein.

81.     This is an action for negligent infliction of emotional distress resulting from tortious interference with a dead body.

82.     Ms. Favaloro and each of the Class members is a family member, loved one, and/or person related to a decedent/donor.

83.     The Defendants each were responsible for the proper handling of the remains of the decedent/donor related to Ms. Favaloro and the Class members.

84.     At all times material to these claims, Bayview was an unauthorized crematory, illegally and improperly receiving, handling, maintaining and cremating dead bodies, including those decedents of Ms. Favaloro and the Class members. The Defendants' handling of dead bodies were wantonly disrespectful and wholly disregarded of the feelings of Ms. Favaloro and the Class members by virtue of their neglect and inattention, ultimately leaving Ms. Favaloro and the Class members with the knowledge, belief and stigma that the remains of a deceased loved one and/or family member were not disposed of as desired.

85.     The acts of commission and omission of the Defendants were so devoid of propriety, that the remains of the deceased loved ones of Ms. Favaloro and the Class members are tainted and contaminated.

86.     The Defendants actions were a violation of the duty they owed to Ms. Favaloro and the Class members.  This duty was heightened by virtue of the nature of the stated and recognized service to humanity that was being rendered and the knowledge that Ms. Favaloro and members of the Class were relying upon them for the proper treatment and preservation of the remains of their deceased loved ones and/or family members, in accordance with stated, specified terms.

87.     The Defendants negligent acts constituted a seminal failure so consequential to the emotional well-being of Ms. Favaloro and the Class members, that the resulting horrendous acceptance, handling, treatment and disposition of the loved one and/or family member of each Putative Class Representative and member of the Classes, rose to the level of mutilation and desecration of the body, occasioning indescribable mental pain and suffering to Ms. Favaloro and the Class members, also manifesting itself through significant physical consequences.

88.     The various acts of omission and commission by the Defendants described above constitute at a minimum a reckless and negligent interference with a dead body.

89.     As a direct and proximate result of the reckless and negligent conduct of the Defendants, Ms. Favaloro and the Class members have suffered extreme emotional distress, stigma damages, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning for which they all claim damages against the Defendants.

WHEREFORE, by reason of the foregoing, Ms. Favaloro and the Class members demand damages against the Defendants, together with the costs of this action and such other relief as this Court may deem proper.

<u>Count V</u>
<u>Reckless and/or Intentional Infliction of Emotional Distress</u>
<u>All Defendants</u>

90.     Ms. Favaloro adopts and realleges paragraphs 1 through 49 as though fully set forth herein.

91.     This is an action for reckless and/or intentional infliction of emotional distress resulting from tortious interference with a dead body.

92.     Ms. Favaloro and each of the Class members is a family member, loved one, and/or person authorized by law to handle the disposition of their respective decedent's remains.

93.     The Defendants intentionally mishandled the remains of the deceased loved one of Ms. Favaloro and/or the Class members.

94.     At all times material to these claims, Bayview was an unauthorized crematory, illegally and improperly receiving, handling, maintaining and cremating dead bodies, including those decedents of Ms. Favaloro and the Class members. The Defendants' handling of dead bodies were wantonly disrespectful and wholly disregarded of the feelings of Ms. Favaloro and the Class members by virtue of their intentional neglect and inattention, ultimately leaving Ms. Favaloro and the Class members with the knowledge, suspicion or belief that the remains of a deceased loved one and/or family member have not been preserved as desired.

95.     The intentional acts of the Defendants were so devoid of propriety, that the anatomical remains of the deceased loved ones of Ms. Favaloro and the Class members are tainted and contaminated.

96.     The Defendants' intentional actions were a violation of the duties they owed to Ms. Favaloro and the Class members. This duty was heightened by virtue of the nature of the stated and

recognized service to humanity that was being rendered and the knowledge that Ms. Favaloro and members of the Class were relying upon them for the proper treatment and preservation of the remains of their deceased loved ones and/or family members, in accordance with stated, specified terms.

97.     The Defendants intentional acts constituted a seminal failure so consequential to the emotional well-being of Ms. Favaloro and the Class members, that the resulting horrendous acceptance, handling, treatment and disposition of the loved one and/or family member of each Putative Class Representative and member of the Classes, rose to the level of mutilation and desecration of the body, occasioning indescribable mental pain and suffering to Ms. Favaloro and the Class members, also manifesting itself through significant physical consequences.

98.     The various intentional acts of omission and commission by the Defendants described above constitute at a minimum a reckless and negligent interference with a dead body.

99.     As a direct and proximate result of the intentionally reckless and negligent conduct of the Defendants, Ms. Favaloro and the Class members have suffered extreme emotional distress, stigma damages, loss of enjoyment of life, loss of right to sepulture, and loss of right to grieving and mourning for which they all claim damages against the Defendants.

WHEREFORE, by reason of the foregoing, Ms. Favaloro and the members of the Class demand damages against the Defendants, together with the costs of this action and such other relief as this Court may deem proper.

23

## Count VI
## Class Relief Sought

WHEREFORE, Ms. Favaloro and the members of the Class request that, after completion of class discovery and hearing on a motion for class certification, this Court enter an order:

A.     Certifying this action as a class action under Rule 23, Massachusetts Rules of Civil Procedure;

B.     Designating Ms. Favaloro as the Class Representative;

C.     Appointing Charlip Law Group, LC as lead class counsel and Lisa DeBrosse Johnson as class co-counsel;

D.     An award of damages on each count of the Class Representation Complaint;

E.     An award to the Class members for their costs, interest and reasonable attorneys fees;

F.     An award of attorney's fees to class counsel and class co-counsel in accordance with prevailing factors and considerations for determination of class counsel fees in the Commonwealth of Massachusetts; and

G.     Any and all further relief this Court deems just and proper.

### Demand For Jury Trial

Ms. Favaloro and the members of any certified Class demand trial by jury on all issues so triable as a matter of right.

Dated this _28th_ day of June, 2005.

Respectfully Submitted,

Ms. Favaloro, Plaintiff and Putative Class Representative, by her attorneys,

Lisa DeBrosse Johnson, BBO# 632428
The Pilot House
Lewis Wharf
Boston, MA 02110
(617) 854-3740

And

David H. Charlip
Florida Bar No.: 329932
1930 Harrison Street
Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 Facsimile

PRO HAC VICE
ADMISSION
PENDING