UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

LORRAINE HUNT v. BAYVIEW
CREMATORY, LLC, et. al.,

                 No. 05-11140-RCL

and

ALAN C. ANDERSEN, et. al., v.
BAYVIEW CREMATORY, LLC, et. al.

                 No. 05-11904-RCL

_____

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

   NOW COME the Plaintiffs, by and through their undersigned counsel, pursuant to Local Rule 7.1(b)(2), and file this Response to the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction by stating in response thereto as follows:

   1.  On April 3, 2007, the Plaintiffs and the Defendants, through their respective counsel filed a Stipulation of Withdrawal of Class Allegations. A resulting effect of the withdrawal of the class allegations was to create a situation where this Court no longer had jurisdiction of these proceedings under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), et seq.

   2.  The Stipulation of Withdrawal of Class Allegations provided that the claims of the Plaintiffs would proceed as individual claims under their respective case numbers.

   3.  The Stipulation further provided that the claims of the Plaintiffs would continue as a "Consolidated Action" pursuant to the provisions of this Court's Order of October 31, 2006, to the extent that the Court had subject matter jurisdiction.

4. At the status conference of April 4, 2007, the Plaintiffs raised the issue of subject matter jurisdiction with respect to those Plaintiffs whose claims did not have complete diversity pursuant to 28 U.S.C. § 1332(a)(1). The Court instructed Plaintiffs' counsel to make a determination as to which Plaintiffs would be subject to dismissal for lack of subject matter jurisdiction within ten (10) days and to advise defense counsel of that determination.

5. In an April 10th letter to all defense counsel, Plaintiffs' counsel identified Alan C. Andersen, Suzanne Bourassa, Robert Delia, Sara-Anne Eames, John Foster, Britton Hall, Marie Ignoto, David Johnson, Dawn Lattime, Donna Tomaso, and Lorraine Hunt[1] as citizens of Massachusetts. Simultaneously, Plaintiffs' counsel identified John Carlson and Shaun Ferris as citizens of New Hampshire. Because complete diversity did not exist with respect to these Plaintiffs[2], undersigned counsel expressed their willingness to stipulate to the dismissal of the claims of these Plaintiffs based upon a lack of subject matter jurisdiction. The remaining Plaintiffs, Dennis Fowler, Edward Galvin, Jr., Patricia Hannigan, Kathleen McDonough, Tara McDonough, and Eleanor Poole are neither citizens of Massachusetts nor New Hampshire, so complete diversity exists.

6. Only counsel for Farrah Funeral Home, Commonwealth Cremation & Shipping Service, Inc., and Bayview Crematory, LLC responded to the Plaintiffs' April 10 letter.

7. On April 20, 2007, as part of the filing of the Stipulation for Dismissal of Defendants with no direct claims against them, Plaintiffs' counsel advised counsel for Farrah Funeral Home that he had received no response to the April 10 letter so that a stipulation could be prepared in accordance with this Court's direction at the April 4th status conference. On that

---

[1] In that Lorraine Hunt is the only named Plaintiff in case No.05-11140, Plaintiffs' counsel acknowledged that her case should be dismissed in its entirety.

[2] The Massachusetts Plaintiffs were suing funeral homes that were Massachusetts citizens and the New Hampshire Plaintiffs were suing Bayview Crematory, a citizen of New Hampshire.

same day, counsel for Farrah asked and received Plaintiffs' counsel's approval to forward the email communication to counsel for the other defendants so that some consensus of the defense position on the issue could be ascertained. Despite Plaintiffs agreement to the dismissal of the indicated Plaintiffs through stipulation, the Defendants elected to file the subject Motion to Dismiss.

8. As previously expressed to the Defendants in their April 10, 2007 letter, undersigned counsel has no objection to the dismissal of the Plaintiffs, Alan C. Andersen, Suzanne Bourassa, Robert Delia, Sara-Anne Eames, John Foster, Britton Hall, Marie Ignoto, David Johnson, Dawn Lattime, Donna Tomaso, Lorraine Hunt, John Carlson, and Shaun Ferris based upon a lack of subject matter jurisdiction over. Accordingly, the Plaintiffs will restrict their argument to the issues of subject matter jurisdiction as to the Plaintiffs, Dennis Fowler, Edward Galvin, Jr., Patricia Hannigan, Kathleen McDonough, Tara McDonough, and Eleanor Poole (the "Remaining Plaintiffs") and the amount in controversy requirement of 28 U.S.C. § 1332(a)(1).

## ARGUMENT

In moving for dismissal of Plaintiffs' claims for lack of subject matter jurisdiction, the Defendants do not assert that there is an absence of complete diversity between any of the Remaining Plaintiffs and the Defendants. No Remaining Plaintiff is a citizen of the same state as any Defendant. The issue presented is whether the claims asserted by the Remaining Plaintiffs "exceed the sum or value of $75,000, exclusive of interests and costs . . ." *28 U.S.C. §1332(a)*. The controlling case authorities are evident and the only determination to be made by this Court is the application of the rulings in those cases to these proceedings.

**The Standard For Determining The "Amount In Controversy"**

While the Defendants have been generally accurate in their identification of the authorities to guide this Court in ruling on the "amount in controversy" part of federal jurisdiction, the Remaining Plaintiffs assert that the Defendants' application of those authorities has been incomplete. The quintessential issue is whether it appears "to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590 (1938); Spielman v. Genzyme Corp., 251 F.3d 1, *5 (1st Cir. 2001). (Emphasis supplied). The Defendants have questioned the Plaintiffs' allegations of damages in this case and the burden therefore falls on the Plaintiffs to demonstrate "that it is not a legal certainty that the claim involves less than the jurisdictional amount." Dept. of Recreation & Sports of P.R. v. World Boxing Ass'n., 942 F.2d 84, 88 (1st Cir. 1991). (Emphasis added).

> " . . . St. Paul's legal certainty standard does not mean that jurisdiction is ousted because of the eventual 'inability of plaintiff to recover an amount adequate to give the court jurisdiction,' or because 'the complaint discloses the existence of a valid defense to the claim.'"

Spielman, 251 F.2d at *5. "In addition, '[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.'" Id. See also Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1 (1st Cir. 1995)(Federal jurisdiction not affected by subsequent reduction in amount in controversy below level of $50,000 after filing of suit). To contrast, the Spielman court went on to hold that:

> "On the other hand, and importantly for this case, if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff *never was entitled to recover that amount* . . . the suit will be dismissed."

*Id*. Federal jurisdiction is limited by the Constitution and § 1332 and determining that cases meet the "amount in controversy" requirement is part of the court's responsibility "to police the border of federal jurisdiction."[3]  Notwithstanding, the initial controlling consideration of the "amount in controversy" analysis is first to look at the good faith allegations of damages. If, and only if, those allegations are challenged, the "legal certainty test comes into play and the burden is placed on the Plaintiff to establish supporting facts. The burden is to "persuade the Court that someone familiar with the applicable law could objectively find the claim worth more than the jurisdictional minimum . . ." *Rodriguez v. Sears, Roebuck*, 349 F.Supp.2d 211 (D.P.R.2004). The Plaintiff can do this by affidavit, amended pleadings, or by reference to supporting case law.

### **Application Of The Standard To This Case**

The primary case authorities that this Court should consider on this issue are federal decisions. *Rodriguez* 349 F.Supp.2d at 214, n. 2. *See also* *Stewart v. Tupperware Corporation*, 356 F.3d 335, 339 (1st Cir.2004) (Reversing dismissal for lack of amount in controversy subject matter jurisdiction based upon verdicts of federal juries). Plaintiffs assert that jury verdicts in state court cases would be persuasive on this issue since the jury pools would come from essentially the same universe of individuals. The supporting authorities establishing that emotional distress claims cannot as a legal certainty be said to be valued at less than the jurisdictional amount of $75,000 include:

- a. *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513 (2003) ($2.6 million jury verdict for emotional distress resulting from bad faith insurance claim, reduced to $1 million);

- b. *McDonough v. City of Quincy*, 452 F.3d 8 (1st Cir. 2006) (General verdict in favor of city police officer awarding $300,000 for lost wages and emotional distress deemed in Title VII retaliation claim was not grossly excessive);

---

[3] *Spielman*, at *4.

5

    c.    *Horney v. Westfield Gage Company, Inc.*, 77 Fed.Appx. 24 (1st Cir. 2003) (Award of $250,000 in compensatory damages for emotional distress in sexual harassment claims was not excessive);

    d.    *Kelly v. Schlumberger Technology Corporation*, 849 F.2d 41 (1st Cir.1988) (Jury verdict of $125,000 for negligent infliction of emotional distress arising from discharge of employee);

    e.    *Rowlett v. Anheuser-Busch, Inc.*, 832 F.2d 194 (1st Cir.1987) (Jury verdict in the amount of $123,000 for emotional distress arising from employment discrimination deemed not grossly excessive);

    f.    *Rodriguez v. Cambridge Housing Authority*, 443 Mass. 697 (2005) (Jury verdict for damages for emotional distress arising from home invasion to wife for $200,000 and to husband for $130,000)[4];

    g.    *Lipchitz v. Raytheon Company*, 434 Mass. 493 (2001) (Jury verdict for emotional distress arising from failure to promote reduced from $320,000 to $225,000; new trial directed on grounds other than damage award);

    h.    *O'Connell v. Chasdi*, 400 Mass. 686 (1987) (Jury verdict of $75,000 for intentional infliction of emotional distress arising from sexual harassment);

    i.    *Smith v. Bell Atlantic*, 63 Mass.App.Ct. 702 (2005) (Jury verdict for $207,000 for emotional distress during employment deemed not excessive).

The *Andersen* Complaint is detailed in its allegations as to the predicate for and nature of the damages suffered by the Plaintiffs. Some of these allegations include the fact that the Board of Regulation of Funeral Directors and Embalmers found that Derek A. Wallace had committed a litany of violations of Board rules and regulations (¶ 57); the police authorities that raided the Bayview Crematory found unlabeled urns with cremains inside, two bodies in a single retort, a decomposing body in a broken freezer, and an trash bin with charred medical appliances (¶ 63); the Funeral Home Defendants failed to accompany bodies across state lines to supervise and

---

[4] The *Rodriguez* case, in addition to reiterating Massachusetts' recognition of a claim for negligent and intentional infliction of emotional distress, noted that even with history of previous mental health problems, plaintiff's feelings of depression, nightmares, insomnia, and dissociative episodes arising from repeated home invasions required reversal of judgment NOV on negligent infliction of emotional distress).

witness the cremations of their customers' decedents (¶ 67); employees and medical examiners were charged (and subsequently convicted or pled guilty) to mishandling of a corpse, forgery and theft by deception (¶ 72); some decedents' cremains were clearly tainted and adulterated (¶ 97); concealment of the foregoing (¶ 138); intentional, outrageous and intolerable conduct (¶ 159); serious and severe mental injuries and emotional distress that no reasonable person could be expected to cope with or endure (¶ 165).

Courts that recognize claims that arise out of the mishandling of a dead body are concerned with the effect the mishandling has on the psychological, rather the physical, well-being of the surviving relatives.  "Courts have concluded that the <u>exceptional vulnerability of the family of recent decedents</u> makes it highly probable that emotional distress will result from mishandling the body. . . . That high probability is said to provide sufficient trustworthiness to allay the court's fear of fraudulent claims." <u>Gammon v. Osteopathic Hospital of Maine, Inc.</u>, 534 A.2d 1282, 1285 (Me.1987). (Emphasis added).  <u>See</u> <u>also</u> <u>Rollins v. Phillips,</u> 554 So.2d 1006, 1008 (Ala.1989) ("It is a matter of common knowledge in civilized society that close relatives and friends possess deep-seated feelings and emotions regarding the remains of their dead.  The person or persons with the duty of burying a loved one have the right to see that the body is preserved and their feelings in relation thereto protected"); <u>Jobin v. McQuillen</u>, 158 Vt. 322, 328, 609 A.2d 990 (1992) (acknowledging "the special sensitivity that accompanies the handling of corpses" that justifies claims for negligent infliction of emotional distress without accompanying physical harm); <u>Larson v. Chase</u>, 47 Minn. 307, 312, 50 N.W. 238 (1891) (emotional distress "would be ordinarily the natural and proximate result of knowledge that the remains of a deceased husband had been mutilated");  (Byrnes, J., concurring) (injury in a wrongful autopsy case is not physical damage to the body of the decedent but "to the survivors in

7

the form of emotional distress arising out of the *knowledge* that the desecration has occurred" [(emphasis in original]).  Cf. *Christensen v. Superior Court,* 54 Cal.3d 868, 894, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991) (mishandling of a corpse is "likely to cause serious emotional distress to members of the decedent's immediate family regardless of whether they observe the actual negligent conduct or injury to the remains of their decedent").

### The Alleged Absence Of Evidence Of Mishandling

Finally, the Defendants assert that the Plaintiffs have brought forth no evidence of mishandling of their respective decedents.  This argument is disingenuous because (1) the Plaintiffs have been effectively precluded from having access to the records of Bayview (as well as Hart-Wallace and Simplicity) because of the lengthy and ongoing criminal prosecutions arising from the Bayview scandal and (2) although the County Attorney has released some 44,000 pages of documents to the Defendants, they have refused to produce them to the Plaintiffs.  Recently, two Superior courts in Massachusetts and one Superior Court in New Hampshire have ordered production of those documents, however the Defendants continue to resist production.  Ultimately, it is likely that all or most of those documents will become part of the record in these proceedings, however it is both unfair and misleading for the Defendants to assert that the absence of those documents supports dismissal for lack of the requisite amount in controversy.

### Conclusion

As noted, the Plaintiffs have already provided written notice of their determination that the claims of Alan C. Andersen, Suzanne Bourassa, Robert Delia, Sara-Anne Eames, John Foster, Britton Hall, Marie Ignoto, David Johnson, Dawn Lattime, Donna Tomaso, Lorraine Hunt, John Carlson, and Shaun Ferris should be dismissed because of an absence of complete

diversity. By challenging the allegations of damages in the Complaint, the Defendants have placed the burden upon the Remaining Plaintiffs, Dennis Fowler, Edward Galvin, Jr., Patricia Hannigan, Kathleen McDonough, Tara McDonough, and Eleanor Poole to demonstrate "that it is not a <u>legal certainty</u> that the claim involves less than the jurisdictional amount." These Remaining Plaintiffs have clearly met the standard through Federal and State cases with verdicts for emotional distress claims well in excess of $75,000. Also, given the egregious nature of the good faith allegations of the Complaint and the supporting law as to claims for emotional distress particularly recognized to be associated with the disposition or mishandling of a dead body, a result in excess of $75,000 is more of a legal certainty in this case. Accordingly, the Defendants' Motion to Dismiss as to the Remaining Plaintiffs should be denied.

Dated this 1st day of May, 2007.

Respectfully submitted,
Plaintiffs, by their attorneys


/s/ David H. Charlip
David H. Charlip (Florida Bar No.: 329932)
Charlip Law Group, LC
1930 Harrison Street, Suite 208
Hollywood, Florida 33020
954.921.2131
954.921.2191 (Fax)
dcharlip@charliplawgroup.com


/s/ Lisa Debrosse-Johnson
Lisa DeBrosse Johnson, BBO# 632428
The Pilot House
Lewis Wharf
Boston, MA 02110
(617) 854-3740
debrossejohnson@comcast.net

**Certificate of Service**

     I HEREBY CERTIFY that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 1st day of May, 2007.

                                                        /s/ David H. Charlip_____
                                                        David H. Charlip
                                                        Admitted *Pro Hac Vice*